B1040 (FORM 1040) (12/15)

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Diane Travinskoff Clay | First Bank |

| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Monte J. White + Associates PC<br>1106 Brook Ave.<br>Wichita Falls, TX 76301 (940) 723-0099 | **ATTORNEYS** (If Known)<br>Hank Kugeley<br>900 8th St, Suite 1102<br>Wichita Falls, TX 76301 (940) 766-1388 |
|---|---|

| **PARTY** (Check One Box Only)<br>☑ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Wrongful foreclosure; Breach of Statutory Duty of Good Faith
Tex. Bus. Com. Code (UCC) Sec. 1.203; Fraud; Exemplary and punitive damages
Breach of fiduciary duty; unjust enrichment; Tex. Bus. Com Code Sec. 1.201
Tex. Prop. Code 12.001; Civil Practice and Remedies Code 12.002

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☑ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☑ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
(other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☑ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 3,614,563.63 |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR <br> Diane Travinskoff Clay | BANKRUPTCY CASE NO. <br> 20-70143-HDH-13 | |
| DISTRICT IN WHICH CASE IS PENDING <br> Northern District of Texas | DIVISION OFFICE <br> Wichita Falls | NAME OF JUDGE <br> Hale |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF <br> Diane Travinskoff Clay | DEFENDANT <br> First Bank | ADVERSARY <br> PROCEEDING NO. <br> 20-07001-HDH |
| DISTRICT IN WHICH ADVERSARY IS PENDING <br> Northern District of Texas | DIVISION OFFICE <br> Wichita Falls | NAME OF JUDGE <br> Hale |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) <br><br> Mont White | | |
| DATE <br> 5/17/21 | PRINT NAME OF ATTORNEY (OR PLAINTIFF) <br> Monte White | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Monte J. White and Associates, PC
Monte J. White
1106 Brook Ave., Hamilton Place
Wichita Falls, TX 76301
(940)723-0099
(940)723-0096 Fax

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-70143-hdh-13 |
| | § | |
| Diane Travinikoff Clay | § | CHAPTER 13 |
| | § | |
| DEBTOR(S) | § | ADVERSARY NO. 20-07001-HDH |

| | |
|---|---|
| Diane Travinikoff Clay, Plaintiff | § |
| | § |
| vs. | § |
| | § |
| First Bank, Defendant | § |
| | § |
| vs. | § |
| | § |
| Richard R. Clay, Third-Party Defendant | § |

**FIRST AMENDED PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE U.S. BANKRUPTCY JUDGE:

COMES NOW Diane Travinikoff Clay, Plaintiff/Debtor, and files this his Original Complaint and would show the court as follows:

I.   PARTIES, JURISDICTION AND VENUE

A.   Plaintiff, Diane Tranvinikoff Clay, is a Debtor and party in interest.

B.   At all times referenced herein, Richard Clay was acting as an agent of the Debtor in each and every transaction and communication with Defendant, First Bank, First Bank's agents, Jim Johnson, Jeremy Dorzab, J. Charles White, and First Bank's attorney, Billy Elder of Elder & Bickings, Billy Elder and Elder & Bickings also acted as counsel for Debtor and her agent, Richard Clay.  Richard Clay is also the husband of Debtor.

C.   Defendant First Bank is the Creditor in this case and may be served with process by serving its President and CEO, J. Charles White at 4110 Kell Blvd, Wichita Falls, TX 76309, and by serving its attorney of record, Hank Rugeley.

1

D.      The court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.

E.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## II.   815 OHIO STREET

A.      On September 14, 2006, Debtor and First Bank signed a Deed of Trust for 815 Ohio Street, Wichita Falls, TX. The note against the property, according to the Deed of Trust, matured on May 14, 2007. This document was signed at Landmark Title and properly acknowledged by Phillip Lam, Notary Public. (See Exhibit 1 attached hereto and incorporated herein by reference as if set forth in its entirety).

B.      On May 16, 2007, Debtor and First Bank signed a Modification of Deed of Trust dated May 14, 2007. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Bonita Patterson, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. (See Exhibit 2 attached hereto and incorporated herein by reference as if set forth in its entirety).

C.      On May 15, 2008, Debtor and First Bank signed a Modification of Deed of Trust dated May 14, 2008. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Bonita Patterson, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. (See Exhibit 3 attached hereto and incorporated herein by reference as if set forth in its entirety).

D.      On May 18, 2009, Debtor and First Bank signed a Modification of Deed of Trust dated May 14, 2009. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Susan Brooks, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. (See Exhibit 4 attached hereto and incorporated herein by reference as if set forth in its entirety).

E.      On May 27, 2010, Debtor and First Bank signed a Modification of Deed of Trust dated May 24, 2010. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Bonita Patterson, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. (See Exhibit 5 attached hereto and incorporated herein by reference as if set forth in its entirety).

F.      On June 28, 2011, Debtor and First Bank signed a Modification of Deed of Trust dated May 24, 2011. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Jamie Gafford, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. (See Exhibit 6 attached hereto and incorporated herein by reference as if set forth in its entirety).

G.     On June 29, 2012, Debtor and First Bank signed a Modification of Deed of Trust dated May 24, 2012. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Jamie Gafford, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. (See Exhibit 7 attached hereto and incorporated herein by reference as if set forth in its entirety).

H.     On July 31, 2014, Debtor and First Bank signed a Modification of Deed of Trust dated July 1, 2014. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Karen Smith, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. The maturity date on the note, according to the deed, was July 1, 2015 (See Exhibit 8 attached hereto and incorporated herein by reference as if set forth in its entirety.).

I.     During testimony at the Motion for Relief from Automatic Stay hearing held on October 21, 2020, Jim Johnson, First Bank's representative, testified that it was common practice for loan documents and deeds of trust to be prepared, sent home with Richard Clay, and returned with Diane Clay's signature on the documents. The documents were then notarized or acknowledged upon their return to the bank. Diane Clay has not signed any of the Deeds of Trust before a notary public. Texas Property Code 12.001(b) states:

> *An instrument conveying real property may not be recorded unless it is signed and acknowledged or sworn to by the grantor in the presence of two or more credible subscribing witnesses or acknowledged or sworn to before and certified by an officer authorized to take acknowledgements or oaths, as applicable.*

Courts in Texas have long held that where it is shown that the parties did not appear before a notary for the purpose of acknowledging the execution of an instrument, the instrument is void. *See Robertson v. Vernon, 3 S.W.2d 573 (Tex. App. 1927).* See also *Sullivan v. Barnett, 471 S.W.2d 39 (1971).*

J.     While the bank knew, or should have known, that the Deeds signed by Debtor were not properly acknowledged, then recorded, and therefore not valid based on Texas Property Code 12.001(b), the bank continued the deception by continuing to lead the Debtor to believe that the deeds she signed were valid.

K.     No modification nor renewal was signed within the four years after the maturity date of July 1, 2015, as noted on the most recent Modification of Deed of Trust signed by the Debtor.

L.     On or about June 10, 2019, Debtor executed an "as is where is" commercial contract for the sale of 815 Ohio Avenue, Wichita Falls, TX, 76301(See Exhibit 9 attached hereto and incorporated herein by reference as if set forth in its entirety).

M.     Purchaser, The Burn Shop, placed $10,000.00 in escrow with Landmark Title in Wichita Falls, TX on June 10, 2019 (See Exhibit 10 attached hereto and incorporated herein by reference as if set forth in its entirety).

N.      On July 2, 2019, First Bank, through its agent Jim Johnson, sent Debtor a default letter, falsely and deceptively claiming they had a lien on that date on 815 Ohio Avenue, Wichita Falls, TX with a balance of $111,741.90, claimed by First Bank, while knowing the Deed of Trust was void. While the Debtor contends that the deeds were never valid based on Texas Property Code 12.001(b), as of July 1, 2019, on the expiration of the four-year limitations period, the real property lien, and a power of sale to enforce the real property lien became void (See Exhibit 11 attached hereto and incorporated herein by reference as if set forth in its entirety.).   Jim Johnson was a representative for First Bank as defined by Texas Business and Commerce Code § 1.201 (33). "Representative" means a person empowered to act for another, including an agent, an officer of a corporation or association, and a trustee, executor, or administrator of an estate.  Elder & Bickings were also a "Representative" of the bank under the Code.

O.      On July 9, 2019, Debtor, relying on the deception of the letter dated July 2, 2019, executed a Modification of Deed of Trust drafted by First Bank for the property located at 815 Ohio Avenue, Wichita Falls, TX. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Lynzee Price, Notary Public an employee, at the time, of First Bank. The deed was then recorded in Wichita County, Texas. However, the Real Estate Modification attempted to have an effective date for July 1, 2015. Had the deed been valid, the statute of limitations would have run on July 1, 2019. The bank dated the effective date of the Modification of Deed of Trust for four years and eight days earlier than the date it was signed. This modification was filed in the records in Wichita County, Texas (See Exhibit 12 attached hereto and incorporated herein by reference as if set forth in its entirety.). There was absolutely no consideration for this modification. It did not change the interest rate, the amount owed, the due date, or grant any extension. The Notice of Foreclosure was filed six (6) days later and foreclosed the following month.

P.      Three days later, July 12, 2019, Debtor signed, without proper acknowledgement, a Deed in Lieu of Foreclosure for 815 Ohio Avenue, Wichita Falls, TX which did include the non-valid July 9, 2019 modification, but deceptively dating it July 1, 2015. This document was drafted by The Law Office of Elder & Bickings. The deed was then recorded in Wichita County, Texas. (See Exhibit 13 attached hereto and incorporated herein by reference as if set forth in its entirety.).

Q.      Three days after the Deed in Lieu was signed but not properly acknowledged, on July 15, 2019, First Bank, by and through their attorney of record, Elder & Bickings, sent Debtor a Notice of Foreclosure Sale on the property located at 815 Ohio Avenue setting foreclosure date for August 6, 2019. This was only twenty-one (21) days after the last modification was signed. It must be noted that Elder & Bickings previously represented the Debtor in other business transactions (See Exhibit 14 attached hereto and incorporated herein by reference as if set forth in its entirety.). There was absolutely no consideration for the Deed in Lieu of foreclosure. The property was still foreclosed on thereby effectively rendering the Deed in Lieu of Foreclosure a nullity.

R.      Elder & Bickings have represented the Debtor, her husband, and several wholly owned LLCs for many years. Despite Elder & Bickings representation of the Debtor, the firm represented First Bank on at least five (5) foreclosures against the Debtor, four (4) Deeds in Lieu of Foreclosure, and numerous collection letters to the Debtor. Elder & Bickings represented First

4

Bank at the foreclosure sales and bid for First Bank dollar amounts that were less than the fair market value to the detriment of the Debtor (See Exhibits 15, 16, & 17 attached hereto and incorporated herein by reference as if set forth in its entirety.).

S.     Attorneys for Elder & Bickings and its predecessor firm, Elder Bickings & Spurgers, represented Mr. and Mrs. Clay in oil and gas leases and counseled regarding those leases numerous times. Elder & Bickings counseled and prepared the wills for the Debtor and her spouse, Richard Clay. Elder & Bickings formed a limited liability corporation, Holiday Road Burgers, LLC, for the Debtor. Elder & Bickings have, as recently as 2020, represented First Bank in a foreclosure action against the Debtor and the actual LLC that they organized for the Debtor. During these multiple representations over many years, the attorneys at Elder & Bickings have cultivated a relationship of trust. The Debtor always believed that Elder and Bickings had her and her spouse's best interest. The Debtor did not believe that Elder & Bickings would actively deceive her into signing a document that was against their interest.

T.     On or about August 6, 2019, First Bank purchased the property at the foreclosure sale for approximately $112,000.00 knowing that the recorded Deed of Trust was not valid base on Texas Property Code 12.001(b), or the lien had expired based on the four-year statute of limitations. Additionally, the bank was aware that the Debtor had a buyer in contract for $200,000.00. First Bank then sold the property to the same buyer, the Burn Shop, that the Debtor was in contract with for $200,000.00. First Bank also financed the note for the Burn Shop. (See Exhibit 18 attached hereto and incorporated herein by reference as if set forth in its entirety.)

U.     Given that the bank did not have a valid lien, since the recorded deed was not properly acknowledged by a Notary Public as required by Texas Property Code 12.001(b), and, alternatively, the statute of limitations had expired on July 1, 2019, Debtor is owed the value of the property which is $200,000.00. The bank seized and sold property that they did not or no longer had a lien on through deception and fraud. The mortgage of the property is an incident of the debt; and if the debt exists, the security will follow the debt. There was a mortgage note, and a deed of trust securing the note, though invalid based on Texas Property Code 12.001(b). If the holder of a real property lien does not bring suit for recovery of the property or foreclose on it within four years after the cause of action accrues, the lien and power of sale become void. Tex. Civ. Prac. & Rem. Code Ann. § 16.035(a), (d). The irrefutable evidence shows that the promissory matured on July 1, 2015. Accordingly, the four-year statute of limitations period expired on July 1, 2019. The actions were perpetrated on the Debtor by First Bank through its agent, Jim Johnson, and their attorney, Elder & Bickings, who was also Debtor's attorney.

V.     The market value of 815 Ohio Street was set when Debtor and The Burn Shop executed a contract for sale of that property, and The Burn Shop made a $10,000.00 earnest money deposit with the title company to purchase the property for $200,000.00. The market value of the property was $200,000.00 prior to foreclosure.

W.     After the fraud based on the fraudulent acknowledgement on the recorded Deeds of Trust (and Modifications of Deed of Trusts), and wrongful foreclosure, after the running of the statute of limitations, First Bank continued with the sale for $200,000.00 to The Burn Shop that Debtor already had in contract. They sold the property for $200,000.00, and those funds wholly belong to the Debtor for which Debtor now sues *in toto*.

X.     The Deed In Lieu of Foreclosure was void due to the recorded Deeds of Trust being void based on the improper acknowledgment of the Notary Public. Alternatively, the Deed in Lieu of Foreclosure, after the statute of limitations to execute on the lien had expired and was void was executed after the statute of limitations expiring. With the disparity in the bargaining power any Debtor would have accepted the representations that First Bank still had a valid lien as stated by First Bank, and Jim Johnson, whom Debtor had dealt with on numerous transactions, and Billy Elder of the Elder & Bickings Law Firm, whom Debtor also considered to be Debtor's attorney through their many transactions together. Debtor never drew the line to find that Elder & Bickings were not also acting upon Debtor's behalf due to their many legal, fiduciary, transactions together as attorney and client.

Y.     Statutory "Good Faith," Tex. Bus. & Com. Code (UCC) § 1.203 provides that "Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement." Furthermore, the Code defines "Good Faith" as " honesty in fact and the observance of reasonable commercial standards of fair dealing." See Tex. Bus & Com. Code (UCC) § 1.201(20).  Promissory notes are governed by the Texas Uniform Commercial Code. Thus, every promissory note has an implied covenant of good faith and fair dealing by virtue of § 1.203 of the Texas U.C.C. The obligation of good faith pursuant to the Texas U.C.C., requires not only that good faith be evidenced but that a standard of commercial reasonableness be observed. Such obligation permeates all the dealings between lender and borrower because the promissory note in issue is the primary agreement between the parties. Furthermore, the related agreements should be governed by a good faith and air dealing standard pursuant to § 205 of the Restatement (Second) of Contracts which provides, "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." This duty arises out of the relationship between the parties, as the special relationship that existed between these parties as set forth hereinabove, and below.

Z.     Debtor also seeks attorney's fees as exemplary, and/or punitive damages, as well as interest for the loss of use of the $200,000.00 in funds from the time of the wrongful foreclosure and breach of the fiduciary duties the Debtor had established in many, many dealings with First Bank. First Bank, by and through its agent, Jim Johnson, and via its attorney, Elder and Bickings, perpetrated a complete fraud upon the Debtor by their representations that if Debtor would enter into a modification and execute a Deed in Lieu of Foreclosure on the Ohio Street property that those funds would bring Debtor current on the loans with the bank, or most importantly the loan on Debtor's homestead at #5 Hickory Downs, Wichita Falls, Texas. The Debtor was unaware at the time that the recorded Modification of Deed of Trust that she signed on July 9, 2019 was not valid due to the improper acknowledgement by the Notary Public based on the requirements of Texas Property Code 12.001(b).

AA.   On or about November 21, 2019, First Bank received funds in the amount of $18,305.21. This was an insurance check for roof damage on 815 Ohio Street. (See Exhibit 19 attached hereto and incorporated herein by reference as if set forth in its entirety). The 815 Ohio Street property was in contract with Debtor to be sold "as is" without any repairs to the roof being made. Debtor is, therefore, entitled to the full amount of the insurance proceeds plus the $200,000.00 that the property sold for after the wrongful foreclosure with the full amount being owed to debtor in the total sum of $218,305.21 for the Ohio Street property.

6

### III.  1116 BISHOP

A.  On April 13, 2005, Debtor and First Bank executed a Real Estate Deed of Trust for the purchase of 1116 Bishop, Burkburnett, Texas. This Deed was signed and properly acknowledged at Stewart Title Company in Wichita Falls, Texas. The deed was then recorded in Wichita County, Texas. (See Exhibit 20 attached hereto and incorporated herein by reference as if set forth in its entirety).

B.  On April 14, 2010, Debtor and First Bank signed a Modification of Deed of Trust dated April 13, 2010. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Bonita Patterson, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. (See Exhibit 21 attached hereto and incorporated herein by reference as if set forth in its entirety).

C.  On May 30, 2014, Debtor and First bank signed a Modification of Deed of Trust dated April 1, 2014. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First bank where it was notarized by Bonita Patterson, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. (See Exhibit 22 attached hereto and incorporated herein by reference as if set forth in its entirety).

D.  On November 26, 2018, Debtor and First Bank signed a Deed in Lieu of Foreclosure. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Bonita Patterson, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. (See Exhibit 23 attached hereto and incorporated herein by reference as if set forth in its entirety).

E.  During testimony at the Motion for Relief from Automatic Stay hearing held on October 21, 2020, Jim Johnson, First Bank's representative, testified that it was common practice for loan documents and deeds of trust to be prepared, sent home with Richard Clay, and returned with Diane Clay's signature on the documents. The documents were then notarized or acknowledged upon their return to the bank. The various deeds were then recorded in Wichita County, Texas. Diane Clay has not signed any of the Deeds of Trust before a notary public. Texas Property Code 12.001(b) states:

> *An instrument conveying real property may not be recorded unless it is signed and acknowledged or sworn to by the grantor in the presence of two or more credible subscribing witnesses or acknowledged or sworn to before and certified by an officer authorized to take acknowledgements or oaths, as applicable.*

Courts in Texas have long held that where it is shown that the parties did not appear before a notary for the purpose of acknowledging the execution of an instrument, the instrument is void. *See Robertson v. Vernon, 3 S.W.2d 573 (Tex. App. 1927).* See also *Sullivan v. Barnett, 471 S.W.2d 39 (1971).*

7

F.      According to the Wichita County Appraisal District, the property was valued at $57,412.00 in 2019 (See Exhibit 24 attached hereto and incorporated herein by reference as if set forth in its entirety.).

G.      First Bank, through their attorneys Elder & Bickings, wrongfully foreclosed on the property and First Bank and purchased the property on the Courthouse steps for $10,000.00 (See Exhibit 25 attached hereto and incorporated herein by reference as if set forth in its entirety.).

H.      First Bank, fifteen (15) days later, sold the property for $40,000.00 to WFT Home Solutions, Inc. (See Exhibit 26 attached hereto and incorporated herein by reference as if set forth in its entirety.).

I.      The wrongful foreclosure was handled by Elder & Bickings who placed the opening and winning bid.

J.      The $10,000.00 bid on the property was grossly inadequate as the property was valued at $57,412.00.

K.      Debtor sues herein for the value of the property in the amount of $57,412.00.

L.      Statutory "Good Faith," Tex. Bus. & Com. Code (UCC) § 1.203 provides that "Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement."   Furthermore, the Code defines "Good Faith" as " honesty in fact and the observance of reasonable commercial standards of fair dealing."  See Tex. Bus & Com. Code (UCC) § 1.201(20).

IV.    5 HICKORY DOWNS

A.      On September 10, 2010, Debtor purchased 5 Hickory Downs, Wichita Falls, Wichita County, Texas. The Deed of Trust was signed and properly acknowledged at Landmark Title Company in Wichita Falls, Texas. The deed was then recorded in Wichita County, Texas. The original amount of the note to First Bank was $389,000.00.  (See Exhibit 27 attached hereto and incorporated herein by reference as if set forth in its entirety.)

B.      On September 30, 2013, with an effective date of September 30, 2013, First Bank and the Debtor entered into a Modification and Extension Agreement of the note. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Bonita Patterson, Notary Public and employee of First Bank. The deed was then recorded in Wichita County, Texas. The balance of the note at this time was $316,747.83 (See Exhibit 28 attached hereto and incorporated herein by reference as if set forth in its entirety.).

C.      On November 24, 2014, with a retroactive effective date of October 1, 2014, First Bank and the Debtor entered into a Modification and Extension Agreement. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The

document was then returned to First Bank where it was notarized by Karen Smith, Notary Public and employee of First Bank. The deed was then recorded in Wichita County, Texas. The bank asserted that the amount owed was $321,713.01 (See Exhibit 29 attached hereto and incorporated herein by reference as if set forth in its entirety.).

     D.    On June 16, 2017, with a retroactive effective date of February 22, 2017, First Bank and the Debtor entered into a Modification and Extension Agreement. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Bonita Patterson, Notary Public and employee of First Bank. T The deed was then recorded in Wichita County, Texas. The bank asserted that the amount owed was $321,713.01 (See Exhibit 30 attached hereto and incorporated herein by reference as if set forth in its entirety.).

     E.    On March 30, 2018, with a retroactive effective date of January 15, 2018, First Bank and the Debtor entered into a Modification and Extension Agreement. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Bonita Patterson, Notary Public an employee of First Bank. The deed was then recorded in Wichita County, Texas. The bank asserted that the amount owed was $321,713.01 (See Exhibit 31 attached hereto and incorporated herein by reference as if set forth in its entirety.).

     F.    On August 27, 2018, with a retroactive effective date of July 15, 2018, First Bank and the Debtor entered into a Modification and Extension Agreement. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Bonita Patterson, Notary Public an employee of First Bank. The deed was then recorded in Wichita County, Texas. The bank asserted that the amount owed was $321,713.01 (See Exhibit 32 attached hereto and incorporated herein by reference as if set forth in its entirety.).

     G.    During testimony at the Motion for Relief from Automatic Stay hearing held on October 21, 2020, Jim Johnson, First Bank's representative, testified that it was common practice for loan documents and deeds of trust to be prepared, sent home with Richard Clay, and returned with Diane Clay's signature on the documents. The documents were then notarized or acknowledged upon their return to the bank. The various deeds were recorded in Wichita County, Texas. Diane Clay has not signed any of the Deeds of Trust before a notary public. Texas Property Code 12.001(b) states:

> *An instrument conveying real property may not be recorded unless it is signed and acknowledged or sworn to by the grantor in the presence of two or more credible subscribing witnesses or acknowledged or sworn to before and certified by an officer authorized to take acknowledgements or oaths, as applicable.*

Courts in Texas have long held that where it is shown that the parties did not appear before a notary for the purpose of acknowledging the execution of an instrument, the instrument is void. *See Robertson v. Vernon, 3 S.W.2d 573 (Tex. App. 1927).* See also *Sullivan v. Barnett, 471 S.W.2d 39 (1971).*

H.     As of September 17, 2019, the bank asserted that the note for 5 Hickory Downs only needed $22,687.38 to be brought current and for First Bank to renew the note for the seventh time since September 10, 2010 (See Exhibit 33 attached hereto and incorporated herein by reference as if set forth in its entirety.).

I.     On January 8, 2020, an improper Notice of Foreclosure Sale was filed. Not only did the bank not have a valid lien based on Texas Property Code 12.001(b), but the notice was also void on its face, literally, as the document was stamped "VOID" in the upper right-hand corner at the time of filing and posting (See Exhibit 34 attached hereto and incorporated herein by reference as if set forth in its entirety.).

J.     On or about February 4, 2020, without a valid lien based on Texas Property Code 12.001(b) and without proper notice due to the "voided" Notice of Foreclosure Sale, First Bank, by and through Elder & Bickings, foreclosed on the property known as 5 Hickory Downs, Wichita Falls, Texas (See Exhibit 35 attached hereto and incorporated herein by reference as if set forth in its entirety.).

K.     Had First Bank, through their attorney Elder & Bickings, not fraudulently deceived the Debtor in order to wrongfully foreclose on the property located at 815 Ohio, Wichita Falls, TX as outlined in Section II, the Debtor would have had $218,305.21 to pay the asserted amount of $22,687.38 in order to bring the homestead current and avoid the wrongful commencement of foreclosure.

L.     On May 4, 2020, Debtor filed this Chapter 13 Bankruptcy case.

M.     On June 26, 2020, First Bank, by and through their attorney of record Hank Rugeley, filed a Motion for Relief from Automatic Stay to evict Debtor from the property known as 5 Hickory Downs, Wichita Falls, TX (See Exhibit 36 attached hereto and incorporated herein by reference as if set forth in its entirety.).

N.     There has been no valid foreclosure of 5 Hickory Downs, Wichita Falls, Texas. First Bank did not have a valid Deed of Trust under Texas Property Code 12.001(b). A "VOID" Notice of Foreclosure Sale was posted at the Wichita County Courthouse and was filed as a "VOID" document in the Wichita County Clerk records. Debtor hereby seeks attorney's fees in setting aside that wrongful foreclosure. Debtor sues herein for the value of the property in the amount of $525,00.00, or in the alternative, Debtor sues for the deed free and clear of liens to the property located at 5 Hickory Downs, Wichita Falls, Texas.

VI.     OTHER ACCOUNTING ISSUES

A.     On or about May 8, 2018, First Bank received funds in the amount of $12,500.00 from the Debtor. An accounting of these funds has not been provided showing the funds were applied to any account, much less the Debtor's homestead at #5 Hickory Downs, Wichita Falls, Texas. (See Exhibit 37 attached hereto and incorporated herein by reference as if set forth in its entirety.)

B.     First Bank is currently holding jewelry in the wholesale amount of $42,365.00,

retail value of $63,550.00. An accounting of these funds has not been provided (See Exhibit 38 attached hereto and incorporated herein by reference as if set forth in its entirety.).

C. Statutory "Good Faith," Tex. Bus. & Com. Code (UCC) § 1.203 provides that "Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement." Furthermore, the Code defines "Good Faith" as " honesty in fact and the observance of reasonable commercial standards of fair dealing." See Tex. Bus & Com. Code (UCC) § 1.201(20).

## VII.  BREACH OF FIDUCIARY DUTY

While the relationship between debtor and creditor alone does not lend itself to a general imposition of the duty of good faith and fair dealing, nonetheless a duty of good faith and fair dealing may arise:

(a) by agreement;

(b) in particular circumstances, between the parties as a result of a long standing, special relationship of trust and confidence between them (although mere subjective intent alone cannot so create the duty of good faith and fair dealing); and

(c) may arise when an imbalance of bargaining power exists — at least when the defendant bank is responsible for the imbalance.

In this case all three situations existed.

(a) Debtor and First Bank agreed to deal with each other in the spirit of good faith and fair dealing, over a period of many, many years via many, many notes;

(b) First Bank repeatedly expressly agreed to continue the well-established course of dealing that had typified the relationship between debtor and First Bank; and

(c) as a result of debtor's reliance or dependence upon First Bank's promises, an imbalance of bargaining power was subsequently created and exploited by First Bank— after debtor, subsequent to the fraudulent letter (Exhibit 11) stating First Bank still had a lien to enforce, subject to Texas Property Code 12.001(b), and subsequent to the running of the statute of limitations on the Ohio Property, coerced the debtor to sign a Deed In Lieu Of Foreclosure (which was not properly acknowledged under Texas Property Code 12.001(b) (Exhibit 13) and a Loan Modification Agreement (Exhibit 12) even though there was already an "AS IS, WHERE IS" Contract for Sale in the amount of $200,000.00, which the property actually sold for subsequent to the Deed in Lieu and the Foreclosure sale.

Statutory "Good Faith," Tex. Bus. & Com. Code (UCC) § 1.203 provides that "Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement." Furthermore, the Code defines "Good Faith" as " honesty in fact and the observance of reasonable commercial standards of fair dealing." See Tex. Bus & Com. Code (UCC) § 1.201(20).

It was a complete fraud upon the debtor that coerced her into executing a Deed In Lieu of Foreclosure and a Loan Modification Agreement due to the express statement that the lien was still valid in the letter dated July 2, 2019, when in fact the lien was totally null and void because of Texas Property Code 12.001(b) and/or the running of the statute of limitations the day before the letter was dated. First Bank wrongfully coerced the debtor, by fraud, to sign the property away due to an invalid, void, lien on the property that had already expired via the statute of limitations that ran on July 1, 2019.

First Bank then proceeded to do a debt modification, after the running of the statute of limitations via their attorneys, Elder & Bickings. This debt modification was done with the express intent of defrauding the debtor from the benefit of the sale of the realty that was already in contract for $200,000.00–the amount the property sold for at fair market value which debtor does concede as it was already in contract before the Deed in Lieu of Foreclosure, which was not properly acknowledged, and the foreclosure subsequently done by First Bank. The debtor was not credited for the fair market value of the sale. Debtor was also entitled to the $18,305.21 insurance proceeds.

There was a degree of certainty that First Bank would deal with the debtor fairly. There is a degree of moral blame attached to First Bank's conduct. There was a foreseeability of harm to the debtor. There is a closeness of the connection between First Bank's conduct and the injury perpetrated upon the debtor, and there is a moral blame attached to these actions. A debtor would not execute a Deed In Lieu of Foreclosure if the debtor knew that the bank's lien was invalid based on Texas Property Code 12.001(b), for which that debtor already had a contract for deed in the amount of $200,000.00 without his fiduciary, the bank in the instance as well as his attorneys, breaching their special, fiduciary relationship. The debtor would also not execute a Deed In Lieu of Foreclosure with a contract for sale in place for $200,000.00. The contract for sale the debtor had for $200,000.00 was subsequently performed by First Bank, except First Bank did not sell the property "AS IS, WHERE IS," as Debtor had contracted.

Under Texas law, the elements of a cause of action for fraud are: (1) a material representation; (2) that representation was false;(3) when the material, false representation was made, the speaker knew it was false or made it recklessly without regard for its truth; (4) the representation was made with the intent that the other party act upon it; (5)the other party acted in reliance upon that representation; and (6) the other party suffered injury.

An example of one fiduciary relationship, which is not here sued upon was the purchase of a bank building of office furniture which Debtor sold to First Bank for $110,091.39. It took Debtor almost a month to get all the office furniture delivered to First Bank. In return First Bank was to apply the $110,091.39 to Debtor's notes, and with all debtors the first, and foremost, note was the homestead on #5 Hickory Downs, Wichita Falls, Texas.

The entry into the Deed in Lieu of Foreclosure and Loan Modification on the 815 Ohio Street property was another such example of the breach of fiduciary duty. Debtor already had the property in contract for $200,000.00 and only executed the Deed in Lieu and Loan Modification because First Bank, through Jim Johnson, represented that First Bank still had a lien on the property.

12

Debtor seeks punitive damages for the breach of fiduciary duty along with attorney's fees included as punitive damages for said breach.

## VIII.  UNJUST ENRICHMENT UNDER TEXAS LAW

"'[a] party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'

First Bank, by fraud, secured the Deed In Lieu of Foreclosure when they knew, or should have known that the recorded Modification of Deeds of Trust were not valid because they were not properly acknowledged as required by Texas Property Code 12.001(b). First Bank, by fraud, secured the Deed In Lieu of Foreclosure as well as the last modification after the statute of limitations had expired, resulting in a void lien, and unjustly enriched themselves to receive $200,000.00 on a debt of $111,741.90 owed to them plus the $18,305.21 insurance proceeds.

Statutory "Good Faith," Tex. Bus. & Com. Code (UCC) § 1.203 provides that "Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement." Furthermore, the Code defines "Good Faith" as " honesty in fact and the observance of reasonable commercial standards of fair dealing." See Tex. Bus & Com. Code (UCC) § 1.201(20).

Debtor seeks the full payment of the value of 815 Ohio Street, Wichita Falls, Texas in the amount of $200,000.00 plus the $18.031.21 insurance proceeds plus attorney's fees.

## IX.  CIVIL CONSPIRACY--815 OHIO STREET

In order to state a conspiracy claim under Texas law, Plaintiff must allege: (1) an agreement between two or more persons; (2) to inflict wrong against, or injury on, another; (3) a meeting of the minds on the object or course of accomplishing such action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result.

First Bank via Jim Johnson, their agent, sent the letter of July 2, 2019 stating they still had a lien in violation of Texas Property Code 12.001(b) and after the expiration of the statute of limitations. Their counsel, and debtor's counsel, Elder & Bickings, then proceeded to obtain a Deed In Lieu of Foreclosure, which is not valid based on failure to have it properly acknowledged under Texas Property Code 12.001(b), for which debtor executed after the expiration of the statute of limitations, and a Loan Modification Agreement. First Bank wrote the letter stating they still had a lien, which was in violation of Texas Property Code 12.001(b) and after the expiration of their lien, and their legal counsel, Elder & Bickings, who also had represented the debtor in many affairs, then proceeded to obtain debtor's agreement to enter into the Deed In Lieu of Foreclosure and subsequently the Loan Modification. This was a conspiracy between First Bank, Jim Johnson, and their counsel, who was also Debtor's counsel, Elder & Bickings.

13

### X. WRONGFUL FORECLOSURE ON 815 OHIO

Under Texas law, the elements of a wrongful foreclosure claim are:(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price.

The recorded Deeds of Trust relied upon to obtain a Deed in Lieu of Foreclosure was not valid based on the failure to be properly acknowledged in accordance with Texas Property Code 12.001(b). Additionally, Debtor already had a contract for sale in the amount of $200,000.00 "AS IS, WHERE IS" prior to any execution of the Deed in Lieu of Foreclosure or the Loan Modification. $10,000.00 earnest money had already been paid in earnest money by the purchaser that purchased the property subsequently from First Bank after the wrongful foreclosure. This fiduciary relationship with both First Bank and debtor's counsel, Elder & Bickings, which also represented First Bank, resulted in a Wrongful Foreclosure. The recorded Deeds of Trust relied upon to obtain the Deed in Lieu of Foreclosure, as well as the Deed in Lieu of Foreclosure itself, were invalid based upon the failure of the bank to obtain proper acknowledgment in accordance with Texas Property Code 12.001(b). Additionally, the statute of limitations had already expired as set forth above. The property sold for the amount that had been owed to the bank, $111,741.90. The known value of the property before the sale was $200,000.00, as it was already in contract with a $10,000.00 earnest money deposited with the title company.

### XI. WRONGFUL FORECLOSURE AND CHILLED BIDDING ON #5 HICKORY DOWNS

The Deeds of Trust relied upon to obtain foreclosure on #5 Hickory Downs were invalid because Diane Clay's signatures were not properly acknowledged by a Notary Public in accordance with Texas Property Code 12.001(b). The deeds were then recorded in Wichita County, Texas.

The Notice of Foreclosure posted at the courthouse to comply with the statute was marked "VOID" by a stamp. It was a posting of a Notice of Foreclosure that on its face was stamped with "VOID" at its posting in the upper right-hand corner over the file mark of the Clay County clerk file stamp.

There is no possible way that the posting of a Notice of Foreclosure posted at the courthouse with a "VOID" stamp on that notice could constitute notice of the sale of the property at # 5 Hickory Downs, Wichita Falls, Texas on January 8, 2020. Any potential buyer that may have been inclined to bid on that property would simply disregard that notice of sale because it had stamped on its face that the notice itself was "VOID." The Court, as the trier of fact in this case MUST look at that document as the parties, through contract, have waived a jury trial in this matter. To anybody that would see that notice posted at the courthouse, it would have to be perceived as a correction of a prior filing mistake and the sale of property was totally "VOID" as it shows on the notice. There is no way that the posting of the Notice of Foreclosure Sale was in any way adequate with the "VOID" stamp on it in the upper right-hand corner.

Texas law, as to a notice of sale posted on a foreclosure, is quite explicit in that the notice must be free of errors in a non-judicial foreclosure. Posting a notice which on its face is "VOID"

14

could in no way comply with the statute. When a foreclosure notice states on its face that is "VOID," what bonafide buyer would even read it? The debtor submits to the Court that nobody would read it, and the "VOID" stamp on the notice would leave nobody but the bank to bid on this foreclosure, thereby foreclosing all legitimate, potential, buyers of the homestead property. The homestead property sold for approximately $100,000 less than appraised value, which is grossly inadequate. The defect of posting a "VOID" Notice of Foreclosure Sale notice resulted in a grossly inadequate sales price of the homestead.

The bank and the trustee were guilty of "Chilled Bidding" as the trustee, Billy Elder, must conduct the foreclosure sale fairly and may not discourage bidding by acts or statements made before or during the sale. Posting a Notice of Foreclosure Sale that has stamped on the posting, and the filing itself, that the Notice of Foreclosure Sale constitutes a violation of the trustee's duty by posting a "VOID" notice, on its face, resulting in "Chilled Bidding" in violation of the trustee's duties. The property had a value of $450,000.00, according to a recent appraisal, and sold to First Bank with the bid of $335,000.00 by Elder & Bickings, attorney for First Bank (See Exhibit 32 attached hereto and incorporated herein by reference as if set forth in its entirety).

One key feature of the ongoing, special relationship between the Debtor and First Bank was the bank's knowledge that the Debtor had a six-month balloon note on his homestead in which he only paid interest on a note Debtor could not afford. The note was predatory.

The note was termed as a bridge note. A bridge loan is a short-term loan use until a person or company secures permanent financing or removes an existing obligation. It allows the user to meet current obligations by providing immediate cash flow. Bridge loans are again short-term, up to one year, have relatively high interest rates, and are usually backed by some form of collateral, such as real estate or inventory.

## XII. SPECIAL RELATIONSHIP

There was a long-standing special relationship of trust and confidence with Debtor and First Bank's agents, including Jim Johnson and Billy Elder/Elder & Bickings which resulted in an imbalance of bargaining power of which First Bank, though its agents and Elder and Bickings were responsible for that imbalance through their dealings with Debtor. The conduct, because of the special relationship described above, resulted in bad faith and unfair dealing. The actions of First Bank and Elder & Bickings, its agent, resulted in arbitrary, capricious, and unreasonable acts that were detrimental to the Debtor. These acts were conscious acts, as described hereinabove, with a known risk of substantial risk of harm to Debtor. These acts described hereinabove are aggravated, outrageous, malicious, or fraudulent.

Debtor, guided by the judgment or advice of these parties, was justified in believing that these other parties would act in Debtor's best interests. These parties acquired influence over the Debtor and abused that influence. They had worked together over an exceptionally long period of time. Debtor was dependent upon the advice of both First Bank, via Jim Johnson, and depended upon the legal advice of Elder & Bickings. It was apparent to Debtor that those parties assumed that duty to advise, counsel and protect the weaker party, the Debtor. That duty was wholly breached through their actions as set forth above.

## XIII. DURESS & ECONOMIC DURESS

Duress has been defined as:

(a). a threat to do something the threatening party has no legal right to do;

(b). the threat destroys the free agency of the party to whom it was directed and causes the party to do that which he or she would otherwise not do, and which he or she was not legally bound to do;

(c). the restraint caused by threatening party must be imminent; and

(d). the person to whom the threat is directs has no present means of protection.

First Bank threatened to foreclose on a lien that never existed. Alternatively, the lien no longer existed as the statute of limitations had expired on the note and the lien the day before the letter from Jim Johnson with First Bank that the bank was going to foreclose on the lien. The threat, later to be found to be nothing more than a lie and a fraud upon the Debtor, caused Debtor to enter into the Deed in Lieu of Foreclosure as well as the loan modification even though a valid lien did not exist and after the statute had ran, should the lien be deemed valid.

## XIV. LIABLITY RELATED TO A FRAUDULENT COURT RECORD OR FRAUDULENT LIEN OF CLAIM FILED AGAINST REAL PROPERTY

The Texas Civil Practices and Remedies Code Section 12.002(a)(1), 12.002(a)(2), 12.002(a)(3), and 12.002(b) states as follows:

Sec 12.002. LIABILITY.

(a) A person may not make, present or use a document or other record with:

(1) Knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

(2) Intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

(3) Intent to cause another person to suffer:

(A) Physical injury;

(B) Financial injury; or

(C) Mental anguish or emotional distress.

(b) A person who violates Subsection (a) of (a-1) is liable to each injured person for:

16

(1)    the greater of:

    (A)    $10,000.00; or

    (B)    the actual damages caused by the violation;

(2)    court costs;

(3)    reasonable attorney's fees; and

(4)    exemplary damages in an amount determined by the court.

Plaintiff alleges the following:

A.    On May 16, 2007, Debtor and First Bank signed a Modification of Deed of Trust dated May 14, 2007. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Bonita Patterson, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. (See Exhibit 2 attached hereto and incorporated herein by reference as if set forth in its entirety).

B.    On May 15, 2008, Debtor and First Bank signed a Modification of Deed of Trust dated May 14, 2008. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Bonita Patterson, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. (See Exhibit 3 attached hereto and incorporated herein by reference as if set forth in its entirety).

C.    On May 18, 2009, Debtor and First Bank signed a Modification of Deed of Trust dated May 14, 2009. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Susan Brooks, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. (See Exhibit 4 attached hereto and incorporated herein by reference as if set forth in its entirety).

D.    On May 27, 2010, Debtor and First Bank signed a Modification of Deed of Trust dated May 24, 2010. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Bonita Patterson, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. (See Exhibit 5 attached hereto and incorporated herein by reference as if set forth in its entirety).

E.    On June 28, 2011, Debtor and First Bank signed a Modification of Deed of Trust dated May 24, 2011. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Jamie Gafford, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. (See Exhibit 6 attached hereto and incorporated herein by reference as if set forth in its entirety).

    F.     On June 29, 2012, Debtor and First Bank signed a Modification of Deed of Trust dated May 24, 2012. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Jamie Gafford, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. (See Exhibit 7 attached hereto and incorporated herein by reference as if set forth in its entirety).

    G.     On July 31, 2014, Debtor and First Bank signed a Modification of Deed of Trust dated July 1, 2014. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Karen Smith, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. The maturity date on the note, according to the deed, was July 1, 2015 (See Exhibit 8 attached hereto and incorporated herein by reference as if set forth in its entirety.).

    H.     On April 14, 2010, Debtor and First Bank signed a Modification of Deed of Trust dated April 13, 2010. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Bonita Patterson, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. (See Exhibit 21 attached hereto and incorporated herein by reference as if set forth in its entirety).

    I.     On May 30, 2014, Debtor and First bank signed a Modification of Deed of Trust dated April 1, 2014. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First bank where it was notarized by Bonita Patterson, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. (See Exhibit 22 attached hereto and incorporated herein by reference as if set forth in its entirety).

    J.     On November 26, 2018, Debtor and First Bank signed a Deed in Lieu of Foreclosure. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Bonita Patterson, Notary Public, and employee of First Bank. The deed was then recorded in Wichita County, Texas. (See Exhibit 23 attached hereto and incorporated herein by reference as if set forth in its entirety).

    K.     On September 30, 2013, with an effective date of September 30, 2013, First Bank and the Debtor entered into a Modification and Extension Agreement of the note. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Bonita Patterson, Notary Public and employee of First Bank. The deed was then recorded in Wichita County, Texas. The balance of the note at this time was $316,747.83 (See Exhibit 28 attached hereto and incorporated herein by reference as if set forth in its entirety.).

    L.     On November 24, 2014, with a retroactive effective date of October 1, 2014, First Bank and the Debtor entered into a Modification and Extension Agreement. The Debtor contends

that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Karen Smith, Notary Public and employee of First Bank. The deed was then recorded in Wichita County, Texas. The bank asserted that the amount owed was $321,713.01 (See Exhibit 29 attached hereto and incorporated herein by reference as if set forth in its entirety.).

    M.    On June 16, 2017, with a retroactive effective date of February 22, 2017, First Bank and the Debtor entered into a Modification and Extension Agreement. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Bonita Patterson, Notary Public and employee of First Bank. T The deed was then recorded in Wichita County, Texas. The bank asserted that the amount owed was $321,713.01 (See Exhibit 30 attached hereto and incorporated herein by reference as if set forth in its entirety.).

    N.    On March 30, 2018, with a retroactive effective date of January 15, 2018, First Bank and the Debtor entered into a Modification and Extension Agreement. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Bonita Patterson, Notary Public an employee of First Bank. The deed was then recorded in Wichita County, Texas. The bank asserted that the amount owed was $321,713.01 (See Exhibit 31 attached hereto and incorporated herein by reference as if set forth in its entirety.).

    O.    On August 27, 2018, with a retroactive effective date of July 15, 2018, First Bank and the Debtor entered into a Modification and Extension Agreement. The Debtor contends that her spouse, Richard Clay, brought the document to her at their home and she signed. The document was then returned to First Bank where it was notarized by Bonita Patterson, Notary Public an employee of First Bank. The deed was then recorded in Wichita County, Texas. The bank asserted that the amount owed was $321,713.01 (See Exhibit 32 attached hereto and incorporated herein by reference as if set forth in its entirety.).

## XV.   PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Debtor prays that;

    (a) That this Petition be filed and that a day be appointed for a hearing on this matter.

    (b) Plaintiff seeks damages in an amount not to exceed the jurisdictional limits of this Court.

    (c) Plaintiff seeks economic damages in an amount of $218,305.21 for 815 Ohio Street, Wichita Falls, Texas. This amount is calculated by the value of the property plus the amount of an insurance check retained by First Bank.

    (d) Plaintiff seeks economic damages in the amount of $57,412.00 for 1116 Bishop Road,

Burkburnett, Texas. This amount is calculated by the value of the property.

(e) Plaintiff seeks economic damages in the amount of $525,000.00 for #5 Hickory Downs, Wichita Falls, Texas or, in the alternative, a deed free and clear of liens to #5 Hickory Downs, Wichita Falls, Texas. This amount is calculated by the value of the property.

(f) Plaintiff seeks damages under Texas Civil Practice and Remedies Code, Chapter 12, the amount of $80,000.00 for the eight (8) fraudulent deeds of trust that were recorded in Wichita County, Texas for 815 Ohio, Wichita Falls, Texas and $200,000.00 for the value of 815 Ohio, Wichita Falls, Texas and $18,305.21 for the insurance check for 815 Ohio, Wichita Falls, Texas.

(g) Plaintiff seeks damages under Texas Civil Practices and Remedies Code, Chapter 12, the amount of $20,000.00 for the two (2) fraudulent deeds of trust that were recorded in Wichita County, Texas for 1116 Bishop, Burkburnett, Texas and $57,412.00 for the value of 1116 Bishop, Burkburnett, Texas.

(h) Plaintiff seeks damages under Texas Civil Practices and Remedies Code, Chapter 12, the amount of $40,000.00 for the four (4) fraudulent deeds of trust that were recorded in Wichita County, Texas for #5 Hickory Downs, Wichita Falls, Texas and $525,000.00 for the value of #5 Hickory Downs, Wichita Falls, Texas.

(i) Plaintiff seeks punitive damages in the amount of $1,741,434.42. This amount is equal to the total amount of economic damages and damages under Texas Civil Practices and Remedies Code.

(j) Plaintiff seeks exemplary damages to be determined by the Court.

(k) Plaintiff seeks attorney fees in the estimated amount of $150,000.00.

(l) Equitable Relief;

(m) Costs of Court; and

(n) All other relief to which Plaintiff is entitled;

Debtor prays for general relief.

Monte J. White and Associates, P.C.
1106 Brook Avenue
Wichita Falls, TX 76301
(940) 723-0099
(940) 723-096
legal@montejwhite.com

20

By: _____

Monte J. White
State Bar No. 00785232

ATTORNEY FOR Diane Travinikoff Clay

## CERTIFICATE OF SERVICE

I hereby certify that on this May 17, 2021 a true and complete copy of the above and foregoing First Amended Plaintiff's Original Complaint was mailed by the following methods to the following:

DEFENDANT'S ATTORNEY (by certified mail, return receipt requested)

Hank Rugeley
Davison Rugeley, LLP
900 8th Street, Suite 1102
Wichita Falls, TX 76301

TRUSTEE (by regular first-class mail)

Robert B. Wilson
Standing Bankruptcy Trustee
1407 Buddy Holly Avenue
Lubbock, TX 79401

Doc #  Bk   Vol   Pg
00109570  OR   3017  561

Space Above This Line For Recording Data

# DEED OF TRUST

**DATE AND PARTIES.** The date of this Deed Of Trust (Security Instrument) is September 14, 2006. The parties and their addresses are:

**GRANTOR:**
**DIANE T. CLAY**
4409 Tobago
Wichita Falls, Texas 76308

**TRUSTEE:**
**J. CHARLES WHITE**
4110 Kell Blvd.
Wichita Falls, Texas  76309

**LENDER:**
**FIRST BANK**
Organized and existing under the laws of Texas
4110 Kell Blvd.
Wichita Falls, Texas  76309

**1. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:

Lot Eleven (11), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume 5, Page 21-24, Wichita County Plat Records.

The property is located in Wichita County at 815 Ohio, Wichita Falls, Texas 76301.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches and water stock, crops, timber, all diversion payments or third party payments made to crop producers and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**2. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time will not exceed $85,000.00. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**3. SECURED DEBTS.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

**A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 3000001544, dated September 14, 2006, from Grantor to Lender, with a loan amount of $85,000.00 and maturing on May 14, 2007.

**B. All Debts.** All present and future debts from Grantor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent



EXHIBIT
1

Doc
00109570

Bk
OR

Vol
3017

Pg
562

security interest in the Grantor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities.

**C. Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**4. PAYMENTS.** Grantor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

**5. WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:

**A.** To make all payments when due and to perform or comply with all covenants.

**B.** To promptly deliver to Lender any notices that Grantor receives from the holder.

**C.** Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

**8. DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**9. WARRANTIES AND REPRESENTATIONS.** Grantor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Grantor or to which Grantor is a party.

**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor will not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Grantor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Grantor will not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender will give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property will be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. ASSIGNMENT OF LEASES AND RENTS.** Grantor absolutely, unconditionally, irrevocably and immediately assigns, grants, conveys to Lender all the right, title and interest in the following (Property).

**A.** Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to any extensions, renewals, modifications or replacements (Leases).

**B.** Rents, issues and profits, including but not limited to security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Grantor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

```
Doc          Bk      Vol      Ps
00109570 OR      3017      563
```

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Grantor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Lender grants Grantor a revocable license to collect, receive, enjoy and use the Rents so long as Grantor is not in default. Grantor's default automatically and immediately revokes this license. Grantor will not collect in advance any Rents due in future lease periods, unless Grantor first obtains Lender's written consent. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Upon default, Grantor will receive any Rents in trust for Lender and Grantor will not commingle the Rents with any other funds. When Lender so directs, Grantor will endorse and deliver any payments of Rents from the Property to Lender. Grantor agrees that Lender will not be considered to be a mortgagee-in-possession by executing this Security Instrument or by collecting or receiving payments on the Secured Debts, but only may become a mortgagee-in-possession after Grantor's license to collect, receive, enjoy and use the Rents is revoked by Lender or automatically revoked on Grantor's default, and Lender takes actual possession of the Property. Consequently, until Lender takes actual possession of the Property, Lender is not obligated to perform or discharge any obligation of Grantor under the Leases, appear in or defend any action or proceeding relating to the Rents, the Leases or the Property, or be liable in any way for any injury or damage to any person or property sustained in or about the Property. Grantor agrees that this Security Instrument is immediately effective between Grantor and Lender and effective as to third parties on the recording of this Assignment. As long as this Assignment is in effect, Grantor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Grantor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Grantor or any party to the Lease defaults or fails to observe any applicable law, Grantor will promptly notify Lender. If Grantor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance. Grantor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Grantor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Grantor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

**13. DEFAULT.** Grantor will be in default if any of the following occur:

**A. Payments.** Grantor fails to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against Grantor, Borrower, or any co-signer, endorser, surety or guarantor of this Security Instrument or any other obligations Borrower has with Lender.

**C. Death or Incompetency.** Grantor dies or is declared legally incompetent.

**D. Failure to Perform.** Grantor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

**E. Other Documents.** A default occurs under the terms of any other document relating to the Secured Debts.

**F. Other Agreements.** Grantor is in default on any other debt or agreement Grantor has with Lender.

**G. Misrepresentation.** Grantor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** Grantor fails to satisfy or appeal any judgment against Grantor.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** Grantor changes Grantor's name or assumes an additional name without notifying Lender before making such a change.

**K. Property Transfer.** Grantor transfers all or a substantial part of Grantor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section.

**L. Property Value.** Lender determines in good faith that the value of the Property has declined or is impaired.

**M. Insecurity.** Lender determines in good faith that a material adverse change has occurred in Grantor's financial condition from the conditions set forth in Grantor's most recent financial statement before the date of this Security Instrument or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**14. REMEDIES.** On or after default, Lender may use any and all remedies Lender has under state or federal law or in any document relating to the Secured Debts, including, without limitation, the power to sell the Property. Any amounts advanced on Grantor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Grantor's default.

Subject to any right to cure, required time schedules or any other notice rights Grantor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of a default or anytime thereafter.

In the event of default, it will be the duty of the Trustee, at the request of Lender (which request is hereby conclusively presumed), to invoke power of sale as required by Section 51.002 of the Texas Property Code, as

then amended. Trustee will advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey indefeasible title to the Property with covenants of general warranty. Trustee will give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

To the extent permitted by law, a mortgage servicer on behalf of Lender may manage information regarding Grantor's last known address, appoint a trustee or substitute trustee, including, without limitation, a perpetual substitute trustee, and administer all aspects of a foreclosure as authorized in this Security Instrument or by applicable law. The Lender may include, without limitation, a book entry system to the extent permitted by law.

To the extent not prohibited by law, Trustee will apply the proceeds of the Property's sale in the following order: to all fees, charges, costs and expenses of exercising the power of sale and the sale; to Lender for all advances made for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon; to the Secured Debts' principal and interest; and paying any surplus as required by law. Lender or its designee may purchase the Property.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys indefeasible title to the purchaser, without warranty or with covenants or special or general warranty. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein to the extent permitted by law.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**15. FORECLOSURE.** In the event a foreclosure under power of sale should be commenced by the Trustee, Lender may at any time before the sale of the Property direct the Trustee to abandon the sale, and may then institute suit for the collection of the Secured Debts and for the foreclosure of the lien of this Security Instrument. It is further agreed that if Lender should institute a suit for the collection of the Secured Debts, and for a foreclosure of the lien of this Security Instrument, then Lender may at any time before the entry of a final judgment in said suit dismiss the same, and require the Trustee to sell the Property in accordance with the provisions of this Security Instrument. Lender, if it is the highest bidder, will have the right to purchase at any sale of the Property, and to have the amount for which such Property is sold credited on the Secured Debts.

**16. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, Grantor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Security Instrument or any other document relating to the Secured Debts. Grantor agrees to pay expenses for Lender to inspect and preserve the Property and for any recordation costs of releasing the Property from this Security Instrument. Expenses include, but are not limited to, reasonable attorneys' fees, court costs, and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts. In addition, to the extent permitted by the United States Bankruptcy Code, Grantor agrees to pay the reasonable attorneys' fees incurred by Lender to protect Lender's rights and interests in connection with any bankruptcy proceedings initiated by or against Grantor.

**17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Grantor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

B. Except as previously disclosed and acknowledged in writing to Lender, Grantor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

C. Grantor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Grantor will take all necessary remedial action in accordance with Environmental Law.

D. Except as previously disclosed and acknowledged in writing to Lender, Grantor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Grantor or any tenant of any Environmental Law. Grantor will immediately notify Lender in writing as soon as Grantor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.

```
Doc            Bk      Vol      Pg
00109570 OR            3017     565
```

F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Grantor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Grantor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Grantor and any tenant are in compliance with applicable Environmental Law.

I. Up on Lender's request and at any time, Grantor agrees, at Grantor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Grantor's obligations under this section at Grantor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Grantor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Grantor will provide Lender with collateral of at least equal value to the Property without prejudice to any of Lender's rights under this Security Instrument.

L. Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

**18. CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. INSURANCE.** Grantor agrees to keep the Property insured against the risks reasonably associated with the Property. Grantor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts. Grantor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld.

All insurance policies and renewals will include a standard "mortgage clause" and, where applicable, "loss payee clause." If required by Lender, Grantor agrees to maintain comprehensive general liability insurance and rental loss or business interruption insurance in amounts and under policies acceptable to Lender. The comprehensive general liability insurance must name Lender as an additional insured. The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing).

Grantor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Grantor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Grantor will immediately notify Lender of cancellation or termination of insurance. If Grantor fails to keep the Property insured, Lender may obtain insurance to protect Lender's interest in the Property and Grantor will pay for the insurance on Lender's demand. Lender may demand that Grantor pay for the insurance all at once, or Lender may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include coverages not originally required of Grantor, may be written by a company other than one Grantor would choose, and may be written at a higher rate than Grantor could obtain if Grantor purchased the insurance. Grantor acknowledges and agrees that Lender or one of Lender's affiliates may receive commissions on the purchase of this insurance.

**20. COLLATERAL PROTECTION INSURANCE. Property Insurance is required.** Grantor agrees to buy insurance on the Property in the amount Lender specifies, subject to applicable law. **Grantor shall have the option of furnishing any required insurance either through existing policies of insurance owned or controlled by Grantor or procuring and furnishing the equivalent coverage through any insurance company authorized to do business in Texas or an eligible surplus line insurer to the extent permitted by law.** Grantor will name Lender as loss payee under the policy. Grantor may be required to deliver to Lender a copy of the collateral protection insurance policy and proof of payment of premiums.

If Grantor fails to meet any of these requirements, Lender may obtain collateral protection insurance on Grantor's behalf. Lender is not required to purchase any type or amount of insurance. To the extent permitted by law, Lender may obtain insurance that will cover either the actual amount of unpaid indebtedness or the replacement cost of improvements, subject to policy limits. If Lender purchases insurance for the Property, Grantor will be responsible for the cost of that insurance, including interest and any other charges incurred by Lender in connection with the placement of collateral protection insurance to the extent permitted by law. Grantor understands that insurance Lender obtains may cost significantly greater than the cost of insurance Grantor could have obtained.

```
Doc                 Bk      Vol      Pg
00109570 OR          3017    566
```

Amounts that Grantor owes are due and payable upon demand or on such other terms as Lender requires to the extent permitted by law.

**21. ESCROW FOR TAXES AND INSURANCE.** Grantor will pay to Lender amounts for (a) yearly taxes and assessments on the Property which under the law may be superior to this Security Instrument, (b) yearly leasehold payments or ground rents (if any), (c) yearly premiums for hazard or property insurance, (d) yearly premiums for flood insurance (if any), and (e) yearly premiums for mortgage insurance (if any). Grantor will pay those amounts to Lender unless Lender tells Grantor, in writing, that Grantor does not have to do so, or unless the law requires otherwise. Grantor will make those payments at the times required by Lender.

Lender will estimate from time to time Grantor's yearly taxes, assessments, leasehold payments or ground rents and insurance premiums, which will be called the Escrow Items. The amounts that Grantor pays to Lender for Escrow Items under this section will be called the Funds.

Lender will keep the Funds in a savings or banking institution which has its deposits or accounts insured or guaranteed by a federal or state agency. If Lender is such an institution, Lender may hold the Funds. Lender will use the Funds to pay the Escrow Items.

Lender will not be required to pay Grantor any interest or earnings on the Funds unless either (i) Lender and Grantor agree in writing, at the time Grantor signed this Security Instrument, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

If the amount of the funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify borrower in writing, and, in such case, borrower will pay to Lender the amount necessary to make up the shortage or deficiency. Borrower shall make up the shortage or deficiency as Lender directs, subject to the requirements of applicable law.

If, by reason of any default under this Security Instrument, Lender declares all Secured Debts due and payable, Lender may then apply any Funds against the Secured Debts.

When Grantor has paid all of the sums secured, Lender will promptly refund to Grantor any Funds that are being held by Lender.

**22. CO-SIGNERS.** If Grantor signs this Security Instrument but is not otherwise obligated to pay the Secured Debts, Grantor does so only to convey Grantor's interest in the Property to secure payment of the Secured Debts and Grantor does not agree by signing this Security Instrument to be personally liable on the Secured Debts. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws.

**23. SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, will succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

**24. WAIVERS.** Except to the extent prohibited by law, Grantor waives all appraisement rights relating to the Property.

**25. USURY SAVINGS.** In no event shall any provision of this Security Instrument or any other instrument evidencing or securing the Secured Debts ever obligate Grantor to pay or allow Lender to collect interest on the Secured Debts at a rate greater than the maximum non-usurious rate permitted by applicable law.

In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby. In the event that any law is interpreted so that any charge provided for in this Security Instrument and/or together with any instrument evidencing the Secured Debts, violates such law by reason of the acceleration of the Secured Debts or otherwise, such charge is hereby reduced to eliminate such violation. Any amounts paid to Lender in excess of the amounts permitted by applicable law shall be applied to reduce the principal of the Secured Debts, or, at Lender's option, be refunded.

**26. APPLICABLE LAW.** This Security Instrument is governed by the laws of Texas, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**27. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Grantor's obligations under this Security Instrument are independent of the obligations of any other Grantor. Lender may sue each Grantor individually or together with any other Grantor. Lender may release any part of the Property and Grantor will still be obligated under this Security Instrument for the remaining Property. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Grantor.

**28. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Grantor and Lender. This Security Instrument and any other documents relating to the Secured Debts are the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**29. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

**30. NOTICE, FINANCIAL REPORTS, ADDITIONAL DOCUMENTS AND RECORDING TAXES.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's

address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Grantor will be deemed to be notice to all Grantors. Grantor will inform Lender in writing of any change in Grantor's name, address or other application information. Grantor will provide Lender any financial statements or information Lender requests. All financial statements and information Grantor gives Lender will be correct and complete. Grantor agrees to pay all expenses, charges and taxes in connection with the preparation and recording of this Security Instrument. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and to confirm Lender's lien status on any Property, and Grantor agrees to pay all expenses, charges and taxes in connection with the preparation and recording thereof. Time is of the essence.

**SIGNATURES.** By signing, Grantor agrees to the terms and covenants contained in this Security Instrument. Grantor also acknowledges receipt of a copy of this Security Instrument.

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.
THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

GRANTOR:

Diane T. Clay
Individually

LENDER:

First Bank
By
J. Charles White, President

ACKNOWLEDGMENT.
(Individual)
State OF Texas, County OF Wichita ss.
This instrument was acknowledged before me this 21st day of Sept., 2006 by Diane T. Clay .

My commission expires:

(Notary Public)

PHILLIP N. LAM
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Expires 12-15-2008

(Lender Acknowledgment)
_____ OF _____, _____ OF _____ ss.
This instrument was acknowledged before me this _____ day of _____, _____ by J. Charles White – President of First Bank, a corporation, on behalf of the corporation.

My commission expires:

(Notary Public)

Return To: Susan Brooks
First Bank
4110 Kell Blvd.
Wichita Falls, TX 76309

Doc            Bk        Vol      Pg
00109570      OR        3017     568



Doc           Bk      Vol      Pg
00109570  OR      3017    569

Filed for Record in:
Wichita County

On: Sep 25,2006 at 02:39P

As a
Recording

Document Number:      00109570

Amount                          44.00

Receipt Number - 58402
By,
Sarah Gass

STATE OF TEXAS          COUNTY OF WICHITA
     I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
          Wichita County
Any provision herein which restricts the sale,
rental, or use of the described Real Property
because of color or race is invalid and
unenforceable under federal law.

Sep 25,2006

Lori Bohannon, County Clerk
Wichita County

```
Doc         Bk    Vol    Pg
00011730 OR    3114   388
```

After Recording Please Return To:

Loan Services Department, First Bank
4110 Kell Blvd.
Wichita Falls, Texas 76309

_____ Space Above This Line For Recording Data _____

## MODIFICATION OF DEED OF TRUST

**DATE AND PARTIES.** The date of this Real Estate Modification (Modification) is May 14, 2007. The parties and their addresses are:

**GRANTOR:**
   DIANE T. CLAY
   4409 Tobago
   Wichita Falls, Texas 76308

**TRUSTEE:**
   J. CHARLES WHITE
   4110 Kell Blvd.
   Wichita Falls, Texas 76309

**LENDER:**
   FIRST BANK
   Organized and existing under the laws of Texas
   4110 Kell Blvd.
   Wichita Falls, Texas 76309

**1. BACKGROUND.** Grantor and Lender entered into a security instrument dated September 14, 2006 and recorded on September 25, 2006 (Security Instrument). The Security Instrument was recorded in the records of Wichita County, Texas at Volume 3017, Page 561 and covered the following described Property:

Lot Eleven (11), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume 5, Page 21-24, Wichita County Plat Records.

The property is located in Wichita County at 815 Ohio, Wichita Falls, Texas 76301.

**2. MODIFICATION.** For value received, Grantor and Lender agree to modify the Security Instrument as provided for in this Modification.

The Security Instrument is modified as follows:

  **A. Secured Debt.** The secured debt provision of the Security Instrument is modified to read:

   (1) Secured Debts. The term "Secured Debts" includes and this Security Instrument will secure each of the following:

     (a) Specific Debts. The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 3000001544, dated September 14, 2006, from Grantor to Lender, with a loan amount of $84,000.00 and maturing on May 14, 2008.

     (b) All Debts. All present and future debts from Grantor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Grantor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities.

Diane T. Clay
Texas Real Estate Modification
TXI4battersi000059000055880OS051507Y                    ©1996 Bankers Systems, Inc., St. Cloud, MN Experts



**EXHIBIT**
**2**

Doc   Bk   Pg
00011730 OR   3114   389

(c) **Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**3. WARRANTY OF TITLE.** Grantor warrants that Grantor continues to be lawfully seized of the estate conveyed by the Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

**4. CONTINUATION OF TERMS.** Except as specifically amended in this Modification, all of the terms of the Security Instrument shall remain in full force and effect.

**SIGNATURES.** By signing, Grantor agrees to the terms and covenants contained in this Modification. Grantor also acknowledges receipt of a copy of this Modification.

> THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.
>
> THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**GRANTOR:**

*Diane T. Clay*
Diane T. Clay
Individually

**LENDER:**

First Bank

By *J. Charles White*
J. Charles White, President

**ACKNOWLEDGMENT.**

**(Individual)**

STATE OF TEXAS , COUNTY OF WICHITA ss.
This instrument was acknowledged before me this 16 day of May , 2007 by Diane T. Clay .

My commission expires:

*Bonita C. Patterson*
(Notary Public)

BONITA C. PATTERSON
Notary Public, State of Texas
My Commission Expires 06-01-2010

**(Lender Acknowledgment)**

STATE OF TEXAS , COUNTY OF WICHITA ss.
This instrument was acknowledged before me this 16 day of May , 2007 by J. Charles White -- President of First Bank, a corporation, on behalf of the corporation.

My commission expires:

*Bonita C. Patterson*
(Notary Public)

BONITA C. PATTERSON
Notary Public, State of Texas
My Commission Expires 06-01-2010

Doc           Bk        Vol        Pg
00011730      OR        3114       390

Filed for Record in:
Wichita County

On: May 22,2007 at 08:38A

As a
Recording

Document Number:    00011730

Amount                  24.00

Receipt Number - 69898
By,
Mandie Rice

STATE OF TEXAS              COUNTY OF WICHITA
     I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
              Wichita County
Any provision herein which restricts the sale,
rental, or use of the described Real Property
because of color or race is invalid and
unenforceable under federal law.

        May 22,2007

     Lori Bohannon, County Clerk
     Wichita County

```
Doc          Bk     Vol    Pg
00009802 OR          3250   719
```

After Recording Please Return To:
Loan Services Department, First Bank
4110 Kell Blvd.
Wichita Falls, Texas 76309

_____

Space Above This Line For Recording Data

## MODIFICATION OF DEED OF TRUST

**DATE AND PARTIES.** The date of this Real Estate Modification (Modification) is May 14, 2008. The parties and their addresses are:

**GRANTOR:**
  **DIANE T CLAY**
  4409 Tobago
  Wichita Falls, Texas 76308

**TRUSTEE:**
  **J. CHARLES WHITE**
  4110 Kell Blvd.
  Wichita Falls, Texas  76309

**LENDER:**
  **FIRST BANK**
  Organized and existing under the laws of Texas
  4110 Kell Blvd.
  Wichita Falls, Texas  76309

**1. BACKGROUND.** Grantor and Lender entered into a security instrument dated May 14, 2007 and recorded on May 22, 2007 (Security Instrument). The Security Instrument was recorded in the records of Wichita County, Texas at Volume 3114, Page 388 and covered the following described Property:

Lot Eleven (1), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume, Page 21-24, Wichita County Plat Records.

The property is located in Wichita County at 815 Ohio, Wichita Falls, Texas 76301.

**2. MODIFICATION.** For value received, Grantor and Lender agree to modify the Security Instrument as provided for in this Modification.

The Security Instrument is modified as follows:

  **A. Secured Debt.** The secured debt provision of the Security Instrument is modified to read:

    **(1) Secured Debts.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

      **(a) Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 3000001544, dated May 14, 2007, from Grantor to Lender, with a loan amount of $80,000.00 and maturing on May 14, 2009.

      **(b) All Debts.** All present and future debts from Grantor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Grantor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities.

**EXHIBIT**
**3**

```
Doc        Bk     Vol    Pg
00009802   OR     3250   720
```

(c) **Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

3. **WARRANTY OF TITLE.** Grantor warrants that Grantor continues to be lawfully seized of the estate conveyed by the Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

4. **CONTINUATION OF TERMS.** Except as specifically amended in this Modification, all of the terms of the Security Instrument shall remain in full force and effect.

**SIGNATURES.** By signing, Grantor agrees to the terms and covenants contained in this Modification. Grantor also acknowledges receipt of a copy of this Modification.

> THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.
>
> THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**GRANTOR:**

*Diane T Clay*
Diane T Clay
Individually

**LENDER:**

First Bank

By *J. Charles White*
J. Charles White, President

**ACKNOWLEDGMENT.**
**(Individual)**

_____STATE_____ OF ___TEXAS___ , COUNTY OF ___WICHITA___ ss.
This instrument was acknowledged before me this ___15___ day of ___May___ , __2008__ by Diane T Clay .

My commission expires:

*Bonita C. Patterson*
(Notary Public)

> BONITA C. PATTERSON
> Notary Public, State of Texas
> My Commission Expires 05-01-2010

**(Lender Acknowledgment)**

___STATE___ OF ___TEXAS___ , COUNTY OF ___WICHITA___ ss.
This instrument was acknowledged before me this ___15___ day of ___MAY___ , __2008__ by J. Charles White -- President of First Bank, a corporation, on behalf of the corporation.

My commission expires:

*Bonita C. Patterson*
(Notary Public)

> BONITA C. PATTERSON
> Notary Public, State of Texas
> My Commission Expires 05-01-2010

Doc 00009802  Bk OR  Vol 3250  Pg 721

Filed for Record in:
Wichita County

On: May 30,2008 at 08:43A

As a
Recording

Document Number:    00009802

Amount            20.00

Receipt Number - 87392
By,
Mandie Rice

STATE OF TEXAS          COUNTY OF WICHITA
I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
Wichita County
Any provision herein which restricts the sale,
rental, or use of the described Real Property
because of color or race is invalid and
unenforceable under federal law.

May 30,2008

Lori Bohannon, County Clerk
Wichita County

FIRST BANK
4110 KELL BLVD
WICHITA FALLS, TX 76309

Unofficial Copy

Doc
00009229

Bk
OR

Vol
3368

Pg
616

After Recording Please Return To:

Loan Services Department, First Bank
4110 Kell Blvd.
Wichita Falls, Texas 76309

---

Space Above This Line For Recording Data

---

## MODIFICATION OF DEED OF TRUST

**DATE AND PARTIES.** The date of this Real Estate Modification (Modification) is May 14, 2009. The parties and their addresses are:

**GRANTOR:**
DIANE T CLAY
4409 Tobago
Wichita Falls, TX 76308

**TRUSTEE:**
J. CHARLES WHITE
4110 Kell Blvd.
Wichita Falls, TX 76309

**LENDER:**
FIRST BANK
Organized and existing under the laws of Texas
4110 Kell Blvd.
Wichita Falls, TX 76309

**1. BACKGROUND.** Grantor and Lender entered into a security instrument dated May 14, 2008 and recorded on May 30, 2008 (Security Instrument). The Security Instrument was recorded in the records of Wichita County, Texas at Volume 3250, Page 719 and covered the following described Property:

Lot Eleven (11), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume, Page 21-24, Wichita County Plat Records.

The property is located in Wichita County at 815 Ohio, Wichita Falls, Texas 76301.

**2. MODIFICATION.** For value received, Grantor and Lender agree to modify the Security Instrument as provided for in this Modification.

The Security Instrument is modified as follows:

**A. Secured Debt.** The secured debt provision of the Security Instrument is modified to read:

(1) Secured Debts. The term "Secured Debts" includes and this Security Instrument will secure each of the following:

(a) Specific Debts. The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 3000001544, dated May 14, 2007, from Grantor to Lender, with a loan amount of $80,000.00 and maturing on May 14, 2010.

(b) All Debts. All present and future debts from Grantor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Grantor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities.

Diane T Clay
Texas Real Estate Modification
TX/4Xsbrooks0010510000638100 5051409Y

©1996 Bankers Systems, Inc., St. Cloud, MN Expert®


EXHIBIT
4

Doc
00009229 OR
Bk
3368
Vol
Pg
617

(c) **Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

3. **WARRANTY OF TITLE.** Grantor warrants that Grantor continues to be lawfully seized of the estate conveyed by the Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

4. **CONTINUATION OF TERMS.** Except as specifically amended in this Modification, all of the terms of the Security Instrument shall remain in full force and effect.

**SIGNATURES.** By signing, Grantor agrees to the terms and covenants contained in this Modification. Grantor also acknowledges receipt of a copy of this Modification.

> THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND, TO THE EXTENT PERMITTED BY LAW, MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.
> THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

GRANTOR:

*Diane T. Clay*
Diane T Clay
Individually

LENDER:

First Bank
By:
Damon R. Whatley, Vice President

**ACKNOWLEDGMENT.**
(Individual)
State ____ OF ____ Texas ____ County ____ OF ____ Wichita ____ ss.
This instrument was acknowledged before me this ____ 18th ____ day of ____ May _____, ____ 2009 ____ by Diane T Clay .
My commission expires:

*Susan Brooks*
(Notary Public)

[SEAL: NOTARY PUBLIC / SUSAN BROOKS / Notary Public, State of Texas / My Commission Expires 10-25-2009]

State Of Texas

County of Wichita

Acknowledged before me this ____ 18th ____ day of May by Damon Whatley, Vice President of First Bank on behalf of said bank.

[SEAL: NOTARY PUBLIC / SUSAN BROOKS / Notary Public, State of Texas / My Commission Expires 10-25-2009]

*Susan Brooks*
(Notary Public)

(Lender Acknowledgment)
_____ OF _____ OF _____ ss.
This instrument was acknowledged before me this ____ day of _____, ____ by Damon R. Whatley -- Vice President of First Bank, a corporation, on behalf of the corporation.
My commission expires:

_____
(Notary Public)

Doc          Bk        Vol       Pg
00009229    OR        3368      618

Filed for Record in:
Wichita County

On: May 19,2009 at 09:04A

As a
Recording

Document Number:    00009229

Amount                    20.00

Receipt Number - 104040
By,
Ristie Moxley

STATE OF TEXAS          COUNTY OF WICHITA
        I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
        Wichita County
Any provision herein which restricts the sale,
rental, or use of the described Real Property
because of color or race is invalid and
unenforceable under federal law.

May 19,2009

Lori Bohannon, County Clerk
Wichita County

FIRST BANK
4110  KELL BLVD
WICHITA FALLS, TX 76308

Unofficial Copy

Doc BK Vol Pg
00010032 OR 3499 258

After Recording Please Return To:
Loan Services Department, First Bank
4110 Kell Blvd.
Wichita Falls, Texas 76309

_____ Space Above This Line For Recording Data _____

## MODIFICATION OF DEED OF TRUST

**DATE AND PARTIES.** The date of this Real Estate Modification (Modification) is May 24, 2010. The parties and their addresses are:

**GRANTOR:**
DIANE T. CLAY
4409 Tobago
Wichita Falls, TX 76308

**TRUSTEE:**
J. CHARLES WHITE
4110 Kell Blvd.
Wichita Falls, TX 76309

**LENDER:**
FIRST BANK
Organized and existing under the laws of Texas
4110 Kell Blvd.
Wichita Falls, TX 76309

**1. BACKGROUND.** Grantor and Lender entered into a security instrument dated May 14, 2009 and recorded on May 19, 2009 (Security Instrument). The Security Instrument was recorded in the records of Wichita County, Texas at Volume 3368, Page 616 and covered the following described Property:

Lot Eleven (11), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume, Page 21-24, Wichita County Plat Records.

The property is located in Wichita County at 815 Ohio, Wichita Falls, Texas 76301.

**2. MODIFICATION.** For value received, Grantor and Lender agree to modify the Security Instrument as provided for in this Modification.

The Security Instrument is modified as follows:

**A. Secured Debt.** The secured debt provision of the Security Instrument is modified to read:

(1) **Secured Debts.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

(a) **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 3000001544, dated May 14, 2007, from Grantor to Lender, with a loan amount of $80,000.00 and maturing on May 24, 2011.

(b) **All Debts.** All present and future debts from Grantor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Grantor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities. This Modification will not secure any other debt if Lender fails, with respect to that other debt, to fulfill any necessary requirements or limitations of Sections 19(a), 32, or 35 of Regulation Z.

(c) **Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**3. WARRANTY OF TITLE.** Grantor warrants that Grantor continues to be lawfully seized of the estate conveyed by the Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbra

Diane T Clay
Texas Real Estate Modification
TX/4bpatters0013970000682800505052710Y        Wolters Kluwer Financial Services ©1996, 2010 Bankers Systems™


EXHIBIT 5

Doc 00010032    BK OR    Vol 3499    Pg 259

**4. CONTINUATION OF TERMS.** Except as specifically amended in this Modification, all of the terms of the Security Instrument shall remain in full force and effect.

**SIGNATURES.** By signing, Grantor agrees to the terms and covenants contained in this Modification. Grantor also acknowledges receipt of a copy of this Modification.

> THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND, TO THE EXTENT PERMITTED BY LAW, MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.
> THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

GRANTOR:

Diane T Clay
Individually

LENDER:

First Bank

By
Damon Whatley, Vice President

**ACKNOWLEDGMENT.**
(Individual)
____ State ____ OF ____ Texas ____, ____ County ____ OF ____ Wichita ____ ss.
This instrument was acknowledged before me this __27__ day of __May__, __2010__ by Diane T Clay .
My commission expires:

Bonita C. Patterson
(Notary Public)

BONITA C. PATTERSON
Notary Public, State of Texas
My Commission Expires 05-01-2014

(Lender Acknowledgment)
____ State ____ OF ____ Texas ____, ____ County ____ OF ____ Wichita ____ ss.
This instrument was acknowledged before me this __27__ day of __May__, __2010__ by Damon Whatley -- Vice President of First Bank, a corporation, on behalf of the corporation.
My commission expires:

Bonita C. Patterson
(Notary Public)

BONITA C. PATTERSON
Notary Public, State of Texas
My Commission Expires 05-01-2014

Doc         Bk      Vol        Pg
00010032    OR      3499       260

Filed for Record in:
Wichita County

On: Jun 14,2010 at 08:49A

As a
Recording

Document Number:        00010032

Amount                  20.00

Receipt Number - 122342
By,
Toni Lynn George

STATE OF TEXAS          COUNTY OF WICHITA
I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
                        Wichita County
Any provision herein which restricts the sale,
rental, or use of the described Real Property
because of color or race is invalid and
unenforceable under federal law.

Jun 14,2010

Lori Bohannon, County Clerk
Wichita County

FIRST BANK
4110 KELL BLVD
WICHITA FALLS, TX 76309-4955

Doc 00010412 Bk OR Vol 3625 Pg 642

After Recording Please Return To:
Loan Services Department, First Bank
4110 Kell Blvd.
Wichita Falls, TX 76309

Space Above This Line For Recording Data

# MODIFICATION OF DEED OF TRUST

**DATE AND PARTIES.** The date of this Real Estate Modification (Modification) is May 24, 2011. The parties and their addresses are:

GRANTOR:
    **DIANE T CLAY**
    No. 5 Hickory Downs
    Wichita Falls, TX 76308

TRUSTEE:
    **J. CHARLES WHITE**
    4110 Kell Blvd.
    Wichita Falls, TX 76309

LENDER:
    **FIRST BANK**
    Organized and existing under the laws of Texas
    4110 Kell Blvd.
    Wichita Falls, TX 76309

**1. BACKGROUND.** Grantor and Lender entered into a security instrument dated May 24, 2010 and recorded on June 14, 2010 (Security Instrument). The Security Instrument was recorded in the records of Wichita County, Texas at Volume 3499, Page 258 and covered the following described Property:

Lot Eleven (11), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume, Page 21-24, Wichita County Plat Records.

The property is located in Wichita County at 815 Ohio, Wichita Falls, Texas 76301.

**2. MODIFICATION.** For value received, Grantor and Lender agree to modify the Security Instrument as provided for in this Modification:

The Security Instrument is modified as follows:

    **A. Secured Debt.** The secured debt provision of the Security Instrument is modified to read:

        (1) **Secured Debts.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

            (a) **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 3000001544, dated May 14, 2007, from Grantor to Lender, with a loan amount of $80,000.00 and maturing on May 24, 2012.

            (b) **All Debts.** All present and future debts from Grantor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Grantor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities. This Modification will not secure any other debt if Lender fails, with respect to that other debt, to fulfill any necessary requirements or limitations of Sections 19(a), 32, or 35 of Regulation Z.

            (c) **Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**3. WARRANTY OF TITLE.** Grantor warrants that Grantor continues to be lawfully seized of the estate conveyed by the Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

**4. CONTINUATION OF TERMS.** Except as specifically amended in this Modification, all of the terms of the Security Instrument shall remain in full force and effect.

Wolters Kluwer Financial Services ©1996, 2011 Bankers Systems™



EXHIBIT
6

DOC          BR        VOL      PG
00010412  OR      3625    643

**SIGNATURES.** By signing, Grantor agrees to the terms and covenants contained in this Modification. Grantor also acknowledges receipt of a copy of this Modification.

> THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND, TO THE EXTENT PERMITTED BY LAW, MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.
> THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.



GRANTOR:

_Diane T Clay_
Diane T Clay
Individually

LENDER:
First Bank

By
Damon Whatley, Vice President

ACKNOWLEDGMENT:
(Individual)
State OF Texas , County OF Wichita ss.
This instrument was acknowledged before me this 28 day of June , 2011 by
Diane T Clay .
My commission expires:
_Jamie Gafford_
(Notary Public)

JAMIE GAFFORD
Notary Public, State of Texas
My Commission Expires 05-11-2015

(Lender Acknowledgment)
State OF Texas , County OF Wichita ss.
This instrument was acknowledged before me this 28 day of June , 2011 by
Damon Whatley -- Vice-President of First Bank, a corporation, on behalf of the corporation.
My commission expires:
_Jamie Gafford_
(Notary Public)

JAMIE GAFFORD
Notary Public, State of Texas
My Commission Expires 05-11-2015

Doc Bk Vol Pg
00010412 OR 3625 644

Filed for Record in:
Wichita County

On: Jul 01,2011 at 09:30A

As a
Recording

Document Number: 00010412

Amount 20.00

Receipt Number - 140446
By:
Tonya Satre

STATE OF TEXAS COUNTY OF WICHITA
I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
Wichita County
Any provision herein which restricts the sale,
rental, or use of the described Real Property
because of color or race is invalid and
unenforceable under federal law.

Jul 01,2011

Lori Bahannon, County Clerk
Wichita County

FIRST BANK
PO BOX 458
BURKBURNETTT, TX 76354

Doc
00011144  Bk OR  Vol 3747  Pg 855

After Recording Please Return To:
Loan Services Department, First Bank
4110 Kell Blvd.
Wichita Falls, TX 76309

Space Above This Line For Recording Data

## MODIFICATION OF DEED OF TRUST

**DATE AND PARTIES.** The date of this Real Estate Modification (Modification) is May 24, 2012. The parties and their addresses are:

GRANTOR:
    DIANE T CLAY
    4409 Tobago
    Wichita Falls, TX 76308

TRUSTEE:
    J. CHARLES WHITE
    4110 Kell Blvd.
    Wichita Falls, TX  76309

LENDER:
    FIRST BANK
    Organized and existing under the laws of Texas
    4110 Kell Blvd.
    Wichita Falls, TX  76309

**1. BACKGROUND.** Grantor and Lender entered into a security instrument dated May 24, 2011 and recorded on July 1, 2011 (Security Instrument). The Security Instrument was recorded in the records of Wichita County, Texas at Volume 3625, Page 642 and covered the following described Property:

Lot Eleven (1), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume, Page 21-24, Wichita County Plat Records.

The property is located in Wichita County at 815 Ohio, Wichita Falls, Texas 76301.

**2. MODIFICATION.** For value received, Grantor and Lender agree to modify the Security Instrument as provided for in this Modification.

The Security Instrument is modified as follows:

    **A. Secured Debt.** The secured debt provision of the Security Instrument is modified to read:

        (1) Secured Debts. The term "Secured Debts" includes and this Security Instrument will secure each of the following:

            (a) Specific Debts. The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 3000001544, dated September 14, 2006, from Grantor to Lender, with a loan amount of $80,000.00 and maturing on May 24, 2013.

            (b) All Debts. All present and future debts from Grantor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Grantor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities. This Modification will not secure any other debt if Lender fails, with respect to

Diane T Clay
Texas Real Estate Modification
TX/4jgafford0022540000785440080622I2Y
Wolters Kluwer Financial Services ©1996, 2012 Bankers Systems™


EXHIBIT
7

```
Doc              Bk      Vol     Pg
00011144  OR    3747    856
```

that other debt, to fulfill any necessary requirements or limitations of Sections 19(a), 32, or 35 of Regulation Z.

(c) **Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**3. WARRANTY OF TITLE.** Grantor warrants that Grantor continues to be lawfully seized of the estate conveyed by the Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

**4. CONTINUATION OF TERMS.** Except as specifically amended in this Modification, all of the terms of the Security Instrument shall remain in full force and effect.

**SIGNATURES.** By signing, Grantor agrees to the terms and covenants contained in this Modification. Grantor also acknowledges receipt of a copy of this Modification.

---

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND, TO THE EXTENT PERMITTED BY LAW, MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

---

GRANTOR:

*Diane T. Clay*
Diane T Clay
Individually

LENDER:

First Bank

By _____
Jeremy A. Dorzab, Vice President

ACKNOWLEDGMENT.
(Individual)
State OF Texas , County OF Wichita ss.
This instrument was acknowledged before me this 29 day of June , 2012 by Diane T Clay .

My commission expires:

_____
(Notary Public)

JAMIE GAFFORD
Notary Public, State of Texas
My Commission Expires 05-11-2015

(Lender Acknowledgment)
State OF Texas , County OF Wichita ss.
This instrument was acknowledged before me this 29th day of June , 2012 by Jeremy A. Dorzab , Vice President of First Bank, a corporation, on behalf of the corporation.

My commission expires:

_____
(Notary Public)

JAMIE GAFFORD
Notary Public, State of Texas
My Commission Expires 05-11-2015

Doc
00011144  Bk
OR  Vol
3747  Pg
857

Filed for Record in:
Wichita County

On: Jul 05,2012 at 08:16A

As a
Recording

Document Number:  00011144

Amount  20.00

Receipt Number - 157815
By,
Mistie Moxley

STATE OF TEXAS  COUNTY OF WICHITA
I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
Wichita County
Any provision herein which restricts the sale,
rental, or use of the described Real Property
because of color or race is invalid and
unenforceable under federal law.

Jul 05,2012

Lori Bohannon, County Clerk
Wichita County

FIRST BANK
4110 KELL BLVD
WICHITA FALLS, TX 76309

Doc          Bk        Vol       Pg
00011567  OR        3998      567

After Recording Please Return To:
Loan Administration, First Bank
901 Lamar Ave.
Wichita Falls, TX 76301

_____Space Above This Line For Recording Data_____

# DEED OF TRUST

**Notice of confidentiality rights: If you are a natural person, you may remove or strike any or all of the following information from this instrument that transfers an interest in real property before it is filed for record in the public records: your Social Security Number or your driver's license number.**

**DATE AND PARTIES.** The date of this Deed Of Trust (Security Instrument) is July 1, 2014. The parties and their addresses are:

**GRANTOR:**
 DIANE T CLAY
 No 5 Hickory Downs
 Wichita Falls, TX 76308

**TRUSTEE:**
 J. CHARLES WHITE
 4110 Kell Blvd
 Wichita Falls, TX  76309

**LENDER:**
 FIRST BANK
 Organized and existing under the laws of Texas
 4110 Kell Blvd.
 Wichita Falls, TX 76309

**1. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Grantor's performance under this Security Instrument, Grantor does hereby irrevocably grant, convey and sell to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:

Lot Eleven (11), Block One Hundred Seventy-seven (177), original Townsite of Wichita Falls, Wichita County, Texas according to plat of record in Volume 5, Pages 21-24, Wichita County Plat Records.

The property is located in Wichita County at 815 Ohio, Wichita Falls, Texas 76301.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches and water stock, crops, timber, all diversion payments or third party payments made to crop producers and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

DTC, LLC
**Texas Deed Of Trust**
TX/4XXKSMITH00000000000675019N

Wolters Kluwer Financial Services ©1996, 20_
Systems™



EXHIBIT
8

**2. SECURED DEBTS.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

**A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 2000018682, dated July 1, 2014, from DTC, LLC (Borrower) to Lender, with a loan amount of $13,949.27 and maturing on August 1, 2015.

**B. All Debts.** All present and future debts from DTC, LLC to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Grantor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities. This Security Instrument will not secure any other debt if Lender fails, with respect to the other debt, to fulfill any necessary requirements or conform to any limitations of Regulations Z and X that are required for loans secured by the Property.

**C. Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**3. PAYMENTS.** Grantor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

**4. NON-OBLIGATED GRANTOR.** Any Grantor, who is not also identified as a Borrower in the Secured Debts section of this Security Instrument and who signs this Security Instrument, is defined as a cosigner for purposes of the Equal Credit Protection Act and the Consumer Financial Protection Bureau's Regulation B, 12 C.F.R. 1002.7(d)(4), and is referred to herein as a Non-Obligated Grantor. By signing this Security Instrument, the Non-Obligated Grantor does convey and assign their rights and interests in the Property to secure payment of the Secured Debts, to create a valid lien, to pass clear title, to waive inchoate rights and to assign earnings or rights to payment under any lease or rent of the Property. However, the Non-Obligated Grantor is not personally liable for the Secured Debts by virtue of signing this Security Instrument. Nothing in this section shall be construed to modify or otherwise affect the Non-Obligated Grantor's obligations, if any, that were separately made with Lender in a separate agreement and duly signed by the Non-Obligated Grantor in the context of that separate agreement.

**5. WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:

**A.** To make all payments when due and to perform or comply with all covenants.

**B.** To promptly deliver to Lender any notices that Grantor receives from the holder.

**C.** Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

**8. DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

Doc   Bk   Vol   Pg
00011567   OR   3998   569

**9. WARRANTIES AND REPRESENTATIONS.** Grantor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Grantor or to which Grantor is a party.

**10. PROPERTY CONDITION, ALTERATIONS, INSPECTION, VALUATION AND APPRAISAL.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor will not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Grantor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Grantor will not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time and frequency for the purpose of inspecting, valuating, or appraising the Property. Lender will give Grantor notice at the time of or before an on-site inspection, valuation, or appraisal for on-going due diligence or otherwise specifying a reasonable purpose. Any inspection, valuation or appraisal of the Property will be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection, valuation or appraisal for its own purpose, except as otherwise provided by law.

**11. AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably assigns, grants, conveys to Lender as additional security all the right, title and interest in the following (Property).

A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to any extensions, renewals, modifications or replacements (Leases).

B. Rents, issues and profits, including but not limited to security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Grantor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Grantor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default. Grantor will not collect in advance any Rents due in future lease periods, unless Grantor first obtains Lender's consent. Upon default, Grantor will receive any Rents in trust for Lender and Grantor will not commingle the Rents with any other funds. When Lender so directs, Grantor will endorse and deliver any payments of Rents from the Property to Lender. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting, valuating, appraising and preserving the Property, and other necessary expenses. Grantor agrees that this Security Instrument is immediately effective between Grantor and Lender and effective as to third parties on the recording of this Assignment. As long as this Assignment is in effect, Grantor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Grantor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and

Doc    Bk    Vol    Pg
0001567  OR    3998    570

any applicable law. If Grantor or any party to the Lease defaults or fails to observe any applicable law, Grantor will promptly notify Lender. If Grantor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance. Grantor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Grantor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Grantor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

**13. DEFAULT.** Grantor will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

**A. Payments.** Grantor or Borrower fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against Grantor, Borrower, or any co-signer, endorser, surety or guarantor of this Security Instrument or any other obligations Borrower has with Lender.

**C. Death or Incompetency.** Grantor dies or is declared legally incompetent.

**D. Failure to Perform.** Grantor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

**E. Other Documents.** A default occurs under the terms of any other document relating to the Secured Debts.

**F. Other Agreements.** Grantor is in default on any other debt or agreement Grantor has with Lender.

**G. Misrepresentation.** Grantor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** Grantor fails to satisfy or appeal any judgment against Grantor.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** Grantor changes Grantor's name or assumes an additional name without notifying Lender before making such a change.

**K. Property Transfer.** Grantor transfers all or a substantial part of Grantor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section.

**L. Property Value.** Lender determines in good faith that the value of the Property has declined or is impaired.

**M. Insecurity.** Lender determines in good faith that a material adverse change has occurred in Borrower's financial condition from the conditions set forth in Borrower's most recent financial statement before the date of this Security Instrument or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**14. REMEDIES.** On or after the occurrence of an Event of Default, Lender may use any and all remedies Lender has under state or federal law or in any document relating to the Secured Debts, including, without limitation, the power to sell the Property. Any amounts advanced on Grantor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Grantor's default.

Subject to any right to cure, required time schedules or any other notice rights Grantor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of an Event of Default or anytime thereafter.

In the Event of Default, it will be the duty of Trustee, at the request of Lender (which request is hereby conclusively presumed), to invoke power of sale as required by Section 51.002 of the Texas Property Code, as then amended. Trustee will advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey indefeasible title to the Property with covenants of general warranty. Trustee will give notice of sale

including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

To the extent permitted by law, a mortgage servicer on behalf of Lender may manage information regarding Grantor's last known address, appoint a trustee or substitute trustee, including, without limitation, a perpetual substitute trustee, and administer all aspects of a foreclosure as authorized in this Security Instrument or by applicable law. Lender may include, without limitation, a book entry system to the extent permitted by law.

To the extent not prohibited by law, Trustee will apply the proceeds of the Property's sale in the following order: to all fees, charges, costs and expenses of exercising the power of sale and the sale; to Lender for all advances made for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon; to the Secured Debts' principal and interest; and paying any surplus as required by law. Lender or its designee may purchase the Property.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys indefeasible title to the purchaser, without warranty or with covenants or special or general warranty. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein to the extent permitted by law.

All remedies are distinct, cumulative and not exclusive, and Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**15. FORECLOSURE.** In the event a foreclosure under power of sale should be commenced by Trustee, Lender may at any time before the sale of the Property direct Trustee to abandon the sale, and may then institute suit for the collection of the Secured Debts and for the foreclosure of the lien of this Security Instrument. It is further agreed that if Lender should institute a suit for the collection of the Secured Debts, and for a foreclosure of the lien of this Security Instrument, that Lender may at any time before the entry of a final judgment in said suit dismiss the same, and require Trustee to sell the Property in accordance with the provisions of this Security Instrument. Lender, if it is the highest bidder, will have the right to purchase at any sale of the Property, and to have the amount for which such Property is sold credited on the Secured Debts.

**16. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after the occurrence of an Event of Default, to the extent permitted by law, Grantor agrees to pay all expenses of collection, enforcement, valuation, appraisal or protection of Lender's rights and remedies under this Security Instrument or any other document relating to the Secured Debts. Grantor agrees to pay expenses for Lender to inspect, valuate, appraise and preserve the Property and for any recordation costs of releasing the Property from this Security Instrument. Expenses include, but are not limited to, reasonable attorneys' fees, court costs, and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts. In addition, to the extent permitted by the United States Bankruptcy Code, Grantor agrees to pay the reasonable attorneys' fees incurred by Lender to protect Lender's rights and interests in connection with any bankruptcy proceedings initiated by or against Grantor.

**17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Grantor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

**B.** Except as previously disclosed and acknowledged in writing to Lender, Grantor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

**C.** Grantor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Grantor will take all necessary remedial action in accordance with Environmental Law.

**D.** Except as previously disclosed and acknowledged in writing to Lender, Grantor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Grantor or any tenant of any Environmental Law. Grantor will immediately notify Lender in writing as soon as Grantor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

**E.** Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.

**F.** Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

**G.** Grantor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

**H.** Grantor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Grantor and any tenant are in compliance with applicable Environmental Law.

**I.** Upon Lender's request and at any time, Grantor agrees, at Grantor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

**J.** Lender has the right, but not the obligation, to perform any of Grantor's obligations under this section at Grantor's expense.

**K.** As a consequence of any breach of any representation, warranty or promise made in this section, (1) Grantor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Grantor will provide Lender with collateral of at least equal value to the Property without prejudice to any of Lender's rights under this Security Instrument.

**L.** Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

**18. CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. INSURANCE.** Grantor agrees to keep the Property insured against the risks reasonably associated with the Property. Grantor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts. Grantor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld.

Doc 00011567    Bk OR    Vol 3998    Pg 573

All insurance policies and renewals shall include a standard "mortgage clause" (or "lender loss payable clause") endorsement that names Lender as "mortgagee" and "loss payee". If required by Lender, all insurance policies and renewals will also include an "additional insured" endorsement that names Lender as an "additional insured". If required by Lender, Grantor agrees to maintain comprehensive general liability insurance and rental loss or business interruption insurance in amounts and under policies acceptable to Lender. The comprehensive general liability insurance must name Lender as an additional insured. The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing).

Grantor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Grantor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Grantor will immediately notify Lender of cancellation or termination of insurance. If Grantor fails to keep the Property insured, Lender may obtain insurance to protect Lender's interest in the Property and Grantor will pay for the insurance on Lender's demand. Lender may demand that Grantor pay for the insurance all at once, or Lender may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include coverages not originally required of Grantor, may be written by a company other than one Grantor would choose, and may be written at a higher rate than Grantor could obtain if Grantor purchased the insurance. Grantor acknowledges and agrees that Lender or one of Lender's affiliates may receive commissions on the purchase of this insurance.

**20. COLLATERAL PROTECTION INSURANCE.** Property Insurance is required. Grantor agrees to buy insurance on the Property in the amount Lender specifies, subject to applicable law. Grantor shall have the option of furnishing any required insurance either through existing policies of insurance owned or controlled by Grantor or procuring and furnishing the equivalent coverage through any insurance company authorized to do business in Texas or an eligible surplus line insurer to the extent permitted by law. Grantor will name Lender as loss payee under the policy. Grantor may be required to deliver to Lender a copy of the collateral protection insurance policy and proof of payment of premiums.

If Grantor fails to meet any of these requirements, Lender may obtain collateral protection insurance on Grantor's behalf. Lender is not required to purchase any type or amount of insurance. To the extent permitted by law, Lender may obtain insurance that will cover either the actual amount of unpaid indebtedness or the replacement cost of improvements, subject to policy limits. If Lender purchases insurance for the Property, Grantor will be responsible for the cost of that insurance, including interest and any other charges incurred by Lender in connection with the placement of collateral protection insurance to the extent permitted by law. Grantor understands that insurance Lender obtains may cost significantly greater than the cost of insurance Grantor could have obtained. Amounts that Grantor owes are due and payable upon demand or on such other terms as Lender requires to the extent permitted by law.

**21. ESCROW FOR TAXES AND INSURANCE.** Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

**22. SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, will succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law, including, without limitation, the right to appoint a successor or substitute trustee at any time and from time to time.

**23. WAIVERS.** Except to the extent prohibited by law, Grantor waives all appraisement rights relating to the Property.

**24. USURY SAVINGS.** In no event shall any provision of this Security Instrument or any other instrument evidencing or securing the Secured Debts ever obligate Grantor to pay or allow Lender to collect interest on the Secured Debts at a rate greater than the maximum non-usurious rate permitted by applicable law.

In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby. In the event that any law is interpreted so that any charge provided for in this Security Instrument and/or together with any instrument evidencing the Secured Debts, violates such law by reason of the acceleration of the Secured Debts or otherwise, such charge is hereby reduced to eliminate such violation. Any amounts paid to Lender in excess of the amounts permitted by applicable law shall be applied to reduce the principal of the Secured Debts, or, at Lender's option, be refunded.

Doc   Bk   Vol   Pg
00011567 OR   3998   574

**25. FIXTURE FILING.** Grantor gives to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property.

**26. PERSONAL PROPERTY.** Grantor gives to Lender a security interest in all personal property located on or connected with the Property, including all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Grantor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property (all of which shall also be included in the term Property). The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.

**27. APPLICABLE LAW.** This Security Instrument is governed by the laws of Texas, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**28. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Grantor's obligations under this Security Instrument are independent of the obligations of any other Grantor. Lender may sue each Grantor individually or together with any other Grantor. Lender may release any part of the Property and Grantor will still be obligated under this Security Instrument for the remaining Property. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Grantor.

**29. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Grantor and Lender. This Security Instrument and any other documents relating to the Secured Debts are the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**30. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

**31. NOTICE, ADDITIONAL DOCUMENTS AND RECORDING FEES.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Grantor will be deemed to be notice to all Grantors. Grantor will inform Lender in writing of any change in Grantor's name, address or other application information. Grantor will provide Lender any other, correct and complete information Lender requests to effectively mortgage or convey the Property. Grantor agrees to pay all expenses, charges and taxes in connection with the preparation and recording of this Security Instrument. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and to confirm Lender's lien status on any Property, and Grantor agrees to pay all expenses, charges and taxes in connection with the preparation and recording thereof. Time is of the essence.

**32. FINAL AGREEMENT OF THE PARTIES.** THIS SECURITY INSTRUMENT AND THE OTHER WRITTEN LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND, TO THE EXTENT PERMITTED BY LAW, MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.

**33. WAIVER OF JURY TRIAL.** All of the parties to this Security Instrument knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Security Instrument or any other documents relating to the Secured Debts or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

**34.** A power of sale has been granted in this Security Instrument. A power of sale may allow Lender to take the Property and sell it without going to court in a foreclosure action upon default by Grantor under this Security Instrument.

Doc 00011567 Bk OR Vol 3998 Pg 575

**SIGNATURES.** By signing, Grantor agrees to the terms and covenants contained in this Security Instrument. Grantor also acknowledges receipt of a copy of this Security Instrument.

> THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND, TO THE EXTENT PERMITTED BY LAW, MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.
>
> THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

GRANTOR:

_Diane T Clay_     Date _7·31·14_
Diane T Clay
Individually

**ACKNOWLEDGMENT.**
_State_ OF _Texas_. _County_ OF _Wichita_ ss.
This instrument was acknowledged before me this _31°_ day of _July_ _2014_ by Diane T Clay .
My commission expires:

_Karen Smith_
(Notary Public)

KAREN SMITH
Notary Public, State of Texas
My Commission Expires
September 15, 2015

```
Doc          Bk      Vol    Pg
00011567     OR      3998   576
```

Filed for Record in:
Wichita County

On: Aug 06,2014 at 08:32A

As a
Recording

Document Number:      00011567

Amount          58.00

Receipt Number - 194252
By,
Amanda Cameron

STATE OF TEXAS          COUNTY OF WICHITA
    I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
            Wichita County
Any provision herein which restricts the sale,
rental, or use of the described Real Property
because of color or race is invalid and
unenforceable under federal law.

            Aug 06,2014

Lori Bohannon, County Clerk
Wichita County

FIRST BANK
4110 KELL BLVD
WICHITA FALLS, TX 76309

**TEXAS REALTORS**

## COMMERCIAL CONTRACT - IMPROVED PROPERTY

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2018

1. **PARTIES:** Seller agrees to sell and convey to Buyer the Property described in Paragraph 2. Buyer agrees to buy the Property from Seller for the sales price stated in Paragraph 3. The parties to this contract are:

    Seller: **Diane T. Clay**

    Address: **5 Hickory Downs, Wichita Falls, TX  76308-2214**
    Phone: _____  E-mail: _____
    Fax: _____  Other: _____

    Buyer: **The Burn Shop, LLC**

    Address: **2 Jasmine Ct, Wichita Falls, TX  76310-2855**
    Phone: _____  E-mail: _____
    Fax: _____  Other: _____

2. **PROPERTY:**

    A. "Property" means that real property situated in _____ **Wichita** _____ County, Texas at
    **815 Ohio Avenue, Wichita Falls, TX 76301** _(address)_
    and that is legally described on the attached Exhibit _____ or as follows:
    **LOT 11 BLK 177 ORIGINAL TOWN, WF**

    B. Seller will sell and convey the Property together with:
    (1) all buildings, improvements, and fixtures;
    (2) all rights, privileges, and appurtenances pertaining to the Property, including Seller's right, title, and interest in any minerals, utilities, adjacent streets, alleys, strips, gores, and rights-of-way;
    (3) Seller's interest in all leases, rents, and security deposits for all or part of the Property;
    (4) Seller's interest in all licenses and permits related to the Property;
    (5) Seller's interest in all third party warranties or guaranties, if transferable, relating to the Property or any fixtures;
    (6) Seller's interest in any trade names, if transferable, used in connection with the Property; and
    (7) all Seller's tangible personal property located on the Property that is used in connection with the Property's operations except: _____.
    Any personal property not included in the sale must be removed by Seller prior to closing.

    _(Describe any exceptions, reservations, or restrictions in Paragraph 12 or an addendum.)_
    _(If mineral rights are to be reserved an appropriate addendum should be attached.)_
    _(If the Property is a condominium, attach Commercial Contract Condominium Addendum (TXR-1930) or (TXR-1946).)_

3. **SALES PRICE:** At or before closing, Buyer will pay the following sales price for the Property:

    A. Cash portion payable by Buyer at closing . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ 40,000.00

    B. Sum of all financing described in Paragraph 4 . . . . . . . . . . . . . . . . . . . . $ _____ 160,000.00

    C. Sales price (sum of 3A and 3B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ 200,000.00

(TXR-1801) 4-1-18        Initialed for Identification by Seller **DUC** and Buyer **KW** _____        Page 1 of 14

Mason McCleskey, 2601 Harrison Street, Suite 200 Wichita Falls TX 76308        Phone: 9407042231
Mason McCleskey                                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

EXHIBIT
9

815 Ohio Avenue, Wichita Falls, TX 76301

Commercial Contract - Improved Property concerning _____

**4. FINANCING:** Buyer will finance the portion of the sales price under Paragraph 3B as follows:

[X] A. Third Party Financing: One or more third party loans in the total amount of $ **190,000.00** . This contract:

    [ ] (1) is not contingent upon Buyer obtaining third party financing.

    [X] (2) is contingent upon Buyer obtaining third party financing in accordance with the attached Commercial Contract Financing Addendum (TXR-1931).

[ ] B. Assumption: In accordance with the attached Commercial Contract Financing Addendum (TXR-1931), Buyer will assume the existing promissory note secured by the Property, which balance at closing will be $ _____ .

[ ] C. Seller Financing: The delivery of a promissory note and deed of trust from Buyer to Seller under the terms of the attached Commercial Contract Financing Addendum (TXR-1931) in the amount of $ _____ .

**5. EARNEST MONEY:**

A. Not later than 3 days after the effective date, Buyer must deposit $ **$10,000.00** as earnest money with **Landmark Title Company** (title company) at **1 Eureka Circle, Wichita Falls, TX 76308** (address) **John Daugherty** (closer). If Buyer fails to timely deposit the earnest money, Seller may terminate this contract or exercise any of Seller's other remedies under Paragraph 15 by providing written notice to Buyer before Buyer deposits the earnest money.

B. Buyer will deposit an additional amount of $ _____ with the title company to be made part of the earnest money on or before:

    [ ] (i) _____ days after Buyer's right to terminate under Paragraph 7B expires; or

    [ ] (ii) _____ .

Buyer will be in default if Buyer fails to deposit the additional amount required by this Paragraph 5B within 3 days after Seller notifies Buyer that Buyer has not timely deposited the additional amount.

C. Buyer may instruct the title company to deposit the earnest money in an interest-bearing account at a federally insured financial institution and to credit any interest to Buyer.

**6. TITLE POLICY, SURVEY, AND UCC SEARCH:**

A. Title Policy:

    (1) Seller, at Seller's expense, will furnish Buyer an Owner's Policy of Title Insurance (the title policy) issued by any underwriter of the title company in the amount of the sales price, dated at or after closing, insuring Buyer against loss under the title policy, subject only to:

        (a) those title exceptions permitted by this contract or as may be approved by Buyer in writing; and

        (b) the standard printed exceptions contained in the promulgated form of title policy unless this contract provides otherwise.

    (2) The standard printed exception as to discrepancies, conflicts, or shortages in area and boundary lines, or any encroachments or protrusions, or any overlapping improvements:

        [X] (a) will not be amended or deleted from the title policy.

        [ ] (b) will be amended to read "shortages in areas" at the expense of [ ] Buyer [ ] Seller.

    (3) Within _____ days after the effective date, Seller will furnish Buyer a commitment for title insurance (the commitment) including legible copies of recorded documents evidencing title exceptions. Seller authorizes the title company to deliver the commitment and related documents to Buyer at Buyer's address.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    815 Ohio Ave

Commercial Contract - Improved Property concerning    <u>815 Ohio Avenue, Wichita Falls, TX 76301</u>

  B. <u>Survey:</u> Within _____ days after the effective date:

☐ (1) Buyer will obtain a survey of the Property at Buyer's expense and deliver a copy of the survey to Seller. The survey must be made in accordance with the: (i) ALTA/NSPS Land Title Survey standards, or (ii) Texas Society of Professional Surveyors' standards for a Category 1A survey under the appropriate condition. Seller will reimburse Buyer _____ *(insert amount)* of the cost of the survey at closing, if closing occurs.

☐ (2) Seller, at Seller's expense, will furnish Buyer a survey of the Property dated after the effective date. The survey must be made in accordance with the: (i) ALTA/NSPS Land Title Survey standards, or (ii) Texas Society of Professional Surveyors' standards for a Category 1A survey under the appropriate condition.

☐ (3) Seller will deliver to Buyer and the title company a true and correct copy of Seller's most recent survey of the Property along with an affidavit required by the title company for approval of the existing survey. If the existing survey is not acceptable to the title company, ☐ Seller ☐ Buyer (updating party), will, at the updating party's expense, obtain a new or updated survey acceptable to the title company and deliver the acceptable survey to the other party and the title company within 30 days after the title company notifies the parties that the existing survey is not acceptable to the title company. The closing date will be extended daily up to 30 days if necessary for the updating party to deliver an acceptable survey within the time required. The other party will reimburse the updating party _____ *(insert amount or percentage)* of the cost of the new or updated survey at closing, if closing occurs.

  C. <u>UCC Search:</u>

☐ (1) Within _____ days after the effective date, Seller, at Seller's expense, will furnish Buyer a Uniform Commercial Code (UCC) search prepared by a reporting service and dated after the effective date. The search must identify documents that are on file with the Texas Secretary of State and the county where the Property is located that relate to all personal property on the Property and show, as debtor, Seller and all other owners of the personal property in the last 5 years.

☐ (2) Buyer does not require Seller to furnish a UCC search.

  D. <u>Buyer's Objections to the Commitment, Survey, and UCC Search:</u>

    (1) Within _____ days after Buyer receives the last of the commitment, copies of the documents evidencing the title exceptions, any required survey, and any required UCC search, Buyer may object to matters disclosed in the items if: (a) the matters disclosed are a restriction upon the Property or constitute a defect or encumbrance to title to the real or personal property described in Paragraph 2 other than those permitted by this contract or liens that Seller will satisfy at closing or Buyer will assume at closing; or (b) the items show that any part of the Property lies in a special flood hazard area (an "A" or "V" zone as defined by FEMA). If the commitment or survey is revised or any new document evidencing a title exception is delivered, Buyer may object to any new matter revealed in such revision or new document. Buyer's objection must be made within the same number of days stated in this paragraph, beginning when the revision or new document is delivered to Buyer. If Paragraph 6B(1) applies, Buyer is deemed to receive the survey on the earlier of: (i) the date Buyer actually receives the survey; or (ii) the deadline specified in Paragraph 6B.

    (2) Seller may, but is not obligated to, cure Buyer's timely objections within 15 days after Seller receives the objections. The closing date will be extended as necessary to provide such time to cure the objections. If Seller fails to cure the objections by the time required, Buyer may terminate this contract by providing written notice to Seller within 5 days after the time by which Seller must cure the objections. If Buyer terminates, the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer.

Commercial Contract - Improved Property concerning _____815 Ohio Avenue, Wichita Falls, TX 76301_____

    (3) Buyer's failure to timely object or terminate under this Paragraph 6D is a waiver of Buyer's right to object except that Buyer will not waive the requirements in Schedule C of the commitment.

## 7. PROPERTY CONDITION:

A. <u>Present Condition</u>: Buyer accepts the Property in its present condition except that Seller, at Seller's expense, will complete the following before closing: **AS IS, WHERE IS** _____

_____

_____

B. <u>Feasibility Period</u>: Buyer may terminate this contract for any reason within ____**30**____ days after the effective date (feasibility period) by providing Seller written notice of termination.

    (1) <u>Independent Consideration</u>.  *(Check only one box and insert amounts.)*

    [X] (a) If Buyer terminates under this Paragraph 7B, the earnest money will be refunded to Buyer less $ **-0-**_____ that Seller will retain as independent consideration for Buyer's unrestricted right to terminate. Buyer has tendered the independent consideration to Seller upon payment of the amount specified in Paragraph 5A to the title company. The independent consideration is to be credited to the sales price only upon closing of the sale. <u>If no dollar amount is stated in this Paragraph 7B(1) or if Buyer fails to deposit the earnest money, Buyer will not have the right to terminate under this Paragraph 7B.</u>

    [ ] (b) Not later than 3 days after the effective date, Buyer must pay Seller $ _____ as independent consideration for Buyer's right to terminate by tendering such amount to Seller or Seller's agent. If Buyer terminates under this Paragraph 7B, the earnest money will be refunded to Buyer and Seller will retain the independent consideration. The independent consideration will be credited to the sales price only upon closing of the sale. <u>If no dollar amount is stated in this Paragraph 7B(2) or if Buyer fails to pay the independent consideration, Buyer will not have the right to terminate under this Paragraph 7B.</u>

    (2) <u>Feasibility Period Extension</u>: Prior to the expiration of the initial feasibility period, Buyer may extend the feasibility period for a single period of an additional _____ days by depositing additional earnest money in the amount of $ _____ with the title company. <u>If no dollar amount is stated in this Paragraph or if Buyer fails to timely deposit the additional earnest money, the extension of the feasibility period will not be effective.</u>

C. <u>Inspections, Studies, or Assessments</u>:

    (1) During the feasibility period, Buyer, at Buyer's expense, may complete or cause to be completed any and all inspections, studies, or assessments of the Property (including all improvements and fixtures) desired by Buyer.

    (2) Seller, at Seller's expense, will turn on all utilities necessary for Buyer to make inspections, studies, or assessments.

    (3) Buyer must:
        (a) employ only trained and qualified inspectors and assessors;
        (b) notify Seller, in advance, of when the inspectors or assessors will be on the Property;
        (c) abide by any reasonable entry rules or requirements of Seller;
        (d) not interfere with existing operations or occupants of the Property; and
        (e) restore the Property to its original condition if altered due to inspections, studies, or assessments that Buyer completes or causes to be completed.

    (4) Except for those matters that arise from the negligence of Seller or Seller's agents, Buyer is responsible for any claim, liability, encumbrance, cause of action, and expense resulting from

Commercial Contract - Improved Property concerning ___815 Ohio Avenue, Wichita Falls, TX 76301___

Buyer's inspections, studies, or assessments, including any property damage or personal injury. Buyer will indemnify, hold harmless, and defend Seller and Seller's agents against any claim involving a matter for which Buyer is responsible under this paragraph. This paragraph survives termination of this contract.

D.  Property Information:

(1) Delivery of Property Information: Within _____ days after the effective date, Seller will deliver to Buyer: *(Check all that apply.)*

☐ (a) a current rent roll of all leases affecting the Property certified by Seller as true and correct;
☐ (b) copies of all current leases, including any mineral leases, pertaining to the Property, including any modifications, supplements, or amendments to the leases;
☐ (c) a current inventory of all personal property to be conveyed under this contract and copies of any leases for such personal property;
☐ (d) copies of all notes and deeds of trust against the Property that Buyer will assume or that Seller will not pay in full on or before closing;
☐ (e) copies of all current service, utility, maintenance, and management agreements relating to the ownership and operation of the Property;
☐ (f) copies of current utility capacity letters from the Property's water and sewer service provider;
☐ (g) copies of all current warranties and guaranties relating to all or part of the Property;
☐ (h) copies of fire, hazard, liability, and other insurance policies that currently relate to the Property;
☐ (i) copies of all leasing or commission agreements that currently relate to the tenants of all or part of the Property;
☐ (j) a copy of the "as-built" plans and specifications and plat of the Property;
☐ (k) copies of all invoices for utilities and repairs incurred by Seller for the Property in the 24 months immediately preceding the effective date;
☐ (l) a copy of Seller's income and expense statement for the Property from _____ to _____;
☐ (m) copies of all previous environmental assessments, geotechnical reports, studies, or analyses made on or relating to the Property;
☐ (n) real and personal property tax statements for the Property for the previous 2 calendar years;
☐ (o) Tenant reconciliation statements including, operating expenses, insurance and taxes for the Property from _____ to _____; and
☐ (p) _____
_____

(2) Return of Property Information: If this contract terminates for any reason, Buyer will, not later than 10 days after the termination date: *(Check all that apply.)*

☐ (a) return to Seller all those items described in Paragraph 7D(1) that Seller delivered to Buyer in other than an electronic format and all copies that Buyer made of those items;
☐ (b) delete or destroy all electronic versions of those items described in Paragraph 7D(1) that Seller delivered to Buyer or Buyer copied in any format; and
☐ (c) deliver to Seller copies of all inspection and assessment reports related to the Property that Buyer completed or caused to be completed.

This Paragraph 7D(2) survives termination of this contract.

E.  Contracts Affecting Operations: Until closing, Seller: (1) will operate the Property in the same manner as on the effective date under reasonably prudent business standards; and (2) will not transfer or dispose of any part of the Property, any interest or right in the Property, or any of the personal property or other items described in Paragraph 2B or sold under this contract. After the feasibility period ends, Seller may not enter into, amend, or terminate any other contract that affects the operations of the Property without Buyer's written approval.

Commercial Contract - Improved Property concerning     815 Ohio Avenue, Wichita Falls, TX 76301

## 8. LEASES:

A. Each written lease Seller is to assign to Buyer under this contract must be in full force and effect according to its terms. Seller may not enter into any new lease, fail to comply with any existing lease, or make any amendment or modification to any existing lease without Buyer's written consent. Seller must disclose, in writing, if any of the following exist at the time Seller provides the leases to the Buyer or subsequently occur before closing:

   (1) any failure by Seller to comply with Seller's obligations under the leases;
   (2) any circumstances under any lease that entitle the tenant to terminate the lease or seek any offsets or damages;
   (3) any non-occupancy of the leased premises by a tenant;
   (4) any advance sums paid by a tenant under any lease;
   (5) any concessions, bonuses, free rents, rebates, brokerage commissions, or other matters that affect any lease; and
   (6) any amounts payable under the leases that have been assigned or encumbered, except as security for loan(s) assumed or taken subject to under this contract.

B. Estoppel Certificates: Within _____ days after the effective date, Seller will deliver to Buyer estoppel certificates signed not earlier than _____ by each tenant that leases space in the Property. The estoppel certificates must include the certifications contained in the current version of TXR Form 1938 - Commercial Tenant Estoppel Certificate and any additional information requested by a third party lender providing financing under Paragraph 4 if the third party lender requests such additional information at least 10 days prior to the earliest date that Seller may deliver the signed estoppel certificates.

## 9. BROKERS:

A. The brokers to this sale are:

Principal Broker: Domain Real Estate Services, Inc.     Cooperating Broker: _____

Agent: **Mason McCleskey** _____    Agent: _____
Address: **2601 Harrison Street, Suite 200** _____    Address: _____
           **Wichita Falls, TX 76308** _____          _____
Phone & Fax: **(940)767-5060**     **(940)767-0041**    Phone & Fax: _____
E-mail: **mason@masonmccleskey.com** _____    E-mail: _____
License No.: **0576450** _____    License No.: _____

Principal Broker: (Check only one box)           Cooperating Broker represents Buyer.
[X] represents Seller only.
[ ] represents Buyer only.
[ ] is an intermediary between Seller and Buyer.

B. Fees: (Check only (1) or (2) below.)
(Complete the Agreement Between Brokers on page 14 only if (1) is selected.)

[ ] (1) Seller will pay Principal Broker the fee specified by separate written commission agreement between Principal Broker and Seller. Principal Broker will pay Cooperating Broker the fee specified in the Agreement Between Brokers found below the parties' signatures to this contract.

[ ] (2) At the closing of this sale, Seller will pay:

Commercial Contract - Improved Property concerning     <u>815 Ohio Avenue, Wichita Falls, TX 76301</u>

| Principal Broker a total cash fee of: | Cooperating Broker a total cash fee of: |
|---|---|
| ☐ _____ % of the sales price. | ☐ _____ % of the sales price. |
| ☐ _____. | ☐ _____. |

The cash fees will be paid in _____ **Wichita** _____ County, Texas. Seller authorizes the title company to pay the brokers from the Seller's proceeds at closing.

*NOTICE: Chapter 62, Texas Property Code, authorizes a broker to secure an earned commission with a lien against the Property.*

C. The parties may not amend this Paragraph 9 without the written consent of the brokers affected by the amendment.

## 10. CLOSING:

A. The date of the closing of the sale (closing date) will be on or before the later of:

     (1) ☐ _____ days after the expiration of the feasibility period.

        ☒ _____ **July 10, 2019** _____ *(specific date)*.

     (2) 7 days after objections made under Paragraph 6D have been cured or waived.

B. If either party fails to close by the closing date, the non-defaulting party may exercise the remedies in Paragraph 15.

C. At closing, Seller will execute and deliver to Buyer, at Seller's expense, a ☒ general ☐ special warranty deed. The deed must include a vendor's lien if any part of the sales price is financed. The deed must convey good and indefeasible title to the Property and show no exceptions other than those permitted under Paragraph 6 or other provisions of this contract. Seller must convey the Property:

     (1) with no liens, assessments, or Uniform Commercial Code or other security interests against the Property which will not be satisfied out of the sales price, unless securing loans Buyer assumes;

     (2) without any assumed loans in default; and

     (3) with no persons in possession of any part of the Property as lessees, tenants at sufferance, or trespassers except tenants under the written leases assigned to Buyer under this contract.

D. At closing, Seller, at Seller's expense, will also deliver to Buyer:

     (1) tax statements showing no delinquent taxes on the Property;

     (2) a bill of sale with warranties to title conveying title, free and clear of all liens, to any personal property defined as part of the Property in Paragraph 2 or sold under this contract;

     (3) an assignment of all leases to or on the Property;

     (4) to the extent that the following items are assignable, an assignment to Buyer of the following items as they relate to the Property or its operations:

        (a) licenses and permits;

        (b) service, utility, maintenance, management, and other contracts; and

        (c) warranties and guaranties;

     (5) a rent roll current on the day of the closing certified by Seller as true and correct;

     (6) evidence that the person executing this contract is legally capable and authorized to bind Seller;

     (7) an affidavit acceptable to the title company stating that Seller is not a foreign person or, if Seller is a foreign person, a written authorization for the title company to: (i) withhold from Seller's proceeds an amount sufficient to comply with applicable tax law; and (ii) deliver the amount to the Internal Revenue Service together with appropriate tax forms; and

     (8) any notices, statements, certificates, affidavits, releases, and other documents required by this contract, the commitment, or law necessary for the closing of the sale and the issuance of the title policy, all of which must be completed and executed by Seller as necessary.

E. At closing, Buyer will:

     (1) pay the sales price in good funds acceptable to the title company;

Commercial Contract - Improved Property concerning    815 Ohio Avenue, Wichita Falls, TX 76301

    (2) deliver evidence that the person executing this contract is legally capable and authorized to bind Buyer;

    (3) sign and send to each tenant in the Property a written statement that:

      (a) acknowledges Buyer has received and is responsible for the tenant's security deposit; and

      (b) specifies the exact dollar amount of the security deposit;

    (4) sign an assumption of all leases then in effect; and

    (5) execute and deliver any notices, statements, certificates, or other documents required by this contract or law necessary to close the sale.

F. Unless the parties agree otherwise, the closing documents will be as found in the basic forms in the current edition of the State Bar of Texas Real Estate Forms Manual without any additional clauses.

**11. POSSESSION:** Seller will deliver possession of the Property to Buyer upon closing and funding of this sale in its present condition with any repairs Seller is obligated to complete under this contract, ordinary wear and tear excepted. Any possession by Buyer before closing or by Seller after closing that is not authorized by a separate written lease agreement is a landlord-tenant at sufferance relationship between the parties.

**12. SPECIAL PROVISIONS:** The following special provisions apply and will control in the event of a conflict with other provisions of this contract. *(If special provisions are contained in an Addendum, identify the Addendum here and reference the Addendum in Paragraph 22D.)*
**Seller has disclosed to Buyer leaks caused by extremely heavy rains when the gutters cannot pull the water away due to damage by others. Property to be sold in "as is, where is" condition.**

**Buyer shall pay for the Owner's Policy of Title Insurance.**

**13. SALES EXPENSES:**

A. Seller's Expenses: Seller will pay for the following at or before closing:

    (1) releases of existing liens, other than those liens assumed by Buyer, including prepayment penalties and recording fees;

    (2) release of Seller's loan liability, if applicable;

    (3) tax statements or certificates;

    (4) preparation of the deed and any bill of sale;

    (5) one-half of any escrow fee;

    (6) costs to record any documents to cure title objections that Seller must cure; and

    (7) other expenses that Seller will pay under other provisions of this contract.

B. Buyer's Expenses: Buyer will pay for the following at or before closing:

    (1) all loan expenses and fees;

    (2) preparation fees of any deed of trust;

    (3) recording fees for the deed and any deed of trust;

    (4) premiums for flood and hazard insurance as may be required by Buyer's lender;

    (5) one-half of any escrow fee; and

    (6) other expenses that Buyer will pay under other provisions of this contract.

**14. PRORATIONS:**

A. Prorations:

    (1) Interest on any assumed loan, taxes, rents, and any expense reimbursements from tenants will be prorated through the closing date.

(TXR-1801) 4-1-18    Initialed for Identification by Seller **DW**, _____ and Buyer **KW**, _____    Page 8 of 14

Commercial Contract - Improved Property concerning    815 Ohio Avenue, Wichita Falls, TX 76301

  (2) If the amount of ad valorem taxes for the year in which the sale closes is not available on the closing date, taxes will be prorated on the basis of taxes assessed in the previous year. If the taxes for the year in which the sale closes vary from the amount prorated at closing, the parties will adjust the prorations when the tax statements for the year in which the sale closes become available. This Paragraph 14A(2) survives closing.

  (3) If Buyer assumes a loan or is taking the Property subject to an existing lien, Seller will transfer all reserve deposits held by the lender for the payment of taxes, insurance premiums, and other charges to Buyer at closing and Buyer will reimburse such amounts to Seller by an appropriate adjustment at closing.

B.  Rollback Taxes: If Seller's use or change in use of the Property before closing results in the assessment of additional taxes, penalties, or interest (assessments) for periods before closing, the assessments will be the obligation of Seller. If this sale or Buyer's use of the Property after closing results in additional assessments for periods before closing, the assessments will be the obligation of Buyer. This Paragraph 14B survives closing.

C.  Rent and Security Deposits: At closing, Seller will tender to Buyer all security deposits and the following advance payments received by Seller for periods after closing: prepaid expenses, advance rental payments, and other advance payments paid by tenants. Rents prorated to one party but received by the other party will be remitted by the recipient to the party to whom it was prorated within 5 days after the rent is received. This Paragraph 14C survives closing.

## 15. DEFAULT:

A.  If Buyer fails to comply with this contract, Buyer is in default and Seller, as Seller's sole remedy(ies), may terminate this contract and receive the earnest money, as liquidated damages for Buyer's failure except for any damages resulting from Buyer's inspections, studies or assessments in accordance with Paragraph 7C(4) which Seller may pursue, or
  *(Check if applicable)*
☐ enforce specific performance, or seek such other relief as may be provided by law.

B.  If, without fault, Seller is unable within the time allowed to deliver the estoppel certificates, survey or the commitment, Buyer may:
  (1) terminate this contract and receive the earnest money, less any independent consideration under Paragraph 7B(1), as liquidated damages and as Buyer's sole remedy; or
  (2) extend the time for performance up to 15 days and the closing will be extended as necessary.

C.  Except as provided in Paragraph 15B, if Seller fails to comply with this contract, Seller is in default and Buyer may:
  (1) terminate this contract and receive the earnest money, less any independent consideration under Paragraph 7B(1), as liquidated damages and as Buyer's sole remedy; or
  (2) enforce specific performance, or seek such other relief as may be provided by law, or both.

## 16. CASUALTY LOSS AND CONDEMNATION:

A.  If any part of the Property is damaged or destroyed by fire or other casualty after the effective date, Seller must restore the Property to its previous condition as soon as reasonably possible and not later than the closing date. If, without fault, Seller is unable to do so, Buyer may:
  (1) terminate this contract and the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer;
  (2) extend the time for performance up to 15 days and closing will be extended as necessary; or
  (3) accept at closing: (i) the Property in its damaged condition; (ii) an assignment of any insurance proceeds Seller is entitled to receive along with the insurer's consent to the assignment; and (iii) a credit to the sales price in the amount of any unpaid deductible under the policy for the loss.

(TXR-1801) 4-1-18      Initialed for Identification by Seller _SJC_, _____ and Buyer _KW_, _____      Page 9 of 14

Commercial Contract - Improved Property concerning    815 Ohio Avenue, Wichita Falls, TX 76301

B. If before closing, condemnation proceedings are commenced against any part of the Property, Buyer may:
  (1) terminate this contract by providing written notice to Seller within 15 days after Buyer is advised of the condemnation proceedings and the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer; or
  (2) appear and defend the condemnation proceedings and any award will, at Buyer's election, belong to: (a) Seller and the sales price will be reduced by the same amount; or (b) Buyer and the sales price will not be reduced.

**17. ATTORNEY'S FEES:** If Buyer, Seller, any broker, or the title company is a prevailing party in any legal proceeding brought under or with relation to this contract or this transaction, such party is entitled to recover from the non-prevailing parties all costs of such proceeding and reasonable attorney's fees. This Paragraph 17 survives termination of this contract.

**18. ESCROW:**

A. At closing, the earnest money will be applied first to any cash down payment, then to Buyer's closing costs, and any excess will be refunded to Buyer. If no closing occurs, the title company may require payment of unpaid expenses incurred on behalf of the parties and a written release of liability of the title company from all parties.

B. If one party makes written demand for the earnest money, the title company will give notice of the demand by providing to the other party a copy of the demand. If the title company does not receive written objection to the demand from the other party within 15 days after the date the title company sent the demand to the other party, the title company may disburse the earnest money to the party making demand, reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and the title company may pay the same to the creditors.

C. The title company will deduct any independent consideration under Paragraph 7B(1) before disbursing any earnest money to Buyer and will pay the independent consideration to Seller.

D. If the title company complies with this Paragraph 18, each party hereby releases the title company from all claims related to the disbursal of the earnest money.

E. Notices under this Paragraph 18 must be sent by certified mail, return receipt requested. Notices to the title company are effective upon receipt by the title company.

F. Any party who wrongfully fails or refuses to sign a release acceptable to the title company within 7 days after receipt of the request will be liable to the other party for: (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

G. ☐ Seller ☐ Buyer intend(s) to complete this transaction as a part of an exchange of like-kind properties in accordance with Section 1031 of the Internal Revenue Code, as amended. All expenses in connection with the contemplated exchange will be paid by the exchanging party. The other party will not incur any expense or liability with respect to the exchange. The parties agree to cooperate fully and in good faith to arrange and consummate the exchange so as to comply to the maximum extent feasible with the provisions of Section 1031 of the Internal Revenue Code. The other provisions of this contract will not be affected in the event the contemplated exchange fails to occur.

**19. MATERIAL FACTS:** To the best of Seller's knowledge and belief: *(Check only one box.)*

☐ A. Seller is not aware of any material defects to the Property except as stated in the attached Commercial Property Condition Statement (TXR-1408).

☒ B. Except as otherwise provided in this contract, Seller is not aware of:
  (1) any subsurface: structures, pits, waste, springs, or improvements;
  (2) any pending or threatened litigation, condemnation, or assessment affecting the Property;

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    815 Ohio Ave

Commercial Contract - Improved Property concerning     815 Ohio Avenue, Wichita Falls, TX 76301

    (3) any environmental hazards or conditions that materially affect the Property;

    (4) whether the Property is or has been used for the storage or disposal of hazardous materials or toxic waste, a dump site or landfill, or any underground tanks or containers;

    (5) whether radon, asbestos containing materials, urea-formaldehyde foam insulation, lead-based paint, toxic mold (to the extent that it adversely affects the health of ordinary occupants), or other pollutants or contaminants of any nature now exist or ever existed on the Property;

    (6) any wetlands, as defined by federal or state law or regulation, on the Property;

    (7) any threatened or endangered species or their habitat on the Property;

    (8) any present or past infestation of wood-destroying insects in the Property's improvements;

    (9) any contemplated material changes to the Property or surrounding area that would materially and detrimentally affect the ordinary use of the Property;

    (10)any material physical defects in the improvements on the Property; or

    (11)any condition on the Property that violates any law or ordinance.

*(Describe any exceptions to (1)-(11) in Paragraph 12 or an addendum.)*

**20. NOTICES:** All notices between the parties under this contract must be in writing and are effective when hand-delivered, mailed by certified mail return receipt requested, or sent by facsimile transmission to the parties addresses or facsimile numbers stated in Paragraph 1. The parties will send copies of any notices to the broker representing the party to whom the notices are sent.

☐ A. Seller also consents to receive any notices by e-mail at Seller's e-mail address stated in Paragraph 1.
☐ B. Buyer also consents to receive any notices by e-mail at Buyer's e-mail address stated in Paragraph 1.

**21. DISPUTE RESOLUTION:** The parties agree to negotiate in good faith in an effort to resolve any dispute related to this contract that may arise. If the dispute cannot be resolved by negotiation, the parties will submit the dispute to mediation before resorting to arbitration or litigation and will equally share the costs of a mutually acceptable mediator. This paragraph survives termination of this contract. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**22. AGREEMENT OF THE PARTIES:**

    A. This contract is binding on the parties, their heirs, executors, representatives, successors, and permitted assigns. This contract is to be construed in accordance with the laws of the State of Texas. If any term or condition of this contract shall be held to be invalid or unenforceable, the remainder of this contract shall not be affected thereby.

    B. This contract contains the entire agreement of the parties and may not be changed except in writing.

    C. If this contract is executed in a number of identical counterparts, each counterpart is an original and all counterparts, collectively, constitute one agreement.

    D. Addenda which are part of this contract are: *(Check all that apply.)*
      ☐ (1) Property Description Exhibit identified in Paragraph 2;
      ☐ (2) Commercial Contract Condominium Addendum (TXR-1930) or (TXR-1946);
      ☒ (3) Commercial Contract Financing Addendum (TXR-1931);
      ☐ (4) Commercial Property Condition Statement (TXR-1408);
      ☐ (5) Commercial Contract Addendum for Special Provisions (TXR-1940);
      ☐ (6) Addendum for Seller's Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (TXR-1906);
      ☐ (7) Notice to Purchaser of Real Property in a Water District (MUD);
      ☐ (8) Addendum for Coastal Area Property (TXR-1915);
      ☐ (9) Addendum for Property Located Seaward of the Gulf Intracoastal Waterway (TXR-1916);
      ☒ (10)Information About Brokerage Services (TXR-2501); and
      ☐ (11)Information About Mineral Clauses in Contract Forms (TXR-2509); and
      ☐ (12)_____

Commercial Contract – Improved Property concerning    815 Ohio Avenue, Wichita Falls, TX 76301

*(Note: Counsel for Texas REALTORS® has determined that any of the foregoing addenda which are promulgated by the Texas Real Estate Commission (TREC) or published by Texas REALTORS® are appropriate for use with this form.)*

E. Buyer ☐ may ☐ may not assign this contract. If Buyer assigns this contract, Buyer will be relieved of any future liability under this contract only if the assignee assumes, in writing, all of Buyer's obligations under this contract.

23. **TIME:** Time is of the essence in this contract. The parties require strict compliance with the times for performance. If the last day to perform under a provision of this contract falls on a Saturday, Sunday, or legal holiday, the time for performance is extended until the end of the next day which is not a Saturday, Sunday, or legal holiday.

24. **EFFECTIVE DATE:** The effective date of this contract for the purpose of performance of all obligations is the date the title company receipts this contract after all parties execute this contract.

25. **ADDITIONAL NOTICES:**

A. Buyer should have an abstract covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a title policy.

B. If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fees of the district before final execution of this contract.

C. Notice Required by §13.257, Water Code: "The real property, described below, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned purchaser hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in the notice or at closing of purchase of the real property." The real property is described in Paragraph 2 of this contract.

D. If the Property adjoins or shares a common boundary with the tidally influenced submerged lands of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included as part of this contract *(the Addendum for Coastal Area Property, (TXR-1915) may be used).*

E. If the Property is located seaward of the Gulf Intracoastal Waterway, §61.025, Texas Natural Resources Code, requires a notice regarding the seaward location of the Property to be included as part of this contract *(the Addendum for Property Located Seaward of the Gulf Intracoastal Waterway (TXR-1916) may be used).*

F. If the Property is located outside the limits of a municipality, the Property may now or later be included in the extra-territorial jurisdiction (ETJ) of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and ETJ. To determine if the Property is located within a municipality's ETJ, Buyer should contact all municipalities located in the general proximity of the Property for further information.

G. If apartments or other residential units are on the Property and the units were built before 1978, federal law requires a lead-based paint and hazard disclosure statement to be made part of this contract *(the Addendum for Seller's Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (TXR-1906) may be used).*

(TXR-1801) 4-1-18        Initialed for Identification by Seller _DJ(_ , _____ and Buyer _KW_ , _____        Page 12 of 14

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com        815 Ohio Ave

Commercial Contract - Improved Property concerning       815 Ohio Avenue, Wichita Falls, TX 76301

H. Section 1958.154, Occupations Code requires Seller to provide Buyer a copy of any mold remediation certificate issued for the Property during the 5 years preceding the date the Seller sells the Property.

I. Brokers are not qualified to perform property inspections, surveys, engineering studies, environmental assessments, or inspections to determine compliance with zoning, governmental regulations, or laws. Buyer should seek experts to perform such services. Buyer should review local building codes, ordinances and other applicable laws to determine their effect on the Property. Selection of experts, inspectors, and repairmen is the responsibility of Buyer and not the brokers. Brokers are not qualified to determine the credit worthiness of the parties.

J. NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

K. LICENSE HOLDER DISCLOSURE: Texas law requires a real estate license holder who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the license holder owns more than 10%, or a trust for which the license holder acts as a trustee or of which the license holder or the license holder's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: _____

26. **CONTRACT AS OFFER:** The execution of this contract by the first party constitutes an offer to buy or sell the Property. Unless the other party accepts the offer by 5:00 p.m., in the time zone in which the Property is located, on _____June 12, 2019_____ , the offer will lapse and become null and void.

**READ THIS CONTRACT CAREFULLY. The brokers and agents make no representation or recommendation as to the legal sufficiency, legal effect, or tax consequences of this document or transaction. CONSULT your attorney BEFORE signing.**

Seller: Diane T. Clay                          Buyer: The Burn Shop, LLC

By: _____            By: _____
By (signature): _Diane T. Clay_         By (signature): _Keith Witzlinger_
Printed Name: _Diane T. Clay_           Printed Name: _Keith Witzlinger_
Title: _Owner_                          Title: _Owner - The Burn Shop_

By: _____            By: _____
By (signature): _____         By (signature): _____
Printed Name: _____           Printed Name: _____
Title: _____                  Title: _____

(TXR-1801) 4-1-18                                           Page 13 of 14

Commercial Contract - Improved Property concerning ___815 Ohio Avenue, Wichita Falls, TX 76301_____

## AGREEMENT BETWEEN BROKERS
*(use only if Paragraph 9B(1) is effective)*

Principal Broker agrees to pay _____ (Cooperating Broker) a fee when the Principal Broker's fee is received. The fee to be paid to Cooperating Broker will be:

☐ $ _____ , or
☐ _____ % of the sales price, or
☐ _____ % of the Principal Broker's fee.

The title company is authorized and directed to pay Cooperating Broker from Principal Broker's fee at closing. This Agreement Between Brokers supersedes any prior offers and agreements for compensation between brokers.

Principal Broker: _____  Cooperating Broker: _____

_____  _____

By: _____  By: _____

## ATTORNEYS

Seller's attorney: _____  Buyer's attorney: _____

Address: _____  Address: _____

_____  _____

Phone & Fax: _____  Phone & Fax: _____

E-mail: _____  E-mail: _____

Seller's attorney requests copies of documents, notices, and other information:
☐ the title company sends to Seller.
☐ Buyer sends to Seller.

Buyer's attorney requests copies of documents, notices, and other information:
☐ the title company sends to Buyer.
☐ Seller sends to Buyer.

## ESCROW RECEIPT

The title company acknowledges receipt of:
☐ A. the contract on this day _____ (effective date);
☐ B. earnest money in the amount of $ _____ in the form of _____
on _____ .

Title company: _____  Address: _____

_____

By: _____  Phone & Fax: _____

Assigned file number (GF#): _____  E-mail: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          815 Ohio Ave



# TEXAS REALTORS

## COMMERCIAL CONTRACT FINANCING ADDENDUM

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED
©Texas Association of REALTORS®, Inc. 2010

### ADDENDUM TO COMMERCIAL CONTRACT BETWEEN THE UNDERSIGNED PARTIES CONCERNING THE PROPERTY AT

#### 815 Ohio Avenue, Wichita Falls, TX 76301

The portion of the Sales Price not payable in cash will be paid as follows: *(Check all that apply.)*

[X] A. THIRD PARTY FINANCING:

    (1) The contract is contingent upon Buyer obtaining a third party loan(s) secured by the Property in the amount of $ **160,000.00** for not less than **TBD** years with the initial interest rate not to exceed **TBD** % per annum and payments calculated on an amortization period of no less than **TBD** years.

    (2) Buyer will apply for the third party loan(s) described in Paragraph A(1) promptly after the effective date. If Buyer cannot obtain the loan(s), Buyer may give Seller written notice within **30** days after the effective date and the contract will terminate and the earnest money, less any independent consideration under Paragraph 7B(1) of the contract, will be refunded to Buyer. **If Buyer does not give such notice within the time required, this contract will no longer be subject to the contingency described in this Paragraph A.**

    (3) Each note to be executed under this addendum is to be secured by vendor's and deed of trust liens.

[ ] B. ASSUMPTION:

    (1) Buyer will assume the unpaid principal balance of the existing promissory note secured by the Property payable to _____ which balance at closing will be $ _____ dated _____.

    (2) Buyer's initial payment will be the first payment due after closing. Buyer's assumption of the existing note includes all obligations imposed by the deed of trust securing the note, recorded in _____ *(recording reference)* in the real property records of the county where the Property is located.

    (3) If the unpaid principal balance of the assumed loan as of the date of closing varies from the loan balance stated in Paragraph B(1), the cash payable at closing will be adjusted by the net amount of any variance; provided, if the total principal balance of the assumed loan varies in an amount greater than $ _____ at closing, either party may terminate this contract and the earnest money will be refunded to Buyer unless either party elects to eliminate the excess in the variance by an appropriate adjustment at closing.

    (4) Buyer may terminate the contract and the earnest money, less any independent consideration under Paragraph 7B(1) of the contract, will be refunded to Buyer if the note holder on assumption requires:
      (a) Buyer to pay an assumption fee in excess of $ _____ and Seller declines to pay such excess;
      (b) an increase in the interest rate to more than _____ %; or
      (c) any other modification of the loan documents.

    (5) Unless Seller is released of liability on any assumed note, Seller requires a vendor's lien and deed of trust to secure assumption, which will be automatically released on execution and delivery of a release by the note holder.

(TXR-1931) 1-26-10    Initialed for Identification by Seller **DJC** , _____ , and Buyer: **KW** _____ .    Page 1 of 4

Mason McCleskey, 2601 Harrison Street, Suite 200 Wichita Falls TX 76308    Phone: 9407042231    Fax: 9407670041    815 Ohio Ave
Mason McCleskey    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Commercial Contract Financing Addendum concerning <u>815 Ohio Avenue, Wichita Falls, TX 76301</u>

(6) If assumption approval is required by the note holder, Buyer will apply for assumption approval within _____ days after the effective date of the contract and will make every reasonable effort to obtain assumption approval. If Buyer cannot obtain assumption approval, Buyer may give Seller written notice within _____ days after the effective date and the contract will terminate and the earnest money, less any independent consideration under Paragraph 7B(1) of the contract, will be refunded to Buyer. **If Buyer does not give such notice within the time required and Buyer does not close because Buyer is not able to assume the existing note, Buyer will be in default.**

☐ C. <u>SELLER FINANCING</u>:

(1) At closing, Buyer will execute and deliver a promissory note (the note) from Buyer to Seller in the amount of $ _____ , bearing _____ % interest per annum. Matured, unpaid amounts will bear interest at the maximum rate of interest allowed by law.

(2) The note will be payable as follows:

☐ (a) In one payment, due _____ after the date of the note, with interest payable: ☐ (i) monthly ☐ (ii) _____

☐ (b) In installments of $ _____ ☐ including interest ☐ plus interest beginning _____ after the date of the note and continuing at ☐ monthly ☐ _____ intervals thereafter for _____ when the entire balance of the note will be due and payable.

☐ (c) Interest only in ☐ monthly ☐ _____ installments for the first _____ years and thereafter in installments of $ _____ ☐ including interest ☐ plus interest beginning _____ after the date of the note and continuing at ☐ monthly ☐ _____ intervals thereafter for _____ when the entire balance of the note will be due and payable.

(3) The note will be secured by vendor's and deed of trust liens and an assignment of leases payable at the placed designated by Seller.

(4) The note will provide that if Buyer fails to timely pay an installment within 10 days after the installment is due, Buyer will pay a late fee equal to 5% of the installment not paid.

(5) The note ☐ will ☐ will not provide for liability (personal or corporate) against the maker in the event of default.

(6) The note may be prepaid in whole or in part at any time without penalty. Any prepayments are to be applied to the payment of the installments of principal last maturing and interest will immediately cease on the prepaid principal.

(7) The lien securing payment of the note will be inferior to any lien securing any superior note described in this addendum. If an owner's policy of title insurance is furnished, Buyer, at Buyer's expense, will furnish Seller with a mortgagee title policy in the amount of the note at closing.

(8) If all or any part of the Property is sold or conveyed without Seller's prior written consent, Seller, at Seller's option, may declare the outstanding principal balance of the note, plus accrued interest, immediately due and payable. Any of the following is not a sale or conveyance of the Property:
(a) the creation of a subordinate lien;
(b) a sale under a subordinate lien;
(c) a deed under threat or order of condemnation;
(d) a conveyance solely between the parties; or
(e) the passage of title by reason of death of a maker or operation of law.

Commercial Contract Financing Addendum concerning <u>815 Ohio Avenue, Wichita Falls, TX 76301</u>

    (9) <u>Deposits for Taxes and Insurance</u>: Together with the principal and interest installments, Buyer ☐ will ☐ will not deposit with Seller a pro rata part of the estimated annual ad valorem taxes on the Property and a pro rata part of the estimated annual insurance premiums for the improvements on the Property.

        (a) If Buyer deposits taxes and insurance deposits with Seller, Buyer agrees that the taxes and insurance deposits are only estimates and may be insufficient to pay total taxes and insurance premiums. Buyer agrees to pay any deficiency within 30 days after Seller notifies Buyer of any deficiency. Buyer's failure to pay the deficiency is a default under the deed of trust.

        (b) If any superior lien holder on the Property collects payments for taxes and insurance, any requirement to deposit taxes and insurance deposits with Seller under this addendum is inoperative so long as payments are being made to the superior lien holder.

    (10) Any event that constitutes a default under any superior lien constitutes a default under the deed of trust the note.

    (11) The note will include a provision for reasonable attorney's fees for any collection action.

    (12) Unless the parties agree otherwise, the form of the note and loan documents will be as found in the current edition of the State Bar of Texas Real Estate Forms Manual without any additional clauses.

☐ D. <u>CREDIT APPROVAL ON ASSUMPTION OR SELLER FINANCING</u>:

    (1) To establish Buyer's creditworthiness for assumption approval or seller financing, Buyer will deliver to Seller the following information (Buyer's documentation) within _____ days after the effective date of the contract:
    ☐ (a) verification of employment, including salary;
    ☐ (b) verification of funds on deposit in financial institutions;
    ☐ (c) current financial statement;
    ☐ (d) credit report;
    ☐ (e) tax returns for the following years _____;
    ☐ (f) _____.

    (2) If Buyer does not timely deliver Buyer's documentation or Seller determines, in Seller's sole discretion, that Buyer's creditworthiness is not acceptable, Seller may terminate the contract by giving written notice to Buyer not later than _____ days after the date Buyer must deliver Buyer's documentation under Paragraph D(1) and the earnest money, less any independent consideration under Paragraph 7B(1) of the contract, will be refunded to Buyer. If Seller does not timely terminate the contract under this paragraph, Seller will be deemed to have accepted Buyer's credit.

☐ E. <u>SPECIAL PROVISIONS</u>:

(TXR-1931) 1-26-10    Initialed for Identification by Seller *DYC* , _____, and Buyer: *KW* , _____    Page 3 of 4

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    815 Ohio Ave

Commercial Contract Financing Addendum concerning <u>815 Ohio Avenue, Wichita Falls, TX 76301</u>

**Seller:** _____      **Buyer:** _____

By: _____           By: _____

   By (signature): *Diane J. Clay*          By (signature): *Kith W...*

   Printed Name: *Diane J. Clay*           Printed Name: *Keith Wininger*

   Title: *Owner*                           Title: *Owner - The Barn Shop*

By: _____           By: _____

   By (signature): _____          By (signature): _____

   Printed Name: _____            Printed Name: _____

   Title: _____                   Title: _____

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                815 Ohio Ave

THE BURN SHOP, LLC
2 JASMINE CT
WICHITA FALLS, TX 76310
940 631-6117

3044

Date 6/10/19

Pay to the
Order of LANDMARK TITLE

$ 10,000.⁰⁰

TEN THOUSAND DOLLARS + No/100

Dollars

TEXOMA
COMMUNITY
CREDIT UNION     P.O. BOX 1320
WICHITA FALLS, TX 76307

For EARNEST MONEY BIS OHIO

⑈311990294⑈ 000008322256⑈ 003044

EXHIBIT
10

 **First Bank**

July 2, 2019

Diane T Clay
5 Hickory Downs
Wichita Falls, TX. 76308

RE:  Loan #3000001544
     Dated:  July 1, 2015
     Original Amount:  $86,902.40
     Collateral:  First Lien Deed of Trust 815 Ohio Ave, Wichita Falls, TX 76301

Dear Ms. Clay:

You are in default of your obligations described in the above referenced loan.  The default occurred because of your failure to make payment on said loan, in full, when due.  The loan matured on July 1, 2019.  As of the date on this letter, the total amount due is $111,741.90 including interest and late fees.

First Bank, the holder of said loan, hereby demands that you cure the default by paying the total due amount on or before July 12, 2019.  Your payment must be made at the bank's office at 4110 Kell Blvd. Wichita Falls, TX. 76309.

If this default is not cured, this could result in foreclosure of the collateral.

Sincerely,

Jim Johnson
EVP, Chief Credit Officer

Member FDIC

4110 Kell Blvd · Wichita Falls, TX 76309        318 West Park · Iowa Park, TX 76367        P.O. Box 458
940-691-0000 · Fax 940-691-9988               940-592-4619 · Fax: 940-592-4654            940-569-222

FirstBankWeb.com


EXHIBIT
11

20199783    102 Total Pages: 3

After Recording Please Return To:

Loan Administration, First Bank

901 Lamar Ave.

Wichita Falls, TX 76301

_____

Space Above This Line For Recording Data

## MODIFICATION OF DEED OF TRUST

**DATE AND PARTIES.** The date of this Real Estate Modification (Modification) is July 1, 2015. The parties and their addresses are:

GRANTOR:
   DIANE T CLAY
   5 Hickory Downs
   Wichita Falls, TX 76308

TRUSTEE:
   J. CHARLES WHITE
   4110 Kell Blvd
   Wichita Falls, TX 76309

LENDER:
   FIRST BANK
   Organized and existing under the laws of Texas
   4110 Kell Blvd.
   Wichita Falls, TX 76309

1. **BACKGROUND.** Grantor and Lender entered into a security instrument dated July 1, 2014 and recorded on August 6, 2014 (Security Instrument). The Security Instrument was recorded in the records of Wichita County, Texas at Volume 3998 Page 567 and covered the following described Property:

Lot Eleven (11), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume, Page 21-24, Wichita County Plat Records.

The property is located in Wichita County at 815 Ohio Ave, Wichita Falls, Texas 76301.

2. **MODIFICATION.** For value received, Grantor and Lender agree to modify the Security Instrument as provided for in this Modification.

The Security Instrument is modified as follows:

A. **Secured Debt.** The secured debt provision of the Security Instrument is modified to read:

(1) Secured Debts. The term "Secured Debts" includes and this Security Instrument will secure each of the following:

(a) Specific Debts. The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 3000001544, dated July 1, 2014, from Grantor to Lender, with a modified loan amount of $86,902.40 and maturing on July 1, 2019.

(b) All Debts. All present and future debts from Grantor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security

Wolters Kluwer Financial Services ©1996, 2019 Bankers Systems™    Page 1


EXHIBIT
12

Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities. This Modification will not secure any other debt if Lender, with respect to that other debt, fails to fulfill any necessary requirements or fails to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property.

(c) Sums Advanced. All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

3. WARRANTY OF TITLE. Grantor warrants that Grantor continues to be lawfully seized of the estate conveyed by the Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

4. CONTINUATION OF TERMS. Except as specifically amended in this Modification, all of the terms of the Security Instrument shall remain in full force and effect.

SIGNATURES. By signing, Grantor agrees to the terms and covenants contained in this Modification. Grantor also acknowledges receipt of a copy of this Modification.

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND, TO THE EXTENT PERMITTED BY LAW, MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.
THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

GRANTOR:

_Diane Y Clay_
Diane T Clay

LENDER:

First Bank

By _Jim Johnson_
Jim Johnson, Executive Vice President

ACKNOWLEDGMENT.

State OF Texas . County OF Wichita ss.

This instrument was acknowledged before me this 9 day of July 2019 by Diane T Clay .

My commission expires:

_Susan Brooks_
(Notary Public)

SUSAN BROOKS
Notary Public, State of Texas
Notary I.D. # 102787-3
My Commission Expires 07-02-2021

(Lender Acknowledgment)

State OF Texas . County OF Wichita ss.

This instrument was acknowledged before me this 9 day of July 2019 by Jim Johnson ·· Executive Vice President of First Bank, a corporation, on behalf of the corporation.

My commission expires:

_Susan Brooks_
(Notary Public)

SUSAN BROOKS
Notary Public, State of Texas
Notary I.D. # 102787-3
My Commission Expires 07-02-2021

THE STATE OF TEXAS

COUNTY OF WICHITA

I hereby certify that this instrument was FILED on the date and the time stamped hereon by me and was duly RECORDED in the Records of Wichita County, Texas.

20199783 `102
07/09/2019 12:33 PM

_Lori Bohannon_

Lori Bohannon, County Clerk
Wichita County, Texas



# DEED IN LIEU OF FORECLOSURE

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**Date:** July _12_, 2019

**Grantor:** DIANE T. CLAY, Individually

**Grantor's Mailing Address [include county]:**

> 4409 Tobago
> Wichita Falls, Texas 76308
> Wichita County, Texas

**Grantee:** FIRST BANK

**Grantee's Mailing Address [include county]:**

> 2801 Midwestern Parkway, Suite 200
> Wichita Falls, Texas 76308
> Wichita County, Texas

**Original Note ("Note")**

> **Date:** September 14, 2006
> **Amount:** $85,000.00
> **Maker:** Diane T. Clay
> **Original Payee:** First Bank
> **Current Noteholder:** First Bank
> **Final Maturity Date:** May 14, 2007

**Real Estate Deed Of Trust securing Note ("Real Estate Deed Of Trust")**

> **Date:** September 14, 2006
> **Grantor:** Diane T. Clay
> **Original Beneficiary:** First Bank
> **Current Beneficiary:** First Bank



EXHIBIT
13

**Trustee:** J. Charles White
**Recording Information:** Real Estate Deed Of Trust duly recorded in Volume 3017, Page 561, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust.

## Modification Of Deed Of Trust ("Modification Of Deed Of Trust No. 1")

**Date:** May 14, 2007
**Grantor:** Diane T. Clay
**Lender:** First Bank
**Current Lender and/or Beneficiary:** First Bank
**Amount Renewed:** $84,000.00
**Recording Information:** Modification Of Deed Of Trust duly recorded in Volume 3114, Page 388, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust.

## Modification Of Deed Of Trust ("Modification Of Deed Of Trust No. 2")

**Date:** May 14, 2008
**Grantor:** Diane T. Clay
**Lender:** First Bank
**Current Lender and/or Beneficiary:** First Bank
**Amount Renewed:** $80,000.00
**Recording Information:** Modification Of Deed Of Trust duly recorded in Volume 3250, Page 719, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust.

## Modification Of Deed Of Trust ("Modification Of Deed Of Trust No. 3")

**Date:** May 14, 2009
**Grantor:** Diane T. Clay
**Lender:** First Bank
**Current Lender and/or Beneficiary:** First Bank
**Amount Renewed:** $80,000.00
**Recording Information:** Modification Of Deed Of Trust duly recorded in Volume 3368, Page 616, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust.

**Modification Of Deed Of Trust ("Modification Of Deed Of Trust No. 4")**

| | |
|---|---|
| **Date:** | May 24, 2010 |
| **Grantor:** | Diane T. Clay |
| **Lender:** | First Bank |

**Current Lender and/or Beneficiary:** First Bank

**Amount Renewed:** $80,000.00

**Recording Information:** Modification Of Deed Of Trust duly recorded in Volume 3499, Page 258, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust.

**Modification Of Deed Of Trust ("Modification Of Deed Of Trust No. 5")**

| | |
|---|---|
| **Date:** | May 24, 2011 |
| **Grantor:** | Diane T. Clay |
| **Lender:** | First Bank |

**Current Lender and/or Beneficiary:** First Bank

**Amount Renewed:** $80,000.00

**Recording Information:** Modification Of Deed Of Trust duly recorded in Volume 3625, Page 642, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust.

**Modification Of Deed Of Trust ("Modification Of Deed Of Trust No. 6")**

| | |
|---|---|
| **Date:** | May 24, 2012 |
| **Grantor:** | Diane T. Clay |
| **Lender:** | First Bank |

**Current Lender and/or Beneficiary:** First Bank

**Amount Renewed:** $80,000.00

**Recording Information:** Modification Of Deed Of Trust duly recorded in Volume 3747, Page 855, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust.

**Modification Of Deed Of Trust ("Modification Of Deed Of Trust No. 7")**

| | |
|---|---|
| **Date:** | July 1, 2014 |
| **Grantor:** | Diane T. Clay |
| **Lender:** | First Bank |

**Current Lender and/or Beneficiary:** First Bank
**Amount Renewed:** $80,000.00
**Recording Information:**    Modification Of Deed Of Trust duly recorded in Volume 3998, Page 563, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust.

## Modification Of Deed Of Trust ("Modification Of Deed Of Trust No. 8")

**Date:**    July 1, 2015
**Grantor:**    Diane T. Clay
**Lender:**    First Bank
**Current Lender and/or Beneficiary:** First Bank
**Amount Renewed:** $86,902.40
**Recording Information:**    Modification Of Deed Of Trust duly recorded as Document No. 20199783, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust.

**Consideration:**    TEN AND NO/100 DOLLARS ($10.00) and further the release of Grantor from all liability for the indebtedness and obligations under this Note only, as modified, respectively, and the Real Estate Deed Of Trust and/or the Modifications Of Deed Of Trust Nos. 1, 2, 3, 4, 5, 6, 7, and 8, respectively (all of which are hereinafter referred to as the "Security Instruments"), except that no release is given of any liens or warranties of title and further except that the indebtedness under the Note, as modified, respectively, is not canceled or extinguished. Grantor assigns to Grantee both the casualty insurance policy on the property and all funds on deposit, if any, for payment of insurance premiums and for payment of taxes.

**Property (including any improvements):**

Lot Eleven (11), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume, Page 21-24, Wichita County Plat Records.

**Exceptions to Conveyance and Warranty:**

The liens described in this deed and the exceptions to conveyance and warranty in the Security Instruments and/or the Note, as modified, respectively.

Grantor, for the Consideration and subject to the Exceptions to Conveyance and Warranty, grants,

sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's successors and assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators, successors and assigns, to warrant and forever defend all and singular the Property to Grantee and Grantee's successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Exceptions to Conveyance and Warranty.

**Conveyance in Lieu of Foreclosure.** This deed and the conveyances being made are executed, delivered, and accepted in lieu of foreclosure and will be interpreted and construed the same as a foreclosure of the liens and as an absolute conveyance to Grantee of all right, title, and interest in and to the Property, including specifically but without limitation any equity or rights of redemption of Grantor in or to the Property.

**Continuing Nature of Lien.** Notwithstanding the release of Grantor from all liability for the indebtedness and obligations under the Note, as modified, respectively, and the Security Instruments, the indebtedness has not been canceled or extinguished and the Property continues to be subject to the performance of the obligations under the Security Instruments and/or the Note, as modified, respectively. The Security Instruments and/or the Note, as modified, respectively, liens are not released or relinquished in any manner, and the indebtedness, obligations, and Grantor agrees that all liens will remain valid and continuous and in full force and effect, unless and until the indebtedness, obligations, and liens are expressly released by written instrument executed and delivered by the holder thereof, at the holder's sole discretion.

**Nonmerger.** Neither Grantor nor Grantee intend that there be, and there will never be, a merger of the Security Instruments and/or the Note, as modified, respectively, liens with the fee simple title or any other interest of Grantee in the Property by virtue of this conveyance, and the parties expressly provide that any interest in the Security Instruments and/or the Note, as modified, respectively, liens and fee simple title will be and remain at all times separate and distinct.

**GRANTOR:**

_Diane T. Clay_
DIANE T. CLAY

**GRANTEE:**

FIRST BANK

By _____
Signature
Name Printed: _Jim Johnson_
Title: _EVP_

THE STATE OF TEXAS            :
                             :
COUNTY OF WICHITA            :

     This instrument was acknowledged before me on the 12th day of July, 2019, by DIANE
T. CLAY.



                                _____
                                  Notary Public, State of Texas

THE STATE OF TEXAS            :
                             :
COUNTY OF WICHITA            :

     This instrument was acknowledged before me on the 12th day of July, 2019, by _____
Jim Johnson, as EVP _____, of FIRST BANK, on behalf of said
bank.



                                  _____
                                  Notary Public, State of Texas

**AFTER RECORDING RETURN TO:**

ELDER & BICKINGS
320 E. THIRD STREET
BURKBURNETT, TX 76354

**PREPARED IN THE LAW OFFICES OF:**

ELDER & BICKINGS
320 E. THIRD STREET
BURKBURNETT, TX 76354

LAW OFFICES OF

# ELDER & BICKINGS

320 E. Third Street
Burkburnett, Texas 76354
Telephone: 940-569-2201
Facsimile: 940-569-5032
Email: burk@aggielawfirm.com

**BILLY T. ELDER**
**STEVEN J. BICKINGS**
**JONATHAN R. ELLZEY**

3415 McNiel Avenue, Suite 102C
Wichita Falls, Texas 76308
Telephone: 940-691-6699
Facsimile: 940-691-7799
Email: wf@aggielawfirm.com

July 15, 2019

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE, OR YOUR SPOUSE IS, SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

Ms. Diane T. Clay
5 Hickory Downs
Wichita Falls, Texas 76308
**U.S. FIRST CLASS MAIL**
**U.S. CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**RETURN RECEIPT NO. 7018 2290 0001 1651 0236**

Re:   Notice Of Foreclosure Sale on August 6, 2019, by Substitute Trustee of property described in **(1)** the Deed Of Trust ("Deed Of Trust") dated September 14, 2006, executed by Diane T. Clay, said Deed Of Trust being duly recorded as Document Number 00109570, Volume 3017, Page 561, Official Public Records, Wichita County, Texas; **(2)** the Modification Of Deed Of Trust ("Modification No. 1 of Deed Of Trust") duly recorded as Document Number 00011730, Volume 3114, Page 388, Official Public Records, Wichita County, Texas; and **(3)** the Modification Of Deed Of Trust ("Modification No. 2 of Deed Of Trust") duly recorded as Document Number 00009802, Volume 3250, Page 719, Official Public Records, Wichita County, Texas; **(4)** the Modification Of Deed Of Trust ("Modification No. 3 of Deed Of Trust") duly recorded as Document Number 00009229, Volume 3368, Page 616, Official Public Records, Wichita County, Texas; **(5)** the Modification Of Deed Of Trust ("Modification No. 4 of Deed Of Trust") duly recorded as Document Number 00010032, Volume 3499, Page 258, Official Public Records, Wichita County, Texas; **(6)** the Modification Of Deed Of Trust ("Modification No. 5 of Deed Of Trust") duly recorded as Document Number 00010412, Volume 3625, Page 642, Official Public Records,

**EXHIBIT**
**14**

Ms. Diane T. Clay
July 15, 2019
Page 2

Wichita County, Texas; **(7)** the Modification Of Deed Of Trust ("Modification No. 6 of Deed Of Trust") duly recorded as Document Number 00011144, Volume 3747, Page 855, Official Public Records, Wichita County, Texas; **(8)** the Modification Of Deed Of Trust ("Modification No. 7 of Deed Of Trust") duly recorded as Document Number 00011566, Volume 3998, Page 563, Official Public Records, Wichita County, Texas; and **(9)** the Modification Of Deed Of Trust ("Modification No. 8 of Deed Of Trust") duly recorded as Document Number 20199783, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust (all of which are hereinafter referred to as the "Security Instruments"); securing the obligations therein described (the Obligations) payable to First Bank.

Dear Ms. Clay:

This letter and the accompanying copy of the Notice Of Foreclosure Sale are being sent to you as the Debtor on the indebtedness described in the enclosed Notice. Default has occurred in the payment of the indebtedness. Our Firm has been employed by First Bank to represent it in collecting the indebtedness owed it by you and secured by the referenced Security Instruments. This letter constitutes formal legal notice to you; accordingly, you should read this letter and the accompanying Notice of Foreclosure Sale carefully and fully. The undersigned has been appointed as the Substitute Trustee to conduct the Foreclosure Sale of the property encumbered by the Security Instruments.

I am enclosing a copy of the Notice Of Foreclosure Sale, which is being posted on the public notice board of the Wichita County Courthouse and in accordance with the provisions of the Security Instrument. You are informed that the public auction of the property described in the Notice is scheduled for **Tuesday, August 6, 2019**, between the hours of 10:00 A.M. and 4:00 P.M. at the Wichita County Courthouse. The sale will be held at the Wichita County Courthouse, 900 Seventh Street, Wichita Falls, Texas 76301, at the following location: South steps of Courthouse.

As of July 15, 2019, the sum of $86,902.40 in principal, $24,495.60 in accrued interest; $398.21 in charges/fees; with additional interest accruing at the rate of $18.1047 per day; and plus at least $800.00 in reasonable attorney's fees, plus any other costs and fees incurred by the Noteholder, is due and owed with respect to the Note, as modified, respectively. Interest shall continue to accrue on the matured unpaid principal in accordance with the terms of the Security Instruments until this debt is paid. Additionally, the Note, as modified, respectively, and the Security Instruments provide for reimbursement to the Noteholder of its reasonable attorney's fees, trustee's fees, and expenses incurred in collecting this debt. You may contact this office at the letterhead address to obtain a complete statement of the balance owed on your debt to the Noteholder and to arrange payment of this debt.

Ms. Diane T. Clay
July 15, 2019
Page 3

Due to your failure to cure the defaults under the terms of the Note, as modified, respectively, and the Security Instruments, the Noteholder is exercising its right to accelerate the maturity of the Note, as modified, respectively, and to declare the full unpaid balance immediately due and payable. Demand is hereby made that you pay the Noteholder the indebtedness now owed and secured by the Security Instruments.

You will be able to prevent this foreclosure by paying the Noteholder before the Foreclosure Sale the total amount now owed that is secured by the referenced Security Instruments, plus the additional interest and charges/fees that accrue to the date of payment, and paying all attorney's fees and other expenses incurred by the Noteholder in collecting this indebtedness.

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt of this Notice, the debt will be assumed to be valid by the undersigned. If you notify the undersigned in writing within thirty (30) days of receipt of this letter that the debt, or any portion thereof, is disputed, I will obtain verification of the debt and will mail a copy of the verification to you. Upon your written request, within the thirty-day period for the verification, I will provide you with the name and address of the original creditor. These thirty-day periods do not alter, waive, or affect the **August 6, 2019**, time for payment set forth above. You are notified that any information you give me will be used in the collection of the debt owed to the Noteholder.

You are advised that Home Ownership Counseling is available to you through non-profit organizations approved by the Department of Housing and Urban Development ("HUD") or the Administrator of Veteran's Affairs. You are further advised that First Bank does not provide Home Ownership Counseling. HUD has established 1-800-569-4287 as a national toll free telephone number for homeowner counseling to get the location of the nearest homeowner counseling agency.

We are sending this letter and the enclosed Notice Of Foreclosure Sale to you by both regular and certified mail in order to ensure your receipt of same.

Very truly yours,

ELDER & BICKINGS

By _____

Billy T. Elder

BTE/jmm
Enclosure: Copy of Notice Of Foreclosure Sale
xc: First Bank

## NOTICE OF FORECLOSURE SALE

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE, OR YOUR SPOUSE IS, SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

Notice is hereby given of a public nonjudicial foreclosure sale.

1. _Property to Be Sold_. The property to be sold is described as follows:

   Lot Eleven (11), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume, Page 21-24, Wichita County Plat Records, and being commonly known as 815 Ohio, Wichita Falls, Texas 76301.

2. _Instruments to be Foreclosed_. The instruments to be foreclosed are **(1)** the Deed of Trust ("Deed Of Trust") recorded as Document Number 00109570, Volume 3017, Page 561, Official Public Records, Wichita County, Texas; **(2)** the Modification Of Deed Of Trust ("Modification No. 1 of Deed Of Trust") recorded as Document Number 00011730, Volume 3114, Page 388, Official Public Records, Wichita County, Texas; **(3)** the Modification Of Deed Of Trust ("Modification No. 2 of Deed Of Trust") recorded as Document Number 00009802, Volume 3250, Page 719, Official Public Records, Wichita County, Texas; **(4)** the Modification Of Deed Of Trust ("Modification No. 3 of Deed Of Trust") recorded as Document Number 00009229, Volume 3368, Page 616, Official Public Records, Wichita County, Texas; **(5)** the Modification Of Deed Of Trust ("Modification No. 4 of Deed Of Trust") recorded as Document Number 00010032, Volume 3499, Page 258, Official Public Records, Wichita County, Texas; **(6)** the Modification Of Deed Of Trust ("Modification No. 5 of Deed Of Trust") recorded as Document Number 00010412, Volume 3625, Page 642, Official Public Records, Wichita County, Texas; **(7)** the Modification Of Deed Of Trust

("Modification No. 6 of Deed Of Trust") recorded as Document Number 00011144, Volume 3747, Page 855, Official Public Records, Wichita County, Texas; **(8)** the Modification Of Deed Of Trust ("Modification No. 7 of Deed Of Trust") recorded as Document Number 000011566, Volume 3998, Page 563, Official Public Records, Wichita County, Texas; **(9)** the Modification Of Deed Of Trust ("Modification No. 8 of Deed Of Trust") recorded as Document Number 20199783, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust, as modified, respectively (all of which are hereinafter referred to as the "Security Instruments").

3.      Date, Time, and Place of Sale. The sale is scheduled to be held at the following date, time, and place:

| | |
|---|---|
| Date: | August 6, 2019 |
| Time: | The sale shall begin no earlier than 11:00 A.M. or no later than three hours thereafter. The sale shall be completed by no later than 4:00 P.M. |
| Place: | Wichita County Courthouse, 900 Seventh Street, Wichita Falls, Wichita County, Texas, at the following location: South steps of Courthouse. |

4.      Terms of Sale. The sale will be conducted as a public auction to the highest bidder for cash, subject to the provisions of the Security Instruments, permitting the Beneficiary thereunder to have the bid credited to the Note, as modified, respectively, up to the amount of the unpaid debt secured by the Security Instruments at the time of sale.

Those desiring to purchase the property will need to demonstrate their ability to pay cash on the day the property is sold.

The sale will be made expressly subject to any title matters set forth in the Security

Instruments, but prospective bidders are reminded that by law the sale will necessarily be made subject to all prior matters of record affecting the property, if any, to the extent that they remain in force and effect and have not been subordinated to the Security Instruments. The sale shall not cover any part of the property that has been released of public record from the lien of the Security Instruments. Prospective bidders are strongly urged to examine the applicable property records to determine the nature and extent of such matters, if any.

Pursuant to the Security Instruments, the Beneficiary has the right to direct the Trustee and/or Substitute Trustee to sell the property in one or more parcels and/or to sell all or only part of the property.

Pursuant to section 51.009 of the Texas Property Code, the property will be sold in "as is, where is" condition, without any express or implied warranties, except as to the warranties of title (if any) provided for under the Security Instruments. Prospective bidders are advised to conduct an independent investigation of the nature and physical condition of the property.

Pursuant to section 51.0075 of the Texas Property Code, the Trustee and/or Substitute Trustee reserves the right to set further reasonable conditions for conducting the sale. Any such further conditions shall be announced before bidding is opened for the first sale of the day held by the Trustee or any Substitute Trustee.

5. Type of Sale. The sale is a nonjudicial deed of trust lien foreclosure sale being conducted pursuant to the power of sale granted by the Security Instruments executed by DIANE T. CLAY.

6. Obligations Secured. The Security Instruments provide that they secure the payment of the indebtedness and obligations therein described (collectively, the "Obligations")

including but not limited to the Note dated September 14, 2006, in the original principal amount of $85,000.00, executed by DIANE T. CLAY, and payable to the order of FIRST BANK, said Note being modified on May 14, 2007, May 14, 2008, May 14, 2009, May 14, 2010, May 24, 2011, May 24, 2012, July 1, 2014, and July 1, 2015, respectively ("Note, as modified, respectively"). FIRST BANK is the current owner and holder of the Obligations and is the Beneficiary under the Security Instruments.

As of July 15, 2019, there was owed $112,596.21 on the Note, as modified, respectively, being principal, interest, charges/fees, and attorney's fees in the following amounts: $86,902.40 in principal; $24,495.60 in interest; $398.21 in charges/fees; plus at least $800.00 in attorney's fees; with interest accruing at the rate of $18.1047 per day thereafter until paid in full. Applicable Trustee's fees, ad valorem taxes, property insurance, and other expenses, if any, may be added to the amount owed.

Questions concerning the sale may be directed to the undersigned at (940) 569-2201.

7.   Default and Request to Act. Default has occurred under the Security Instruments, and the Beneficiary has requested me, as Substitute Trustee, to conduct this sale. Notice is given that before the sale the Beneficiary may appoint another person substitute trustee to conduct the sale.

DATED July _15_, 2019.

BILLY T. ELDER, Substitute Trustee
320 E. Third Street
Burkburnett, Texas 76354
(940) 569-2201
(940) 569-5032 (Fax)

THE STATE OF TEXAS    :

                            :

COUNTY OF WICHITA    :

       This instrument was acknowledged before me on the __15__ day of July, 2019, by BILLY T. ELDER, Substitute Trustee.

Notary Public, State of Texas

JUDY MOORE
ID# 8598289
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 1, 2020

Notice Of Foreclosure Sale/jmm
(Foreclosures/2018/First Bank-Clay/BTE)

Page 5 of 5 Pages



**ELDER & BICKINGS**
**320 E. THIRD STREET**
**BURKBURNETT, TEXAS 76354**
Phone: (940) 569-2201

Invoice

| Date | Invoice # |
|------|-----------|
| 12/5/2016 | 203801 |

| Bill To |
|---------|
| Rick Clay |
| #5 Hickory Down |
| Wichita Falls, Texas 76308-2214 |

| Attorney |
|----------|
| ELDER |

| Date | Description | Rate | Hours | Amount |
|------|-------------|------|-------|--------|
| 10/19/2016 | For professional counsel, conferences and services rendered including office conference re amendments to Oil & Gas Lease | 250.00 | 0.6 | 150.00 |
| | | Payments/Credits | | $0.00 |
| | | **Balance Due** | | $150.00 |



EXHIBIT
15



**ELDER & BICKINGS**
320 E. THIRD STREET
BURKBURNETT, TEXAS 76354
Phone: (940) 569-2201
Fax: (940) 569-5032

**Statement**

| Date |
| --- |
| 7/31/2017 |

To:

Rick Clay
#5 Hickory Down
Wichita Falls, Texas 76308-2214

| Date | Transaction | Rate | Quantity | Amount |
| --- | --- | --- | --- | --- |
| 12/31/2015 | Balance forward | | | 0.00 |
| 12/05/2016 | INV #203801. | | | 150.00 |

**Check image:**

DIANE T. CLAY (ATM ACCT.) 2697
4409 TOBAGO ST. PH. 940-691-5787
WICHITA FALLS, TX 76308
32-61
1119 27
DATE 4-5-18
PAY TO THE ORDER OF ELDER & BICKINGS $ 150.00
One hundred Fifty + 00/100 DOLLARS
CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com
PAST DUE!!
MEMO INV. # 203801
⑈111000614⑈ 635656119 2697

PAST DUE

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
| --- | --- | --- | --- | --- | --- |
| 0.00 | 0.00 | 0.00 | 0.00 | 150.00 | $150.00 |



EXHIBIT
16

FILED
In the Office of the
Secretary of State of Texas

FEB 03 2009

Corporations Section

## CERTIFICATE OF FORMATION
## OF
## HOLLIDAY ROAD BURGERS, LLC

I, the undersigned, am a natural person eighteen years of age or older. I am acting in the capacity of organizer of a limited liability company pursuant to the Texas Business Organization Code. I hereby adopt the following Certificate Of Formation for a limited liability company.

### ARTICLE I
### NAME

1.01 The name of the Limited Liability Company ("Limited Liability Company") is **HOLLIDAY ROAD BURGERS, LLC.**

### ARTICLE II
### DURATION

2.01 The period of its duration is perpetual, unless the Limited Liability Company dissolves in accordance with its Company Agreement or by law, or the maximum time period allowed by law, whichever time period is greater.

### ARTICLE III
### PURPOSES

3.01 The Limited Liability Company shall have the powers provided for a domestic entity under the Texas Business Organization Code.

3.02 The purpose for which this Limited Liability Company is organized is to transact any and all lawful business for which limited liability companies may be organized under the laws of Texas, including, but not limited to, the following:

a.   To carry on any business or any other legal or lawful activity allowed by law.

b.   To acquire, own, use, convey, and otherwise dispose of and deal in real or personal property or any interest therein.

c.   To manufacture, buy, sell, and generally deal in goods, wares and merchandise of every class and description.

Certificate Of Formation/jmm                                    Page 1 of 6 Pages


EXHIBIT
17

d.      To buy, rent, sell, manufacture, produce, assemble, distribute, repair, and service any and all products or services in which the Limited Liability Company desires to engage.

e.      To do such other acts as are incidental to the foregoing or desirable in order to accomplish the purpose for which the Limited Liability Company was formed.

f.      To have and exercise all rights and powers that are now or may hereafter be granted to a limited liability company by law.

3.03  The foregoing shall be construed as objects, purposes and powers, and enumeration thereof shall not be held to limit or restrict in any manner the powers hereafter conferred on a limited liability company by the laws of the State of Texas.

3.04 The Limited Liability Company may, in its Company Agreement, confer powers, not in conflict with law, on its managers and members in addition to the foregoing and in addition to the powers and authorities expressly conferred on them by statute.

## ARTICLE IV
### PRINCIPAL PLACE OF BUSINESS

4.01 The address of the Limited Liability Company's principal place of business in this state is: P. O. Box 1800, Wichita Falls, Texas 76307.

## ARTICLE V
### NAME AND ADDRESS OF INITIAL REGISTERED AGENT

5.01 The Limited Liability Company's initial Registered Agent is DIANE T. CLAY.

5.02 The address of the Limited Liability Company's initial Registered Office is: 4409 Tobago, Wichita Falls, Texas 76308.

## ARTICLE VI
### CAPITAL AND ADDITIONAL MEMBERS

6.01 CAPITAL:

Members shall not be required to make contributions to the capital of the Limited Liability Company.

6.02 ADDITIONAL MEMBERS:

Additional members shall be admitted upon the written consent of all the members.

### ARTICLE VII
### VOTING

7.01 Each percentage of membership interest has one (1) vote on each matter on which the membership interest is entitled to vote.

7.02 Cumulative voting is not allowed.

7.03 Each member shall have preemptive rights.

### ARTICLE VIII
### MANAGEMENT

8.01 The Limited Liability Company shall be managed by managers.

8.02 The number of initial Managers is two.

8.03 The names and addresses of the persons, who are to serve as managers until the first annual meeting of the Limited Liability Company's Members or until successors are elected and qualified are:

JOHN D. DAUGHERTY  P. O. Box 1800
          Wichita Falls, Texas 76307

DIANE T. CLAY     4409 Tobago
          Wichita Falls, Texas 76308

### ARTICLE IX
### ORGANIZER

9.01 The name and address of the organizer is:

STEVEN J. BICKINGS  320 E. Third Street
          Burkburnett, Texas 76354

### ARTICLE X
### INITIAL COMPANY AGREEMENT

10.01 The initial Company Agreement will be adopted by the Managers.

10.02 The powers to alter, amend, or repeal the Company Agreement or adopt a new Company Agreement is vested in the Managers, subject to repeal or change by action of the Members.

### ARTICLE XI
### MAJORITY VOTING

11.01 With respect to any matter, other than the election of the Managers, for which the affirmative vote of the holders of a specified portion of the membership interest entitled to vote is required by the Texas Business Organizations Code, and notwithstanding that such Code may require a portion of the membership interest entitled to vote that exceeds that specified in this Article, the act of the Members on that matter shall be the affirmative vote of the holders of a majority of the membership interest entitled to vote on that matter, rather than the affirmative vote otherwise required by such Code.

### ARTICLE XII
### INDEMNIFICATION

12.01 The Limited Liability Company shall indemnify every Manager, and the Manager's heirs, executors and administrators, against expenses actually and reasonably incurred by the Manager, as well as against any amount paid upon a judgment in connection with any action, suit, or other proceeding, civil or criminal, to which the Manager may be made a party by reason of having been a Manager of this Limited Liability Company.

12.02 This indemnification is being given because the managers will be requested by the Limited Liability Company to act for and on behalf of the Limited Liability Company and for the Limited Liability Company's benefit.

12.03 This indemnification shall not be exclusive of other rights to which the managers are entitled.

12.04 The managers shall be entitled to the fullest indemnification allowed by the current law or as the law may be amended hereafter.

12.05 A manager shall be liable to the Limited Liability Company for the following actions:

> a. A breach of his or her duty of loyalty to the Limited Liability Company, or to its members;

b.     An act or omission that was taken in bad faith and which constitutes a breach of the Manager's duty to the Limited Liability Company by an act that is grossly negligent, malicious, or intentional, as those terms are defined at law;

c.     A transaction in which the Manager benefits to the detriment of the Limited Liability Company or its members.

d.     An action for which the Manager is liable at law and for which an indemnification is not allowed.

### ARTICLE XIII
### LIMITED LIABILITY COMPANY ACTIONS

13.01 Any action required by the Texas Business Organizations Code, and any amendments thereto, shall be taken at any annual or special meeting of Members of the Limited Liability Company.

13.02  Any action which may be taken at any annual or special meeting of Members of the Limited Liability Company, may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holder or holders of membership interest having not less than the minimum number of votes that would be necessary to take such action at a meeting at which the holders of all membership interest entitled to vote on the action were present and voted.

13.03 Any such written consent must be dated, signed and delivered in the manner required by, and shall be effective for the period specified by the Texas Business Organizations Code, and any amendments thereto, and the taking of any such action by written consent shall be subject to satisfaction of all applicable requirements of such Code.

13.04 Prompt notice of the taking of any action by Members without a meeting by less than unanimous written consent shall be given to those Members who did not consent in writing to the action.

### ARTICLE XIV
### RESTRICTIONS ON ITS TRANSFERABILITY

14.01 The membership interest of the Limited Liability Company will be subject to restrictions on its transferability as set out in the Company Agreement of the Limited Liability Company, which Company Agreement will be kept with the records of the Limited Liability Company.

14.02 The Limited Liability Company will provide a copy of the Company Agreement without charge to any record holder of a membership interest upon written request addressed to the Limited Liability Company at its principal business office or its registered agent's address.

### ARTICLE XV
### CONTINUITY OF BUSINESS

15.01 All of the remaining members of the Limited Liability Company may agree to continue the business upon the death, retirement, resignation, expulsion, bankruptcy or other withdrawal of a member.

### ARTICLE XVI
### EFFECTIVE DATE

16.01 This document becomes effective when the document is filed by the Secretary of State.

IN WITNESS WHEREOF, I have hereunto set my hand this 2nd day of February, 2009.

STEVEN J. BICKINGS, Organizer

THE STATE OF TEXAS :

COUNTY OF WICHITA :

This instrument was acknowledged before me on the 2 day of February, 2009, by STEVEN J. BICKINGS.

[Seal]
JUDY MOORE
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 1, 2012

Notary Public, State of Texas

Certificate Of Formation/jmm

Page 6 of 6 Pages

# FORECLOSURE SALE DEED
## (Wichita County)

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**Date:**  August 6, 2019

**Deed Of Trust ("Deed Of Trust")**

|  |  |
|---|---|
| **Date:** | September 14, 2006 |
| **Grantor:** | Diane T. Clay |
| **Original Beneficiary:** | First Bank |
| **Current Beneficiary:** | First Bank |
| **Trustee:** | J. Charles White |
| **Substitute Trustee:** | Billy T. Elder, Steven J. Bickings and/or Jonathan R. Ellzey |
| **Recording Information:** | Deed Of Trust duly recorded as Document Number 00109570, Volume 3017, Page 561, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust. |
| **Property:** | Lot Eleven (11), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume, Page 21-24, Wichita County Plat Records, and being commonly known as 815 Ohio, Wichita Falls, Texas 76301. |

**Note Secured By Deed Of Trust ("Note")**

|  |  |
|---|---|
| **Date:** | September 14, 2006 |
| **Maker:** | Diane T. Clay |
| **Principal Amount:** | $85,000.00 |
| **Original Payee:** | First Bank |
| **Current Holder:** | First Bank |

**Modification Of Deed of Trust ("Modification No. 1 of Deed Of Trust")**

|  |  |
|---|---|
| **Date:** | May 14, 2007 |
| **Grantor:** | Diane T. Clay |
| **Trustee:** | J. Charles White |

Foreclosure Sale Deed/jmm
(Foreclosures/2019/First Bank - Diane T. Clay/BTE)

Page 1 of 67 Pages


EXHIBIT
18

**Beneficiary:** First Bank
**Recording information:** Modification Of Deed Of Trust duly recorded as Document Number 00011730, Volume 3114, Page 388, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust.

**Property:** Lot Eleven (11), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume, Page 21-24, Wichita County Plat Records, and being commonly known as 815 Ohio, Wichita Falls, Texas 76301.

### Modification Of Deed of Trust ("Modification No. 2 of Deed Of Trust")

**Date:** May 14, 2008
**Grantor:** Diane T. Clay
**Trustee:** J. Charles White
**Beneficiary:** First Bank
**Recording information:** Modification Of Deed Of Trust duly recorded as Document Number 00009802, Volume 3250, Page 719, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust.

**Property:** Lot Eleven (11), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume, Page 21-24, Wichita County Plat Records.

### Modification Of Deed of Trust ("Modification No. 3 of Deed Of Trust")

**Date:** May 14, 2009
**Grantor:** Diane T. Clay
**Trustee:** J. Charles White
**Beneficiary:** First Bank
**Recording information:** Modification Of Deed Of Trust duly recorded as Document Number 00009229, Volume 3368, Page 616, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust.

**Property:** Lot Eleven (11), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume, Page 21-24, Wichita County Plat Records.

### Modification Of Deed of Trust ("Modification No. 4 of Deed Of Trust")

**Date:** May 24, 2010
**Grantor:** Diane T. Clay
**Trustee:** J. Charles White

**Beneficiary:**   First Bank
**Recording information:**   Modification Of Deed Of Trust duly recorded as Document Number 00010032, Volume 3499, Page 258, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust.

**Property:**   Lot Eleven (11), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume, Page 21-24, Wichita County Plat Records.

## Modification Of Deed of Trust ("Modification No. 5 of Deed Of Trust")

**Date:**   May 24, 2011
**Grantor:**   Diane T. Clay
**Trustee:**   J. Charles White
**Beneficiary:**   First Bank
**Recording information:**   Modification Of Deed Of Trust duly recorded as Document Number 00010412, Volume 3625, Page 642, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust.

**Property:**   Lot Eleven (11), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume, Page 21-24, Wichita County Plat Records.

## Modification Of Deed of Trust ("Modification No. 6 of Deed Of Trust")

**Date:**   May 24, 2012
**Grantor:**   Diane T. Clay
**Trustee:**   J. Charles White
**Beneficiary:**   First Bank
**Recording information:**   Modification Of Deed Of Trust duly recorded as Document Number 00011144, Volume 3747, Page 855, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust.

**Property:**   Lot Eleven (11), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume, Page 21-24, Wichita County Plat Records.

## Modification Of Deed of Trust ("Modification No. 7 of Deed Of Trust")

**Date:**   July 1, 2014
**Grantor:**   Diane T. Clay
**Trustee:**   J. Charles White
**Beneficiary:**   First Bank

**Recording information:** Modification Of Deed Of Trust duly recorded as Document Number 00011566, Volume 3998, Page 563, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust.

**Property:** Lot Eleven (11), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume, Page 21-24, Wichita County Plat Records.

## Modification Of Deed of Trust ("Modification No. 8 of Deed Of Trust")

**Date:** July 1, 2015
**Grantor:** Diane T. Clay
**Trustee:** J. Charles White
**Beneficiary:** First Bank
**Recording information:** Modification Of Deed Of Trust duly recorded as Document Number 20199783, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust.

**Property:** Lot Eleven (11), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume, Page 21-24, Wichita County Plat Records.

## Date Of Sale Of Property (first Tuesday of month):

Tuesday, August 6, 2019

## Time Sale Of Property Began [STATE EXACT TIME OF SALE]:

11:02 A.M.

## Place Of Sale Of Property [INCLUDE COUNTY AND DESIGNATE AREA OF COURTHOUSE WHERE SALE TOOK PLACE]:

Wichita County Courthouse, 900 Seventh Street, Wichita Falls, Wichita County, Texas, at the following location: South steps of Courthouse.

**Buyer:** First Bank

## Buyer's Mailing Address (including county):

4110 Kell Boulevard
Wichita Falls, Texas 76309
Wichita County, Texas

Page 4 of 7 Pages

Foreclosure Sale Deed/jmm
(Foreclosures/2019/First Bank - Diane T. Clay/BTE)

**Amount Of Sale:** One Hundred Twelve Thousand One Hundred Seventy-Four and No/100 Dollars ($112,174.00)

By Deed of Trust and Modification Nos. 1, 2, 3, 4, 5, 6, 7, and 8 of Deed Of Trust, respectively (all of which are hereinafter referred to as the "Security Instruments"), Grantor conveyed to J. CHARLES WHITE, as Trustee, certain property for the purpose of securing and enforcing payment of the indebtedness and obligations therein described (collectively the Obligations), including but not limited to the Note, as modified, respectively, all renewals and extensions of the Note, as modified, respectively, and any and all present and future indebtedness of Grantor to Original Beneficiary and/or Current Beneficiary.

A contingency stated in the Security Instruments as a condition precedent for the appointment of a Substitute Trustee occurred, and BILLY T. ELDER and/or STEVEN J. BICKINGS and/or JONATHAN R. ELLZEY were appointed by an Appointment Of Substitute Trustee executed by FIRST BANK dated July 15, 2019, and duly recorded as Document No. 201910138, of the Official Public Records of Wichita County, Texas.

Default has occurred in the payment of the Obligations when due. The unpaid balance of the principal of the Obligations was accelerated, and default has occurred and is continuing in the payment of the Obligations. FIRST BANK, the Current Holder of the Obligations and the Beneficiary of the Security Instruments requested BILLY T. ELDER, STEVEN J. BICKINGS and/or JONATHAN R. ELLZEY, as Substitute Trustee, to enforce the trust of the Security Instruments.

Pursuant to the requirements of the Security Instruments, and the laws of the State of Texas, written notice of the time, place, date, and terms of the public foreclosure sale of the Property was posted at the Courthouse door of Wichita County, Texas, the county in which the

Property is situated, and a copy of the notice was also filed with the County Clerk of Wichita County, Texas, each notice having been posted and filed for at least twenty-one days preceding the date of the foreclosure sale.

Additionally, written notice of the time, date, place, and terms of the foreclosure sale was served on behalf of the current Beneficiary by certified mail on each debtor who, according to the records of the Current Beneficiary, is obligated to pay any of the Obligations. The certified mailed notices were timely sent by depositing the notices in the United States mail, postage prepaid in proper amount, and addressed to each debtor at the debtor's last known address as shown by the records of the Current Beneficiary at least twenty-one days preceding the date of the foreclosure.

Attached hereto as Exhibit "A" is an affidavit for the posting and mailing of notice of foreclosure sale and conduct of the foreclosure sale.

Attached hereto as Exhibit "B" is a Nonmilitary Affidavit.

In consideration of the premises and of the bid and payment of the amount One Hundred Twelve Thousand One Hundred Seventy-Four and No/100 Dollars ($112,174.00), the highest bid by Buyer, I, as Substitute Trustee, by virtue of the authority conferred on me in the Security Instruments, have GRANTED, SOLD, and CONVEYED only the Property described in the Notice Of Foreclosure Sale attached hereto to Buyer, and Buyer's heirs and assigns, to have and to hold the Property, together with the rights, privileges, and appurtenances thereto belonging unto Buyer, and Buyer's heirs and assigns forever.

I, as the Substitute Trustee, do hereby bind Grantor and Grantor's assigns to warrant and forever defend the Property to Buyer and Buyer's heirs and assigns forever, against the claim or claims of all persons claiming the same or any part thereof.

Foreclosure Sale Deed/jmm
(Foreclosures/2019/First Bank - Diane T. Clay/BTE)

EXECUTED on August 6, 2019.

_____
BILLY T. ELDER, Substitute Trustee

THE STATE OF TEXAS          :
                            :
COUNTY OF WICHITA           :

        This instrument was acknowledged before me on the 6 day of August, 2019, by
BILLY T. ELDER, Substitute Trustee.

**JUDY MOORE**
ID# 8598289
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 1, 2020

_____
Notary Public, State of Texas

AFTER RECORDING RETURN TO:

ELDER & BICKINGS
320 E. THIRD STREET
BURKBURNETT, TX 76354

PREPARED IN THE LAW OFFICES OF:

ELDER & BICKINGS
320 E. THIRD STREET
BURKBURNETT, TX 76354

Foreclosure Sale Deed/jmm
(Foreclosures/2019/First Bank - Diane T. Clay/BTE)

Page 7 of 7 Pages

EXHIBIT "A"
## COMPOSITE AFFIDAVIT FOR SUBSTITUTE TRUSTEE

THE STATE OF TEXAS     :

                            :

COUNTY OF WICHITA    :

         BILLY T. ELDER appeared in person before me today and stated under oath:

         "My name is BILLY T. ELDER.  I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

         "Under the direction of FIRST BANK ("Beneficiary"), the legal holder of the Security Instruments described below and of the obligations secured thereby, I, as the Substitute Trustee appointed to enforce the power of sale contained in **(1)** the Deed of Trust ("Deed Of Trust") dated September 14, 2006, executed by DIANE T. CLAY to J. CHARLES WHITE, Trustee, filed for record as Document Number 00109570, Volume 3017, Page 561, Official Public Records, Wichita County, Texas, said Deed Of Trust securing payment of the Note ("Note") dated September 14, 2006, in the original principal amount of $85,000.00, executed by DIANE T. CLAY and payable to the order of FIRST BANK; **(2)** the Modification Of Deed Of Trust ("Modification No. 1 of Deed Of Trust") dated May 14, 2007, executed by DIANE T. CLAY, and made payable to FIRST BANK, and filed for record as Document Number 00011730, Volume 3114, Page 388, Official Public Records, Wichita County, Texas; **(3)** the Modification Of Deed Of Trust ("Modification No. 2 of Deed Of Trust") dated May 14, 2008, executed by DIANE T. CLAY, and made payable to FIRST BANK, and filed for record as Document Number 00009802, Volume 3250, Page 719, Official Public Records, Wichita County, Texas; **(4)** the Modification Of Deed Of Trust ("Modification No. 3 of Deed Of Trust") dated May 14, 2009, executed by DIANE T. CLAY, and made payable to FIRST BANK, and filed for record as Document Number 00009229, Volume 3368, Page 616, Official Public Records, Wichita County, Texas; **(5)** the Modification Of Deed Of Trust ("Modification No. 4 of Deed Of Trust") dated May 24, 2010, executed by DIANE T. CLAY, and made payable to FIRST BANK, and

filed for record as Document Number 00010032, Volume 3499, Page 258, Official Public Records, Wichita County, Texas; **(6)** the Modification Of Deed Of Trust ("Modification No. 5 of Deed Of Trust") dated May 24, 2011, executed by DIANE T. CLAY, and made payable to FIRST BANK, and filed for record as Document Number 00010412, Volume 3625, Page 642, Official Public Records, Wichita County, Texas; **(7)** the Modification Of Deed Of Trust ("Modification No. 6 of Deed Of Trust") dated May 24, 2012, executed by DIANE T. CLAY, and made payable to FIRST BANK, and filed for record as Document Number 00011144, Volume 3747, Page 855, Official Public Records, Wichita County, Texas; **(8)** the Modification Of Deed Of Trust ("Modification No. 7 of Deed Of Trust") dated July 1, 2014, executed by DIANE T. CLAY, and made payable to FIRST BANK, and filed for record as Document Number 00011566, Volume 3998, Page 563, Official Public Records, Wichita County, Texas; **(9)** the Modification Of Deed Of Trust ("Modification No. 8 of Deed Of Trust") dated July 1, 2015, executed by DIANE T. CLAY, and made payable to FIRST BANK, and filed for record as Document Number 20199783, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust, as modified, respectively ("all of which are hereafter referred to as the Security Instruments"); caused to be posted on July 15, 2019, signed copies of a notice of foreclosure sale, of which a true and correct copy is attached to and incorporated in this affidavit by reference for all purposes, at the officially designated place, located near an entrance door to the county courthouse of Wichita County, 900 Seventh Street, Wichita Falls, Texas, at approximately 4:41 P.M., and filed a duplicate of the notice of foreclosure sale with the county clerk's office of Wichita County, Texas, at 4:41 P.M. that same day.

"I further caused to be served a true and correct copy of the notice of foreclosure sale on the following person on July 15, 2019, by depositing the same, postage prepaid, certified mail, return receipt requested, in a post office or official depository of the U.S. Postal Service. The person served with notices and her address are as follows:

Ms. Diane T. Clay
5 Hickory Downs
Wichita Falls, Texas 76308

"Further, on August 6, 2019, at a time not earlier than the time set forth in the notice

of foreclosure sale and beginning not later than three hours thereafter, I did conduct the foreclosure

sale. The foreclosure sale occurred in the area specified in the notice of foreclosure sale."

EXECUTED on August ___6___, 2019.

_____

BILLY T. ELDER, Substitute Trustee


SUBSCRIBED AND SWORN TO BEFORE ME on the ___6___ day of August, 2019,
by BILLY T. ELDER, Substitute Trustee.

**JUDY MOORE**
ID# 8598289
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 1, 2020

_____

Notary Public, State of Texas


Composite Affidavit/jmm

Page 3 of 3 Pages

2019-245 154 Total Pages: 5

## NOTICE OF FORECLOSURE SALE

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE, OR YOUR SPOUSE IS, SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

Notice is hereby given of a public nonjudicial foreclosure sale.

1.  <u>Property to Be Sold</u>. The property to be sold is described as follows:

> Lot Eleven (11), Block One Hundred Seventy-seven (177), Original Townsite of Wichita Falls, Wichita County, Texas, according to plat of record in Volume, Page 21-24, Wichita County Plat Records, and being commonly known as 815 Ohio, Wichita Falls, Texas 76301.

2.  <u>Instruments to be Foreclosed</u>. The instruments to be foreclosed are **(1)** the

Deed of Trust ("Deed Of Trust") recorded as Document Number 00109570, Volume 3017, Page

561, Official Public Records, Wichita County, Texas; **(2)** the Modification Of Deed Of Trust

("Modification No. 1 of Deed Of Trust") recorded as Document Number 00011730, Volume 3114,

Page 388, Official Public Records, Wichita County, Texas; **(3)** the Modification Of Deed Of Trust

("Modification No. 2 of Deed Of Trust") recorded as Document Number 00009802, Volume 3250,

Page 719, Official Public Records, Wichita County, Texas; **(4)** the Modification Of Deed Of Trust

("Modification No. 3 of Deed Of Trust") recorded as Document Number 00009229, Volume 3368,

Page 616, Official Public Records, Wichita County, Texas; **(5)** the Modification Of Deed Of Trust

("Modification No. 4 of Deed Of Trust") recorded as Document Number 00010032, Volume 3499,

Page 258, Official Public Records, Wichita County, Texas; **(6)** the Modification Of Deed Of Trust

("Modification No. 5 of Deed Of Trust") recorded as Document Number 00010412, Volume 3625,

Page 642, Official Public Records, Wichita County, Texas; **(7)** the Modification Of Deed Of Trust

("Modification No. 6 of Deed Of Trust") recorded as Document Number 00011144, Volume 3747, Page 855, Official Public Records, Wichita County, Texas; **(8)** the Modification Of Deed Of Trust ("Modification No. 7 of Deed Of Trust") recorded as Document Number 000011566, Volume 3998, Page 563, Official Public Records, Wichita County, Texas; **(9)** the Modification Of Deed Of Trust ("Modification No. 8 of Deed Of Trust") recorded as Document Number 20199783, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust, as modified, respectively (all of which are hereinafter referred to as the "Security Instruments").

      3.      Date, Time, and Place of Sale. The sale is scheduled to be held at the following date, time, and place:

|  |  |
|---|---|
| Date: | August 6, 2019 |
| Time: | The sale shall begin no earlier than 11:00 A.M. or no later than three hours thereafter. The sale shall be completed by no later than 4:00 P.M. |
| Place: | Wichita County Courthouse, 900 Seventh Street, Wichita Falls, Wichita County, Texas, at the following location: South steps of Courthouse. |

      4.      Terms of Sale. The sale will be conducted as a public auction to the highest bidder for cash, subject to the provisions of the Security Instruments, permitting the Beneficiary thereunder to have the bid credited to the Note, as modified, respectively, up to the amount of the unpaid debt secured by the Security Instruments at the time of sale.

      Those desiring to purchase the property will need to demonstrate their ability to pay cash on the day the property is sold.

      The sale will be made expressly subject to any title matters set forth in the Security

Instruments, but prospective bidders are reminded that by law the sale will necessarily be made subject to all prior matters of record affecting the property, if any, to the extent that they remain in force and effect and have not been subordinated to the Security Instruments. The sale shall not cover any part of the property that has been released of public record from the lien of the Security Instruments. Prospective bidders are strongly urged to examine the applicable property records to determine the nature and extent of such matters, if any.

Pursuant to the Security Instruments, the Beneficiary has the right to direct the Trustee and/or Substitute Trustee to sell the property in one or more parcels and/or to sell all or only part of the property.

Pursuant to section 51.009 of the Texas Property Code, the property will be sold in "as is, where is" condition, without any express or implied warranties, except as to the warranties of title (if any) provided for under the Security Instruments. Prospective bidders are advised to conduct an independent investigation of the nature and physical condition of the property.

Pursuant to section 51.0075 of the Texas Property Code, the Trustee and/or Substitute Trustee reserves the right to set further reasonable conditions for conducting the sale. Any such further conditions shall be announced before bidding is opened for the first sale of the day held by the Trustee or any Substitute Trustee.

5.    Type of Sale. The sale is a nonjudicial deed of trust lien foreclosure sale being conducted pursuant to the power of sale granted by the Security Instruments executed by DIANE T. CLAY.

6.    Obligations Secured. The Security Instruments provide that they secure the payment of the indebtedness and obligations therein described (collectively, the "Obligations")

including but not limited to the Note dated September 14, 2006, in the original principal amount of $85,000.00, executed by DIANE T. CLAY, and payable to the order of FIRST BANK, said Note being modified on May 14, 2007, May 14, 2008, May 14, 2009, May 14, 2010, May 24, 2011, May 24, 2012, July 1, 2014, and July 1, 2015, respectively ("Note, as modified, respectively"). FIRST BANK is the current owner and holder of the Obligations and is the Beneficiary under the Security Instruments.

As of July 15, 2019, there was owed $112,596.21 on the Note, as modified, respectively, being principal, interest, charges/fees, and attorney's fees in the following amounts: $86,902.40 in principal; $24,495.60 in interest; $398.21 in charges/fees; plus at least $800.00 in attorney's fees; with interest accruing at the rate of $18.1047 per day thereafter until paid in full. Applicable Trustee's fees, ad valorem taxes, property insurance, and other expenses, if any, may be added to the amount owed.

Questions concerning the sale may be directed to the undersigned at (940) 569-2201.

7.    Default and Request to Act. Default has occurred under the Security Instruments, and the Beneficiary has requested me, as Substitute Trustee, to conduct this sale. Notice is given that before the sale the Beneficiary may appoint another person substitute trustee to conduct the sale.

DATED July 15, 2019.

BILLY T. ELDER, Substitute Trustee
320 E. Third Street
Burkburnett, Texas 76354
(940) 569-2201
(940) 569-5032 (Fax)

THE STATE OF TEXAS          :
                           :
COUNTY OF WICHITA           :

    This instrument was acknowledged before me on the __15__ day of July, 2019, by BILLY T. ELDER, Substitute Trustee.

_____
Notary Public, State of Texas

**JUDY MOORE**
ID# 8598289
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 1, 2020

THE STATE OF TEXAS

COUNTY OF WICHITA

I hereby certify that this instrument was RECEIVED on the date and the time stamped hereon by me and was duly RECORDED in the Records of Wichita County, Texas.

2019-245    154
07/15/2019 04:41 PM

Lori Bohannon, County Clerk
Wichita County, Texas

Notice Of Foreclosure Sale/jmm
(Foreclosures/2018/First Bank-Clay/BTE)

Page 5 of 5 Pages

**EXHIBIT "B"**
<u>NONMILITARY AFFIDAVIT</u>

THE STATE OF TEXAS     :
    :
COUNTY OF WICHITA     :

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned, who swore on oath that the following statements are true:

"I, the undersigned, do hereby certify that DIANE T. CLAY, believed by me to be the former owner of the property more particularly described in (1) the Deed of Trust ("Deed Of Trust") recorded as Document Number 00109570, Volume 3017, Page 561, Official Public Records, Wichita County, Texas; **(2)** the Modification Of Deed Of Trust ("Modification No. 1 of Deed Of Trust") recorded as Document Number 00011730, Volume 3114, Page 388, Official Public Records, Wichita County, Texas; **(3)** the Modification Of Deed Of Trust ("Modification No. 2 of Deed Of Trust") recorded as Document Number 00009802, Volume 3250, Page 719, Official Public Records, Wichita County, Texas; **(4)** the Modification Of Deed Of Trust ("Modification No. 3 of Deed Of Trust") recorded as Document Number 00009229, Volume 3368, Page 616, Official Public Records, Wichita County, Texas; **(5)** the Modification Of Deed Of Trust ("Modification No. 4 of Deed Of Trust") recorded as Document Number 00010032, Volume 3499, Page 258, Official Public Records, Wichita County, Texas; **(6)** the Modification Of Deed Of Trust ("Modification No. 5 of Deed Of Trust") recorded as Document Number 00010412, Volume 3625, Page 642, Official Public Records, Wichita County, Texas; **(7)** the Modification Of Deed Of Trust ("Modification No. 6 of Deed Of Trust") recorded as Document Number 00011144, Volume 3747, Page 855, Official Public Records, Wichita County, Texas; **(8)** the Modification Of Deed Of Trust ("Modification No. 7 of Deed Of Trust") recorded as Document Number 000011566, Volume 3998, Page 563, Official Public Records, Wichita County, Texas; **(9)** the Modification Of Deed Of Trust ("Modification No. 8 of Deed Of Trust") recorded as Document Number 20199783, Official Public Records, Wichita

Non-Military Affidavit/jmm

County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust, as modified, respectively (all of which are hereinafter referred to as the "Security Instruments"); was, to the best of my knowledge, alive on August 6, 2019, and was not in the military at the time she executed the above described Security Instruments, and was not, on that date or at any time within the nine (9) months preceding that date, on active duty in any branch of the Armed Services of the United States Of America."

_____
BILLY T. ELDER, Substitute Trustee

SUBSCRIBED AND SWORN TO BEFORE ME on the _6_ day of August, 2019, by BILLY T. ELDER, Substitute Trustee.



JUDY MOORE
ID# 8598289
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 1, 2020

_____
Notary Public, State of Texas

THE STATE OF TEXAS
COUNTY OF WICHITA
I hereby certify that this instrument was FILED on the
date and the time stamped hereon by me and was duly
RECORDED in the Records of Wichita County, Texas.

201911535    1
08/08/2019 10:38 AM

Lori Bohannon
Lori Bohannon, County Clerk
Wichita County, Texas

Non-Military Affidavit/jmm

Page 2 of 2 Page



GREEN DROPOUT APPEARS ON FACE OF DOCUMENT

StateFarm STATE FARM LLOYDS

FIRE
PROXIMITY OFFICE   PC02716.P27F.

CLAIM NO 43-03C5-85R
LOSS DATE 06-15-2019

INSURED  CLAY, RICHARD R & DIANE T

JPMORGAN CHASE BANK, NA. 56-1544/441
COLUMBUS, OH

1 08 916850 J

DATE
11-21-2019
M-M. DD YY-YY

**EXACTLY EIGHTEEN THOUSAND THREE HUNDRED FIVE AND 21/100 DOLLARS

$****18,305.21

Pay to the
Order of: RICHARD R. CLAY & DIANE R. CLAY & FIRST BANK ITS SUCCESSORS ANDOR
ASSIGNS

AUTHORIZED SIGNATURE

AUTHORIZED SIGNATURE

⑈08⑈1791⑈6850⑈   ⑆04⑆41544⑆31⑆   6931911991⑈

SECURED DOCUMENT WATERMARK APPEARS ON BACK, HOLD AT 45° ANGLE FOR VIEWING

VOID IF GREEN COLORED BACKGROUND IS MISSING



tabbles
EXHIBIT
19

Doc 00069260 Bk OR Vol 2798 Pg 120

*Please return to:*
**STEWART TITLE**
2733 MIDWESTERN PRKWY STE 100
WICHITA FALLS TX 76308

Unofficial Copy

———— State of Texas ————                    ———— Space Above This Line For Recording Data ————

# REAL ESTATE DEED OF TRUST
### (With Future Advance Clause)

**Notice of confidentiality rights: if you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the public records: your social security number or your driver's license number.**

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is <u>04-13-2005</u> and the parties, their addresses and tax identification numbers, if required, are as follows:

    GRANTOR: DIANE T. CLAY, INDIVIDUALLY
    4409 TOBAGO
    WICHITA FALLS, TX 76308

    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

    ☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and acknowledgments.

    TRUSTEE: J. CHARLES WHITE
    4110 KELL BLVD
    WICHITA FALLS, TX 76309

    LENDER: FIRST BANK
    ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF TEXAS
    4110 KELL BLVD.
    WICHITA FALLS, TX 76309
    75-0164917

2. **CONVEYANCE.** In consideration of Ten Dollars paid in hand, and for the purpose of securing the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, sells, and conveys unto Trustee, in trust for the benefit of Lender, with power of sale, the following described property:

    LOT 4 BLOCK 2 ASHTON, AN ADDITION TO THE CITY OF BURKBURNETT

The property is located in <u>WICHITA</u> at <u>1116 BISHOP RD</u>
                                         (County)
, <u>BURKBURNETT</u> , Texas <u>76354</u>
    (Address)                (City)                        (Zip Code)

TEXAS - AGRICULTURAL/COMMERCIAL REAL ESTATE SECURITY INSTRUMENT
(NOT FOR FNMA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER OR HOMESTEAD PURPOSES)    *(page 1 of 9)*
Expere © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-TX 9/25/2003

28533 LA

**EXHIBIT 20**

```
Doc        Bk    Vol    Pg
00069260   OR    2798   121
```

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, all water and riparian rights, wells, ditches, reservoirs, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*

   LOAN #3000001224 IN THE NAME OF DIANE T CLAY DATED 4-13-05 IN THE AMOUNT OF 47,700.00.

   B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.
   C. All obligations Grantor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.
   D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

   This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

4. **PAYMENTS.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

5. **WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record and encumbrances expressly approved by Lender in writing.

6. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Grantor receives from the holder.
   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

7. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. To the extent permitted by law, Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

8. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt, less any unearned charges, to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

9. **TRANSFER OF AN INTEREST IN THE GRANTOR.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if:
   A. A beneficial interest in Grantor is sold or transferred.
   B. There is a change in either the identity or number of members of a partnership or similar entity.
   C. There is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity.
   However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Security Instrument.

*(page 2 of 9)*

Express ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-TX 9/25/2003

10. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Grantor makes to Lender the following warranties and representations which shall continue as long as the Secured Debt remains outstanding:
    A. Grantor is duly organized and validly existing in the Grantor's state of incorporation or organization. Grantor is in good standing in all states in which Grantor transacts business. Grantor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Grantor operates.
    B. The execution, delivery and performance of this Security Instrument by Grantor and the obligation evidenced by the Secured Debt are within the power of Grantor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.
    C. Other than previously disclosed in writing to Lender, Grantor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Grantor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

11. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Grantor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Grantor shall not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, peaceably enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

12. **AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice unless otherwise required by law, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance to the extent permitted by law. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument to the extent permitted by law. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

13. **ASSIGNMENT OF LEASES AND RENTS.** Grantor absolutely, unconditionally, irrevocably and immediately assigns, grants and conveys to Lender all the right, title and interest in the following (Property).
    A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to, any extensions, renewals, modifications or replacements (Leases).
    B. Rents, issues and profits, including but not limited to, security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Grantor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).
    In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

Grantor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Lender grants Grantor a revocable license to collect, receive, enjoy and use the Rents as long as Grantor is not in default. Grantor's default automatically and immediately revokes this license. Grantor will not collect in advance any Rents due in future lease periods, unless Grantor first obtains Lender's written consent. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Upon default, Grantor will receive any Rents in trust for Lender and Grantor will not commingle the Rents with any other funds. When Lender so directs, Grantor will endorse and deliver any payments of Rents from the Property to Lender. Grantor agrees that Lender will not be considered to be a mortgagee-in-possession by executing this Security Instrument or by collecting or receiving payments on the Secured Debts, but only may become a mortgagee-in-possession after Grantor's license to collect, receive, enjoy and use the Rents is revoked by Lender or automatically revoked on Grantor's default, and Lender takes actual possession of the Property. Consequently, until Lender takes actual possession of the Property, Lender is not obligated to perform or discharge any obligation of Grantor under the Leases, appear in or defend any action or proceeding relating to the Rents, the Leases or the Property, or be liable in any way for any injury or damage to any person or property sustained in or about the Property. Grantor agrees that this Security Instrument is immediately effective between Grantor and Lender and effective as to third parties on the recording of this Assignment.

*(page 3 of 9)*

Doc          Bk      Vol    Pg
00069260  OR      2798   123

As long as this Assignment is in effect, Grantor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Grantor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Grantor or any party to the Lease defaults or fails to observe any applicable law, Grantor will promptly notify Lender. If Grantor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.

Grantor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Grantor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Grantor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

14. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

15. **DEFAULT.** Grantor will be in default if any of the following occur:
    A. Any party obligated on the Secured Debt fails to make payment when due;
    B. A breach of any term or covenant in this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt;
    C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Grantor or any person or entity obligated on the Secured Debt;
    D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Grantor or any other person or entity obligated on the Secured Debt;
    E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;
    F. A material adverse change in Grantor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or
    G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

16. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.

In the event of default, it shall be the duty of the Trustee, at the request of Lender (which request is hereby conclusively presumed), to invoke power of sale as required by Section 51.002 of the Texas Property Code, as then amended. Trustee shall advertise and sell the Property, as a whole or in separate parcels at public auction to the highest bidder for cash and convey indefeasible title to the Property with covenants of general warranty. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

To the extent permitted by law, a mortgage servicer on behalf of Lender may manage information regarding Grantor's last known address, appoint a trustee or substitute trustee, including, without limitation, a perpetual substitute trustee, and administer all aspects of a foreclosure as authorized in this Security Instrument or by applicable law. Lender may include, without limitation, a book entry system to the extent permitted by law.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys indefeasible title to the purchaser, without warranty or with covenants or special or general warranty from Grantor as determined by the Trustee, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein to the extent permitted by law.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth to the extent permitted by law. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default to the extent permitted by law. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again to the extent permitted by law.

Express® © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-TX  9/25/2003

17. **FORECLOSURE.** In the event a foreclosure under power of sale should be commenced by the Trustee, Lender may at any time before the sale of the Property direct the Trustee to abandon the sale, and may then institute suit for the collection of the Secured Debt and for the foreclosure of the lien of this Security Instrument. It is further agreed that if Lender should institute a suit for the collection of the Secured Debt, and for a foreclosure of the lien of this Security Instrument, that Lender may at any time before the entry of a final judgment in said suit dismiss the same, and require the Trustee to sell the Property in accordance with the provisions of this Security Instrument. Lender, if it is the highest bidder, shall have the right to purchase at any sale of the Property, and to have the amount for which such Property is sold credited on the Secured Debt.

18. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

19. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Grantor represents, warrants and agrees that:
  A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.
  B. Except as previously disclosed and acknowledged in writing to Lender, Grantor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.
  C. Grantor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Grantor will take all necessary remedial action in accordance with Environmental Law.
  D. Except as previously disclosed and acknowledged in writing to Lender, Grantor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Grantor or any tenant of any Environmental Law. Grantor will immediately notify Lender in writing as soon as Grantor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.
  E. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.
  F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.
  G. Grantor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.
  H. Grantor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Grantor and any tenant are in compliance with applicable Environmental Law.
  I. Upon Lender's request and at any time, Grantor agrees, at Grantor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.
  J. Lender has the right, but not the obligation, to perform any of Grantor's obligations under this section at Grantor's expense.
  K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Grantor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Grantor will provide Lender with collateral of at least equal value to the Property secured by this Security Instrument without prejudice to any of Lender's rights under this Security Instrument.
  L. Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

*(page 5 of 9)*



Doc     Bk     Vol     Pg
00069260 OR    2798    125

20. **CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims to the extent permitted by law. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property to the extent permitted by law. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

21. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

22. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender, upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

23. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally responsible regarding the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may, to the extent permitted by law, include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

24. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

25. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

26. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

27. **LEGAL COMPLIANCE.** It is the intention of Grantor and Lender to comply with applicable law. In each and every instance, the rights of Grantor and Lender shall be limited by applicable law (to the extent such laws may not be effectively waived), construed so as to comply with such laws, and the rights of the Grantor and Lender may not be exercised except to the extent permitted by applicable law.

In no event shall any provision of this Security Instrument or the Secured Debt, charge or receipt ever obligate Grantor to pay, or allow Lender to collect, interest or other charges on the Secured Debt at a rate or amount greater than the maximum rate or amount permitted by applicable law. In the event that any law is interpreted so that any contract, charge or receipt violates such law by reason of the acceleration of the Secured Debt or other contingency or even whatsoever, such contract, charge or receipt is hereby automatically adjusted to eliminate such violation. To the extent permitted by law, any amounts paid to Lender in excess of the amounts permitted by applicable law shall, at Lender's option, be applied to reduce amounts owed or owing or refunded to Grantor. If a refund reduces principal, the reduction will be treated as a partial prepayment. To the extent permitted by law, any curative measures made by Lender shall further absolve Lender of any liability regarding the same.

All contracts, charges and receipts between Grantor and Lender are expressly limited so that any loan charges or fees (other than interest) contracted for, charged or received with respect to Grantor, any owner or the spouse of any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Secured Debt shall not exceed, in the aggregate, the highest amount allowed by applicable law.

28. **WAIVERS.** Except to the extent prohibited by law, Grantor waives all appraisement relating to the Property.

29. **U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Security Instrument:
    ☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

Express® © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-TX 9/25/2003

*(page 6 of 9)*

☐ **Fixture Filing.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property.

☐ **Crops; Timber; Minerals; Rents, Issues and Profits.** Grantor grants to Lender a security interest in all crops, timber, and minerals located on the Property as well as all rents, issues, and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").

☐ **Personal Property.** Grantor grants to Lender a security interest in all personal property located on or connected with the Property, including all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Grantor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property (all of which shall also be included in the term "Property"). The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.

☐ **Filing As Financing Statement.** Grantor agrees and acknowledges that this Security Instrument also suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

30. **COLLATERAL PROTECTION INSURANCE NOTICE AND REQUIREMENTS.** Grantor agrees to maintain insurance as follows:

A. Grantor shall keep the Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. Grantor must maintain this insurance in the amounts and for the periods that Lender reasonably requires, but in no event in excess of the replacement cost of the improvements. Grantor may furnish required insurance coverage through an existing policy of insurance that is owned or controlled by Grantor or may obtain required insurance through any insurance company authorized to do business in Texas or an eligible surplus lines insurer to the extent permitted by law, subject to Lender's approval, which shall not be unreasonably withheld. The insurance must name Lender as loss payee under the policy. Grantor must deliver a copy of the insurance and proof of payment to Grantor. Lender's requirements for property insurance may change during the term of the Secured Debt to the extent permitted by law. If Grantor fails to meet any of these requirements, Lender may, to the extent permitted by law, but is not required to, obtain at Grantor's expense insurance that will cover either the replacement cost of the improvements or the amount of the unpaid indebtedness if less, subject to policy limits. To the extent permitted by law, amounts expended together with interest on such amounts and other charges actually incurred shall be due and payable upon demand or as otherwise permitted by applicable law. Grantor acknowledges that the cost of insurance coverage obtained by Lender might be significantly greater than the cost of insurance Grantor could have obtained.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment to the extent permitted by law. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition to the extent permitted by law.

B. Grantor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

C. Grantor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

☐ **Notice Regarding Junior-Lien Transactions.** Required property insurance being sold by or through the Lender in connection with closing is at a premium or rate of charge not fixed or approved by the State Board of Insurance.

31. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Agricultural Property.** Grantor covenants and warrants that the Property will be used principally for agricultural or farming purposes and that Grantor is an individual or entity allowed to own agricultural land as specified by law.

☐ **Separate Assignment.** The Grantor has executed or will execute a separate assignment of leases and rents. If the separate assignment of leases and rents is properly executed and recorded, then the separate assignment will supersede this Security Instrument's "Assignment of Leases and Rents" section.

*(page 7 of 9)*

Doc     Bk     Vol     Pg
00069260 OR     2798    127

☐ **Additional Terms.**



**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

> **THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**
>
> **THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**
>
> The parties' signatures below indicate agreement with the statements contained within this box.

Entity Name: _____

_Diane J. Clay_ ___ 4-13-05 _____
(Signature) **DIANE T. CLAY**        (Date)     (Signature)                    (Date)

_____        _____
(Signature)                (Date)     (Signature)                    (Date)

Express © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-TX 9/25/2003

*(page 8 of 9)*

```
Doc          Bk    Vol    Pg
00069260  OR    2798   128
```

**ACKNOWLEDGMENT:**

STATE OF <u>TEXAS</u>, COUNTY OF <u>Wichita</u> } ss.

(Individual) This instrument was acknowledged before me this <u>13TH</u> day of <u>APRIL, 2005</u>

by <u>DIANE T. CLAY, INDIVIDUALLY</u>

My commission expires:

R. SCHAFFNER
Notary Public
STATE OF TEXAS
My Comm. Exp. 07/03/2005

_____
(Notary Public)

STATE OF _____, COUNTY OF _____ } ss.

(Business or Entity Acknowledgment) This instrument was acknowledged before me this _____ day of _____

by _____

_____ (Title(s))

of _____ (Name of Business or Entity)

a _____ on behalf of the business or entity.

My commission expires:

_____
(Notary Public)

Unofficial Copy

Expere® © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-TX 9/25/2003

Doc             Bk      Vol         Pg.
00069260        OR      2798        129

Filed for Record in:
Wichita County

On: Apr 14,2005 at 01:59P

As a
Recording

Document Number:    00069260

Amount                  30.00

Receipt Number - 33957
By,
Pamela S Gill

STATE OF TEXAS          COUNTY OF WICHITA
I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
Wichita County
Any provision herein which restricts the sale,
rental, or use of the described Real Property
because of color or race is invalid and
unenforceable under federal law.

Apr 14,2005

Lori Bohannon, County Clerk
Wichita County

Doc
00006159
Bk
OR
Vol
3477
Pg
711

After Recording Please Return To:

Loan Services Department, First Bank
4110 Kell Blvd.
Wichita Falls, Texas 76309

_____

Space Above This Line For Recording Data

# MODIFICATION OF DEED OF TRUST

**DATE AND PARTIES.** The date of this Real Estate Modification (Modification) is April 13, 2010. The parties and their addresses are:

**GRANTOR:**
    **DIANE T CLAY**
    4409 Tobago
    Wichita Falls, TX 76308

**TRUSTEE:**
    **J. CHARLES WHITE**
    4110 Kell Blvd.
    Wichita Falls, TX 76309

**LENDER:**
    **FIRST BANK**
    Organized and existing under the laws of Texas
    4110 Kell Blvd.
    Wichita Falls, TX 76309

**1. BACKGROUND.** Grantor and Lender entered into a security instrument dated April 13, 2005 and recorded on April 14, 2005 (Security Instrument). The Security Instrument was recorded in the records of Wichita County, Texas at Volume 2798, Page 120 and covered the following described Property:

Lot Four (4), Block Two (2), Ashton, an Addition to The City of Burkburnett, Wichita County, Texas

The property is located in Wichita County at 1116 Bishop, Burkburnett, Texas 76354.

**2. MODIFICATION.** For value received, Grantor and Lender agree to modify the Security Instrument as provided for in this Modification.

The Security Instrument is modified as follows:

    **A. Secured Debt.** The secured debt provision of the Security Instrument is modified to read:

        **(1) Secured Debts.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

            **(a) Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 3000001083, dated April 13, 2010, from Grantor to Lender, with a loan amount of $45,206.57 and maturing on April 13, 2013.

            **(b) All Debts.** All present and future debts from Grantor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Grantor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities. This Modification will not secure any other debt if Lender fails, with respect to that other debt, to fulfill any necessary requirements or limitations of Sections 19(a), 32, or 35 of Regulation Z.

Wolters Kluwer Financial Services ©1996, 2010 Bankers Systems™


EXHIBIT
21

```
Doc          Bk      Vol     Ps
00006159     OR      3477    712
```

(c) **Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**3. WARRANTY OF TITLE.** Grantor warrants that Grantor continues to be lawfully seized of the estate conveyed by the Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

**4. CONTINUATION OF TERMS.** Except as specifically amended in this Modification, all of the terms of the Security Instrument shall remain in full force and effect.

**SIGNATURES.** By signing, Grantor agrees to the terms and covenants contained in this Modification. Grantor also acknowledges receipt of a copy of this Modification.

> THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND, TO THE EXTENT PERMITTED BY LAW, MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.
> THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

GRANTOR:

_Diane T. Clay_
Diane T Clay
Individually

LENDER:

First Bank

By _____
Damon Whatley, Vice President

**ACKNOWLEDGMENT.**
(Individual)
_State_ OF _Texas_ , _County_ OF _Wichita_ ss.
This instrument was acknowledged before me this _14_ day of _April_ , _2010_ by Diane T Clay .

My commission expires:

_Bonita C. Patterson_
(Notary Public)

BONITA C. PATTERSON
Notary Public, State of Texas
My Commission Expires 05-01-2010

(Lender Acknowledgment)
_State_ OF _Texas_ , _County_ OF _Wichita_ ss.
This instrument was acknowledged before me this _14_ day of _April_ , _2010_ by Damon Whatley Vice President of First Bank, a corporation, on behalf of the corporation.

My commission expires:

_Bonita C. Patterson_
(Notary Public)

BONITA C. PATTERSON
Notary Public, State of Texas
My Commission Expires 05-01-2010

Doc          Bk        Vol        Ps
00006159    OR        3477       713

Filed for Record in:
Wichita County

On: Apr 19,2010 at 08:20A

As a
Recording

Document Number:        00006159

Amount                       20.00

Receipt Number - 119414
By,
Jessie Chavez

STATE OF TEXAS          COUNTY OF WICHITA
    I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
            Wichita County
Any provision herein which restricts the sale,
rental, or use of the described Real Property
because of color or race is invalid and
unenforceable under federal law.

            Apr 19,2010


Lori Bohannon, County Clerk
Wichita County

FIRST BANK
2525 KELL BLVD
STE 100
WICHITA FALLS, TX 76308

```
Doc          Bk    Vol    Pg
00008219     OR    3979   610
```

After Recording Please Return To:

Loan Administration, First Bank

901 Lamar Ave.

Wichita Falls, TX 76301

_____
Space Above This Line For Recording Data

## MODIFICATION OF DEED OF TRUST

**DATE AND PARTIES.** The date of this Real Estate Modification (Modification) is April 1, 2014. The parties and their addresses are:

GRANTOR:
    **DIANE T CLAY**
    No 5 Hickory Downs
    Wichita Falls, TX 76308

TRUSTEE:
    **J. CHARLES WHITE**
    4110 Kell Blvd
    Wichita Falls, TX 76309

LENDER:
    **FIRST BANK**
    Organized and existing under the laws of Texas
    4110 Kell Blvd.
    Wichita Falls, TX 76309

**1. BACKGROUND.** Grantor and Lender entered into a security instrument dated April 13, 2010 and recorded on April 19, 2010 (Security Instrument). The Security Instrument was recorded in the records of Wichita County, Texas at Volume 3477, Page 711 and covered the following described Property:

Lot Four (4), Block Two (2), Ashton, an Addition to the City of Burkburnett, Wichita County, Texas.

The property is located in Wichita County at 1116 Bishop Rd, Burkburnett, Texas 76354.

**2. MODIFICATION.** For value received, Grantor and Lender agree to modify the Security Instrument as provided for in this Modification.

The Security Instrument is modified as follows:

    **A. Secured Debt.** The secured debt provision of the Security Instrument is modified to read:

        **(1) Secured Debts.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

            **(a) Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 3000001083, dated April 13, 2005, from Grantor to Lender, with a modified loan amount of $44,049.65 and maturing on October 1, 2014.

            **(b) All Debts.** All present and future debts from Grantor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security

Diane T Clay
Texas Real Estate Modification
TX/4JGAFFORD00000000000674007N

          Wolters Kluwer Financial Services ©1996, 2014 Bankers Systems™      Page 1

**EXHIBIT**
**22**

Doc 00008219
Bk OR
Vol 3979
Pg 611

interest in the Grantor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities. This Modification will not secure any other debt if Lender fails, with respect to that other debt, to fulfill any necessary requirements or conform to any limitations of Regulations Z and X that are required for loans secured by the Property.

**(c) Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**3. WARRANTY OF TITLE.** Grantor warrants that Grantor continues to be lawfully seized of the estate conveyed by the Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

**4. CONTINUATION OF TERMS.** Except as specifically amended in this Modification, all of the terms of the Security Instrument shall remain in full force and effect.

**SIGNATURES.** By signing, Grantor agrees to the terms and covenants contained in this Modification. Grantor also acknowledges receipt of a copy of this Modification.

---

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND, TO THE EXTENT PERMITTED BY LAW, MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

---

GRANTOR:

Diane T Clay
Individually

LENDER:

First Bank

By
Jeremy Dorzab, Vice President

Doc 00008219   Bk OR   Vol 3979   Pg 612

**ACKNOWLEDGMENT.**

State OF _Texas_ , _County_ OF _Wichita_ ss.

This instrument was acknowledged before me this _30_ day of _May_ .

_2014_ by Diane T Clay .

My commission expires:

_Bonita C. Patterson_
(Notary Public)

BONITA C. PATTERSON
Notary Public, State of Texas
My Commission Expires 05-01-2016

(Lender Acknowledgment)

State OF _Texas_ , _County_ OF _Wichita_ ss.

This instrument was acknowledged before me this _30_ day of _MAY_ .

_2014_ by Jeremy Dorzab -- Vice President of First Bank, a corporation, on behalf of the corporation.

My commission expires:

_Karen Smith_
(Notary Public)

KAREN SMITH
Notary Public, State of Texas
My Commission Expires
September 15, 2015

Doc          Bk        Vol       Pg
00008219     OR        3979      613

Filed for Record in:
Wichita County

On: Jun 09,2014 at 09:26A

As a
Recording

Document Number:        00008219

Amount                  34.00

Receipt Number - 191274
By,
Linda S. Barboza

STATE OF TEXAS          COUNTY OF WICHITA
I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
Wichita County
Any provision herein which restricts the sale,
rental, or use of the described Real Property
because of color or race is invalid and
unenforceable under federal law.

Jun 09,2014

Lori Bohannon, County Clerk
Wichita County

FIRST BANK
4110 KELL BLVD
WICHITA FALLS, TX 76309

20190650    1 Total Pages: 5

# DEED IN LIEU OF FORECLOSURE

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**Date:**  NOVEMBER 26TH, 2018

**Grantor:**  DIANE T. CLAY, Individually

**Grantor's Mailing Address [include county]:**

> 5 Hickory Downs
> Wichita Falls, Texas 76308
> Wichita County, Texas

**Grantee:**  FIRST BANK

**Grantee's Mailing Address [include county]:**

> 2801 Midwestern Parkway, Suite 200
> Wichita Falls, Texas 76308
> Wichita County, Texas

**Original Note ("Note")**

> **Date:**  April 13, 2005
> **Amount:**  $47,700.00
> **Maker:**  Diane T. Clay
> **Original Payee:**  First Bank
> **Current Noteholder:** First Bank
> **Final Maturity Date:** As provided in said Note

**Real Estate Deed Of Trust securing Note ("Real Estate Deed Of Trust")**

> **Date:**  April 13, 2005
> **Grantor:**  Diane T. Clay, Individually
> **Original Beneficiary:**  First Bank
> **Current Beneficiary:**  First Bank

Deed In Lieu Of Foreclosure/jmm
(Foreclosure Deed In Lieu/2018/First Bank - Diane T. Clay BTE)

Page 1 of 4 Pages


EXHIBIT
23

| Trustee: | J. Charles White |
|---|---|
| Recording Information: | Real Estate Deed Of Trust duly recorded in Volume 2798, Page 120, Official Public Records, Wichita County, Texas; Warranty Deed With Vendor's Lien duly recorded in Volume 2798, Page 115, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust. |

## Modification Of Deed Of Trust ("Modification Of Deed Of Trust No. 1")

| Date: | April 13, 2010 |
|---|---|
| Grantor: | Diane T. Clay |
| Lender: | First Bank |

**Current Lender and/or Beneficiary:** First Bank

| Recording Information: | Modification Of Deed Of Trust duly recorded in Volume 3477, Page 711, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust. |
|---|---|

## Modification Of Deed Of Trust ("Modification Of Deed Of Trust No. 2")

| Date: | April 1, 2014 |
|---|---|
| Grantor: | Diane T. Clay |
| Lender: | First Bank |

**Current Lender and/or Beneficiary:** First Bank

| Recording Information: | Modification Of Deed Of Trust duly recorded in Volume 3979, Page 610, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust. |
|---|---|

| Consideration: | TEN AND NO/100 DOLLARS ($10.00) and further the release of Grantor from all liability for the indebtedness and obligations under the Note, as modified, respectively, and the Real Estate Deed Of Trust and/or the Modification Of Deed Of Trust Nos. 1 and 2, respectively (all of which are hereinafter referred to as the "Security Instruments"), except that no release is given of any liens or warranties of title and further except that the indebtedness under the Note, as modified, respectively, is not canceled or extinguished. Grantor assigns to Grantee both the casualty insurance policy on the property and all funds on deposit, if any, for payment of insurance premiums and for payment of taxes. |
|---|---|

**Property (including any improvements):**

Lot Number Four (4), Block Number Two (2), Ashton Addition, Section One, an Addition to the City of Burkburnett, Wichita County, Texas, according to Plat of Record in Volume 8, Page 45, Wichita County Plat Records.

**Exceptions to Conveyance and Warranty:**

The liens described in this deed and the exceptions to conveyance and warranty in the Security Instruments and/or the Note, as modified, respectively.

Grantor, for the Consideration and subject to the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's successors and assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators, successors and assigns, to warrant and forever defend all and singular the Property to Grantee and Grantee's successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Exceptions to Conveyance and Warranty.

**Conveyance in Lieu of Foreclosure.** This deed and the conveyances being made are executed, delivered, and accepted in lieu of foreclosure and will be interpreted and construed the same as a foreclosure of the liens and as an absolute conveyance to Grantee of all right, title, and interest in and to the Property, including specifically but without limitation any equity or rights of redemption of Grantor in or to the Property.

**Continuing Nature of Lien.** Notwithstanding the release of Grantor from all liability for the indebtedness and obligations under the Note, as modified, respectively, and the Security Instruments, the indebtedness has not been canceled or extinguished and the Property continues to be subject to the performance of the obligations under the Security Instruments and/or the Note, as modified, respectively. The Security Instruments and/or the Note, as modified, respectively, liens are not released or relinquished in any manner, and the indebtedness, obligations, and liens will remain valid and continuous and in full force and effect, unless and until the indebtedness, obligations, and liens are expressly released by written instrument executed and delivered by the holder thereof, at the holder's sole discretion.

**Nonmerger.** Neither Grantor nor Grantee intend that there be, and there will never be, a merger of the Security Instruments and/or the Note, as modified, respectively, liens with the fee simple title or any other interest of Grantee in the Property by virtue of this conveyance, and the parties expressly provide that any interest in the Security Instruments and/or the Note, as modified, respectively, liens and fee simple title will be and remain at all times separate and distinct.

**GRANTOR:**

Diane T. Clay
DIANE T. CLAY, Individually

**GRANTEE:**

FIRST BANK

By

Signature
Name Printed: Jim Johnson
Title: EVP

THE STATE OF TEXAS :

COUNTY OF WICHITA :

This instrument was acknowledged before me on the **26** day of **November**, 2018, by DIANE T. CLAY.


BONITA C PATTERSON
Notary Public, State of Texas
Notary I.D. # 185960-5
My Commission Expires 05-01-2022

Bonita C. Patterson
Notary Public, State of Texas

THE STATE OF TEXAS :

COUNTY OF WICHITA :

This instrument was acknowledged before me on the **26th** day of **November**, 2018, by **Jim Johnson**, as **EVP**, of FIRST BANK, on behalf of said bank.


JAMIE GAFFORD
Notary Public, State of Texas
Notary I.D. # 12861508-8
My Commission Expires 05-11-2019

Jamie Gafford
Notary Public, State of Texas

AFTER RECORDING RETURN TO:

ELDER & BICKINGS
320 E. THIRD STREET
BURKBURNETT, TX 76354

PREPARED IN THE LAW OFFICES OF:

ELDER & BICKINGS
320 E. THIRD STREET
BURKBURNETT, TX 76354

Deed In Lieu Of Foreclosure/jmm
(Foreclosure/Deed In Lieu/2018/First Bank - Diane T. Clay/BTE)

Page 4 of 4 Pages

THE STATE OF TEXAS

COUNTY OF WICHITA

I hereby certify that this instrument was FILED on the
date and the time stamped hereon by me and was duly
RECORDED in the Records of Wichita County, Texas.

20190660      1
01/14/2019 01:04 PM

*Lori Bohannon*

Lori Bohannon, County Clerk
Wichita County, Texas

8/26/2020                                    Wichita CAD - Property Details

Wichita CAD

Property Search > 122902 WFT HOME SOLUTIONS INC for       Tax Year:  2020
Year 2020

## Property

### Account
Property ID: 122902
Geographic ID: 5B030040000
Type: Real
Property Use Code:
Property Use Description:

Legal Description: LOT 4 BLK 2 ASHTON
Zoning: SF - 6 - SINGLE FAMILY-6 (6000 SF LOTS)
Agent Code:

### Location
Address: 1116 BISHOP RD
Neighborhood: CLEMENT
Neighborhood CD: 509

Mapsco: 40-54
Map ID:

### Owner
Name: WFT HOME SOLUTIONS INC
Mailing Address: 2812 OLD IOWA PARK RD
WICHITA FALLS, TX 76306

Owner ID: 249989
% Ownership: 100.0000000000%

Exemptions:

| | | |
|---|---|---|
| (+) Improvement Homesite Value: | + | $0 |
| (+) Improvement Non-Homesite Value: | + | $53,496 |
| (+) Land Homesite Value: | + | $0 |
| (+) Land Non-Homesite Value: | + | $7,000 |
| (+) Agricultural Market Valuation: | + | $0 |
| (+) Timber Market Valuation: | + | $0 |

Ag / Timber Use Value
$0
$0

| | | |
|---|---|---|
| (=) Market Value: | = | $60,496 |
| (–) Ag or Timber Use Value Reduction: | – | $0 |
| (=) Appraised Value: | = | $60,496 |
| (–) HS Cap: | – | $0 |
| (=) Assessed Value: | = | $60,496 |

## Taxing Jurisdiction

Owner: WFT HOME SOLUTIONS INC
% Ownership: 100.0000000000%
Total Value: $60,496

| Entity | Description | Tax Rate | Appraised Value | Taxable Value | Estimated Tax |
|---|---|---|---|---|---|
| 03 | BURKBURNETT CITY | 0.725509 | $60,496 | $60,496 | $438.90 |
| 04 | BURKBURNETT ISD | 1.440000 | $60,496 | $60,496 | $871.14 |


EXHIBIT
24

1/3

8/26/2020      Wichita CAD - Property Detail

| | | | | | | |
|---|---|---|---|---|---|---|
| 12 | WICHITA COUNTY | 0.671815 | $60,496 | | $60,496 | $406.42 |
| CAD | WICHITA CAD | 0.000000 | $60,496 | | $60,496 | $0.00 |
| | Total Tax Rate: | 2.837324 | | | | |

| | |
|---|---|
| Taxes w/Current Exemptions: | $1,716.46 |
| Taxes w/o Exemptions: | $1,716.47 |

## Improvement / Building

| Improvement #1: | SINGLE FAMILY | State Code: | A1 | Living Area: | 1198.0 sqft | Value: | $53,496 |
|---|---|---|---|---|---|---|---|

| Type | Description | Class CD | Exterior Wall | Year Built | SQFT |
|---|---|---|---|---|---|
| LV | LIVING AREA | WV - 03 | | 1952 | 1198.0 |
| ORUB | UTILITY BLDG | * - UTL | | | 96.0 |
| PCVP | COVERED PORCH | WV - 03 | | | 16.0 |

## Land

| # | Type | Description | Acres | Sqft | Eff Front | Eff Depth | Market Value | Prod. Value |
|---|---|---|---|---|---|---|---|---|
| 1 | A1 | SINGLE FAMILY | 0.1722 | 7501.03 | 60.00 | 125.00 | $7,000 | $0 |

## Roll Value History

| Year | Improvements | Land Market | Ag Valuation | Appraised | HS Cap | Assessed |
|---|---|---|---|---|---|---|
| 2021 | N/A | N/A | N/A | N/A | N/A | N/A |
| 2020 | $53,496 | $7,000 | 0 | 60,496 | $0 | $60,496 |
| 2019 | $50,412 | $7,000 | 0 | 57,412 | $0 | $57,412 |
| 2018 | $49,059 | $7,000 | 0 | 56,059 | $0 | $56,059 |
| 2017 | $49,144 | $4,608 | 0 | 53,752 | $0 | $53,752 |
| 2016 | $48,120 | $4,608 | 0 | 52,728 | $0 | $52,728 |
| 2015 | $48,358 | $4,608 | 0 | 52,966 | $0 | $52,966 |
| 2014 | $48,358 | $4,608 | 0 | 52,966 | $0 | $52,966 |
| 2013 | $50,256 | $4,608 | 0 | 54,864 | $0 | $54,864 |
| 2012 | $51,827 | $4,608 | 0 | 56,435 | $0 | $56,435 |
| 2011 | $52,350 | $4,608 | 0 | 56,958 | $0 | $56,958 |
| 2010 | $51,775 | $4,608 | 0 | 56,383 | $0 | $56,383 |
| 2009 | $52,293 | $4,608 | 0 | 56,901 | $0 | $56,901 |
| 2008 | $50,752 | $4,608 | 0 | 55,360 | $0 | $55,360 |
| 2007 | $50,472 | $5,530 | 0 | 56,002 | $0 | $56,002 |

## Deed History

| # | Deed Date | Type | Description | Grantor | Grantee | Volume | Page | Deed Number |
|---|---|---|---|---|---|---|---|---|
| 1 | 4/17/2019 | WD | WARRANTY DEED | FIRST BANK | WFT HOME SOLUTIONS INC | | | 20195325 |
| 2 | 4/2/2019 | RP | TRUSTEE DEED, SUB TRUSTEE DEED, REPO | CLAY DIANE T | FIRST BANK | | | 20194882 |
| 3 | 11/26/2018 | DILF | DEED IN LIEU OF FORECLOSURE | CLAY DIANE T | FIRST BANK | | | 20190660 |

Property Tax Information as of 08/26/2020

Amount Due if Paid on:

2/3

8/26/2020

Wichita County Property details

| Year | Taxing Jurisdiction | Taxable Value | Base Tax | Base Taxes Paid | Base Tax Due | Discount / Penalty & Interest | Attorney Fees | Amount Due |
|------|---------------------|---------------|----------|-----------------|--------------|-------------------------------|---------------|------------|

NOTE: Penalty & Interest accrues every month on the unpaid tax and is added to the balance. Attorney fees may also increase your tax liability if not paid by July 1. If you plan to submit payment on a future date, make sure you enter the date and RECALCULATE to obtain the correct total amount due.

20194882 2 Total Pages: 13

# FORECLOSURE SALE DEED
### (Wichita County)

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**Date:** April 2, 2019

**Real Estate Deed Of Trust ("Deed Of Trust")**

| | |
|---|---|
| **Date:** | April 13, 2005 |
| **Grantor:** | Diane T. Clay, Individually |
| **Original Beneficiary:** | First Bank |
| **Current Beneficiary:** | First Bank |
| **Trustee:** | J. Charles White |
| **Substitute Trustee:** | Billy T. Elder, Steven J. Bickings and/or Jonathan R. Ellzey |
| **Recording Information:** | Deed Of Trust duly recorded in Volume 2798, Page 120, Official Public Records, Wichita County, Texas. |
| **Property:** | Lot Number Four (4), Block Number Two (2), Ashton Addition, Section One, an Addition to the City of Burkburnett, Wichita County, Texas, according to Plat of Record in Volume 8, Page 45, Wichita County Plat Records. |

**Note Secured By Deed Of Trust ("Note")**

| | |
|---|---|
| **Date:** | April 13, 2005 |
| **Maker:** | Diane T. Clay |
| **Principal Amount:** | Forty-Seven Thousand Seven Hundred and No/100 Dollars ($47,700.00) |
| **Original Payee:** | First Bank |
| **Current Holder:** | First Bank |

**Modification Of Deed of Trust ("Modification Of Deed Of Trust No. 1")**

| | |
|---|---|
| **Date:** | April 13, 2010 |
| **Grantor:** | Diane T. Clay |
| **Trustee:** | J. Charles White |
| **Beneficiary:** | First Bank |

Foreclosure Sale Deed/jmm
(Foreclosures/2019/First Bank - Diane T Clay/BTE)


EXHIBIT
25

**Recording information:** Modification Of Deed Of Trust duly recorded in Volume 3477, Page 711, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Modification Of Deed Of Trust.

**Property:** Lot Number Four (4), Block Number Two (2), Ashton Addition, Section One, an Addition to the City of Burkburnett, Wichita County, Texas, according to Plat of Record in Volume 8, Page 45, Wichita County Plat Records.

## Modification Of Deed of Trust ("Modification Of Deed Of Trust No. 2")

**Date:** April 1, 2014
**Grantor:** Diane T. Clay
**Trustee:** J. Charles White
**Beneficiary:** First Bank
**Recording information:** Modification Of Deed Of Trust duly recorded in Volume 3979, Page 610, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Modification Of Deed Of Trust.

**Property:** Lot Number Four (4), Block Number Two (2), Ashton Addition, Section One, an Addition to the City of Burkburnett, Wichita County, Texas, according to Plat of Record in Volume 8, Page 45, Wichita County Plat Records.

## Date Of Sale Of Property (first Tuesday of month):

Tuesday, April 2, 2019

## Time Sale Of Property Began [STATE EXACT TIME OF SALE]:

11:52 A.M.

## Place Of Sale Of Property [INCLUDE COUNTY AND DESIGNATE AREA OF COURTHOUSE WHERE SALE TOOK PLACE]:

Wichita County Courthouse, 900 Seventh Street, Wichita Falls, Wichita County, Texas, at the following location: South steps of Courthouse.

**Buyer:** First Bank

**Buyer's Mailing Address (including county):**

Foreclosure Sale Deed/jmm
(Foreclosures/2019/First Bank - Diane T. Clay/BTE)

2801 Midwestern Parkway, Suite 200
Wichita Falls, Texas 76308
Wichita County, Texas

**Amount Of Sale:**     Ten Thousand and No/100 Dollars ($10,000.00)

By Deed of Trust, and Modification Of Deed Of Trust Nos. 1 and 2, respectively (all

of which are hereinafter referred to as the "Security Instruments"), Grantor conveyed to J.

CHARLES WHITE, as Trustee, certain property for the purpose of securing and enforcing payment

of the indebtedness and obligations therein described (collectively the Obligations), including but

not limited to the Note, as modified, respectively, all renewals and extensions of the Note, as

modified, respectively, and any and all present and future indebtedness of Grantor to Original

Beneficiary and/or Current Beneficiary.

A contingency stated in the Security Instruments as a condition precedent for the

appointment of a Substitute Trustee occurred, and BILLY T. ELDER and/or STEVEN J. BICKINGS

and/or JONATHAN R. ELLZEY were appointed by an Appointment Of Substitute Trustee executed

by FIRST BANK dated March 4, 2019, and duly recorded as Document No. 20193324, of the

Official Public Records of Wichita County, Texas.

Default has occurred in the payment of the Obligations when due. The unpaid balance

of the principal of the Obligations was accelerated, and default has occurred and is continuing in the

payment of the Obligations. FIRST BANK, the Current Holder of the Obligations and the

Beneficiary of the Security Instruments requested BILLY T. ELDER, STEVEN J. BICKINGS and/or

JONATHAN R. ELLZEY, as Substitute Trustee, to enforce the trust of the Security Instruments.

Pursuant to the requirements of the Security Instruments, and the laws of the State

of Texas, written notice of the time, place, date, and terms of the public foreclosure sale of the

Property was posted at the Courthouse door of Wichita County, Texas, the county in which the Property is situated, and a copy of the notice was also filed with the County Clerk of Wichita County, Texas, each notice having been posted and filed for at least twenty-one days preceding the date of the foreclosure sale.

Additionally, written notice of the time, date, place, and terms of the foreclosure sale was served on behalf of the current Beneficiary by certified mail on each debtor who, according to the records of the Current Beneficiary, is obligated to pay any of the Obligations. The certified mailed notices were timely sent by depositing the notices in the United States mail, postage prepaid in proper amount, and addressed to each debtor at the debtor's last known address as shown by the records of the Current Beneficiary at least twenty-one days preceding the date of the foreclosure.

Attached hereto as Exhibit "A" is an affidavit for the posting and mailing of notice of foreclosure sale and conduct of the foreclosure sale.

Attached hereto as Exhibit "B" is a Nonmilitary Affidavit.

In consideration of the premises and of the bid and payment of the amount of Ten Thousand and No/100 Dollars ($10,000.00), the highest bid by Buyer, I, as Substitute Trustee, by virtue of the authority conferred on me in the Security Instrument, have GRANTED, SOLD, and CONVEYED only the Property described in the Notice Of Foreclosure Sale attached hereto to Buyer, and Buyer's heirs and assigns, to have and to hold the Property, together with the rights, privileges, and appurtenances thereto belonging unto Buyer, and Buyer's heirs and assigns forever.

I, as the Substitute Trustee, do hereby bind Grantor and Grantor's assigns to warrant and forever defend the Property to Buyer and Buyer's heirs and assigns forever, against the claim or claims of all persons claiming the same or any part thereof.

EXECUTED on April __3__, 2019.

_____
BILLY T. ELDER, Substitute Trustee

THE STATE OF TEXAS     :
                              :
COUNTY OF WICHITA    :

     This instrument was acknowledged before me on the __3__ day of April, 2019, by BILLY T. ELDER, Substitute Trustee.



JUDY MOORE
ID# 8598289
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 1, 2020

_____
Notary Public, State of Texas

AFTER RECORDING RETURN TO:

ELDER & BICKINGS
320 E. THIRD STREET
BURKBURNETT, TX 76354

PREPARED IN THE LAW OFFICES OF:

ELDER & BICKINGS
320 E. THIRD STREET
BURKBURNETT, TX 76354

Foreclosure Sale Deed/jmm
(Foreclosures/2019/First Bank - Diane T  Clay/BTE)

Page 5 of 5 Pages

EXHIBIT "A"

COMPOSITE AFFIDAVIT FOR SUBSTITUTE TRUSTEE

THE STATE OF TEXAS   :

                     :

COUNTY OF WICHITA   :

       BILLY T. ELDER appeared in person before me today and stated under oath:

       "My name is BILLY T. ELDER. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

       "Under the direction of FIRST BANK ("Beneficiary"), the legal holder of the Security Instruments described below and of the obligations secured thereby, I, as the Substitute Trustee appointed to enforce the power of sale contained in (1) the Real Estate Deed of Trust ("Deed Of Trust") dated April 13, 2005, executed by DIANE T. CLAY, Individually, to J. CHARLES WHITE, Trustee, filed for record in Volume 2798, Page 120, Official Public Records, Wichita County, Texas, said Deed Of Trust securing payment of the Note ("Note") dated April 13, 2005, in the original principal amount of $47,700.00, executed by DIANE T. CLAY and payable to the order of FIRST BANK; (2) the Modification Of Deed Of Trust ("Modification Of Deed Of Trust No. 1") dated April 13, 2010, executed by DIANE T. CLAY, and made payable to FIRST BANK, and filed for record in Volume 3477, Page 711, Official Public Records, Wichita County, Texas; and (3) the Modification Of Deed Of Trust ("Modification Of Deed Of Trust No. 2") dated April 1, 2014, executed by DIANE T. CLAY, and made payable to FIRST BANK, and filed for record in Volume 3979, Page 610, Official Public Records, Wichita County, Texas ("all of which are hereafter referred to as the Security Instruments"); caused to be posted on March 8, 2019, signed copies of a notice of foreclosure sale, of which a true and correct copy is attached to and incorporated in this affidavit by reference for all purposes, at the officially designated place, located near an entrance door to the county courthouse of Wichita County, 900 Seventh Street, Wichita Falls, Texas, at approximately

Composite Affidavit/jmm

Page 1 of 2 Pages

12:52 P.M., and filed a duplicate of the notice of foreclosure sale with the county clerk's office of Wichita County, Texas, at 12:41 P.M. that same day.

"I further caused to be served a true and correct copy of the notice of foreclosure sale on the following person on March 4, 2019, by depositing the same, postage prepaid, certified mail, return receipt requested, in a post office or official depository of the U.S. Postal Service. The person served with notices and her address are as follows:

> Ms. Diane T. Clay
> 5 Hickory Downs
> Wichita Falls, Texas 76308

"Further, on April 2, 2019, at a time not earlier than the time set forth in the notice of foreclosure sale and beginning not later than three hours thereafter, I did conduct the foreclosure sale. The foreclosure sale occurred in the area specified in the notice of foreclosure sale."

EXECUTED on April ___3___, 2019.

_____
BILLY T. ELDER, Substitute Trustee

SUBSCRIBED AND SWORN TO BEFORE ME on the ___3___ day of April, 2019, by BILLY T. ELDER, Substitute Trustee.

_____
Notary Public, State of Texas

JUDY MOORE
ID# 8598239
NOTARY PUBLIC STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 1, 2020

Composite Affidavit/jmm

Page 2 of 2 Pages

2019-089   154 Total Pages: 4

## NOTICE OF FORECLOSURE SALE

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES.  IF YOU ARE, OR YOUR SPOUSE IS, SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

Notice is hereby given of a public nonjudicial foreclosure sale.

1.  <u>Property to Be Sold</u>. The property to be sold is described as follows:

Lot Number Four (4), Block Number Two (2), Ashton Addition, Section One, an Addition  to the City of Burkburnett, Wichita County, Texas, according to Plat of Record in Volume 8, Page 45, Wichita County Plat Records.

2.  <u>Instruments to be Foreclosed</u>. The instruments to be foreclosed are **(1)** the Real Estate Deed of Trust ("Deed Of Trust") recorded in Volume 2798, Page 120, Official Public Records, Wichita County, Texas; **(2)** the Modification Of Deed Of Trust ("Modification Of Deed Of Trust No. 1") recorded in Volume 3477, Page 711, Official Public Records, Wichita County, Texas; and **(3)** the Modification Of Deed Of Trust ("Modification Of Deed Of Trust No. 2") recorded in Volume 3979, Page 610, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust, as renewed, modified, and extended, respectively (all of which are hereinafter referred to as the "Security Instruments").

3.  Date, Time, and Place of Sale. The sale is scheduled to be held at the following date, time, and place:

| | |
|---|---|
| Date: | April 2, 2019 |
| Time: | The sale shall begin no earlier than 11:00 A.M. or no later than three hours thereafter.  The sale shall be completed by no later than 4:00 P.M. |

Place:      Wichita County Courthouse, 900 Seventh Street, Wichita Falls, Wichita County, Texas, at the following location: South steps of Courthouse.

4.     <u>Terms of Sale</u>. The sale will be conducted as a public auction to the highest bidder for cash, subject to the provisions of the Security Instruments, permitting the Beneficiary thereunder to have the bid credited to the Note, as renewed, extended and modified, respectively, up to the amount of the unpaid debt secured by the Security Instruments at the time of sale.

Those desiring to purchase the property will need to demonstrate their ability to pay cash on the day the property is sold.

The sale will be made expressly subject to any title matters set forth in the Security Instruments, but prospective bidders are reminded that by law the sale will necessarily be made subject to all prior matters of record affecting the property, if any, to the extent that they remain in force and effect and have not been subordinated to the Security Instruments. The sale shall not cover any part of the property that has been released of public record from the lien of the Security Instruments. Prospective bidders are strongly urged to examine the applicable property records to determine the nature and extent of such matters, if any.

Pursuant to the Security Instruments, the Beneficiary has the right to direct the Trustee and/or Substitute Trustee to sell the property in one or more parcels and/or to sell all or only part of the property.

Pursuant to section 51.009 of the Texas Property Code, the property will be sold in "as is, where is" condition, without any express or implied warranties, except as to the warranties of title (if any) provided for under the Security Instruments. Prospective bidders are advised to conduct an independent investigation of the nature and physical condition of the property.

Pursuant to section 51.0075 of the Texas Property Code, the Trustee and/or Substitute Trustee reserves the right to set further reasonable conditions for conducting the sale. Any such further conditions shall be announced before bidding is opened for the first sale of the day held by the Trustee or any Substitute Trustee.

5.   Type of Sale. The sale is a nonjudicial deed of trust lien foreclosure sale being conducted pursuant to the power of sale granted by the Security Instruments executed by DIANE T. CLAY.

6.   Obligations Secured. The Security Instruments provide that they secure the payment of the indebtedness and obligations therein described (collectively, the "Obligations") including but not limited to the Note dated April 13, 2005, in the original principal amount of $47,700.00, executed by DIANE T. CLAY, and payable to the order of FIRST BANK, said Note being renewed, extended and modified on April 13, 2010, and on April 1, 2014, respectively ("Note, as renewed, modified and extended"). FIRST BANK is the current owner and holder of the Obligations and is the Beneficiary under the Security Instruments.

As of February 15, 2019, there was owed $19,392.83 on the Note, as renewed, modified, and extended, respectively, being principal, interest, charges/fees, and attorney's fees in the following amounts: $3,456.05 in principal; $14,865.23 in interest; $271.55 in charges/fees; plus at least $800.00 in attorney's fees; with interest accruing at the rate of $.6960 per day thereafter until paid in full. Applicable Trustee's fees, ad valorem taxes, property insurance, and other expenses, if any, may be added to the amount owed.

Questions concerning the sale may be directed to the undersigned at (940) 569-2201.

7.  <u>Default and Request to Act</u>. Default has occurred under the Security Instruments, and the Beneficiary has requested me, as Substitute Trustee, to conduct this sale. Notice is given that before the sale the Beneficiary may appoint another person substitute trustee to conduct the sale.

DATED March 4, 2019.

_____
BILLY T. ELDER, Substitute Trustee
320 E. Third Street
Burkburnett, Texas 76354
(940) 569-2201
(940) 569-5032 (Fax)

THE STATE OF TEXAS      :
                        :
COUNTY OF WICHITA       :

This instrument was acknowledged before me on the 4 day of March, 2019, by BILLY T. ELDER, Substitute Trustee.

_____
Notary Public, State of Texas

JUDY MOORE
ID# 8598289
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 1, 2020

THE STATE OF TEXAS
COUNTY OF WICHITA
I hereby certify that this instrument was RECEIVED on the date and the time stamped hereon by me and was duly RECORDED in the Records of Wichita County, Texas
2019-089    154
03/08/2019 12 41 PM

Lori Bohannon, County Clerk
Wichita County, Texas

Notice Of Foreclosure Sale/jmm
(Foreclosures/2018/First Bank-Clay/BTE)

Page 4 of 4 Pages

**EXHIBIT "B"**

<u>NONMILITARY AFFIDAVIT</u>

THE STATE OF TEXAS        :

                          :

COUNTY OF WICHITA         :

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned, who swore on oath that the following statements are true:

"I, the undersigned, do hereby certify that DIANE T. CLAY, believed by me to be the former owner of the property more particularly described in (1) the Real Estate Deed of Trust ("Deed Of Trust") recorded in Volume 2798, Page 120, Official Public Records, Wichita County, Texas; (2) the Modification Of Deed Of Trust ("Modification Of Deed Of Trust No. 1") recorded in Volume 3477, Page 711, Official Public Records, Wichita County, Texas; and (3) the Modification Of Deed Of Trust ("Modification Of Deed Of Trust No. 2") recorded in Volume 3979, Page 610, Official Public Records, Wichita County, Texas (all of which are hereinafter referred to as the "Security Instruments"); was, to the best of my knowledge, alive on April 2, 2019, and was not in the military at the time she executed the above described Security Instruments, and was not, on that date or at any time within the nine (9) months preceding that date, on active duty in any branch of the Armed Services of the United States Of America."

BILLY T. ELDER, Substitute Trustee

SUBSCRIBED AND SWORN TO BEFORE ME on the ___3___ day of April, 2019, by BILLY T. ELDER, Substitute Trustee.



JUDY MOORE
ID# 8598289
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 1, 2020

Notary Public, State of Texas

Non-Military Affidavit/jmm

Page 1 of 1 Page



THE STATE OF TEXAS

COUNTY OF WICHITA

I hereby certify that this instrument was FILED on the
date and the time stamped hereon by me and was duly
RECORDED in the Records of Wichita County, Texas.

20194882    2—
04/08/2019  03:58 PM

Lori Bohannon, County Clerk
Wichita County, Texas

19102352Z

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

### WARRANTY DEED WITH VENDOR'S LIEN
Conforms to State Bar of Texas Form

**Date:** April 17, 2019

**Grantor:** FIRST BANK

**Grantor's Mailing Address (including county):**

2801 Midwestern Pkwy Ste 200
Wichita Falls TX 76308

**Grantee:** WFT HOME SOLUTIONS, INC., a Texas corporation

**Grantee's Mailing Address (including county):**

1709 Seymour Hwy.
Wichita Falls, Wichita County, Texas 76301

**Consideration:**

Ten Dollars and other valuable consideration to the undersigned paid by the Grantee herein named, the receipt of which is hereby acknowledged, and the further consideration of the execution and delivery by Grantee of Grantee's one certain promissory note of even date herewith, in the principal sum of FORTY THOUSAND AND NO/100 DOLLARS ($40,000.00), payable to the order of FIRST BANK, and bearing interest as therein provided; containing the usual clauses providing for acceleration of maturity and for attorney's fees, the payment of which note is secured by a vendor's lien herein retained, and is additionally secured by a Deed of Trust of even date herewith to _J. Charles White_, Trustee.

**Property (including any improvements):**

LOT NUMBER FOUR (4), BLOCK NUMBER TWO (2), ASHTON ADDITION, SECTION ONE, AN ADDITION TO THE CITY OF BURKBURNETT, WICHITA COUNTY, TEXAS, ACCORDING TO PLAT OF RECORD IN VOLUME 8, PAGE 45, WICHITA COUNTY PLAT RECORDS.

Guarantee/FirstBank/2019/FirstBank/WFTHomeSolutions.Inc./kmm

Page 1 of 3 Pages


EXHIBIT
26

**Reservations:** None

**Exceptions to title:**

Liens described as part of the Consideration and any other liens described in this deed as being either assumed or subject to which title is taken; validly existing easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded and validly existing restrictions, reservations, covenants, conditions, and validly existing restrictive covenants common to the platted subdivision in which the Property is located; oil and gas leases, mineral interests and water interests outstanding in persons other than Grantor, and other instruments, other than conveyances of the surface fee estate, that affect the Property; validly existing rights of adjoining owners in any walls and fences situated on a common boundary; any discrepancies, conflicts, or shortages in area or boundary lines; any encroachments or overlapping of improvements; all rights, obligations, and taxes for 2019, which Grantee assumes and agrees to pay, and subsequent assessments for that and prior years due to change in land usage, ownership, or both, the payment of which Grantee assumes.

Grantor, for the consideration and subject to the reservations from, and exceptions to conveyance and warranty, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators, and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to warranty.

The vendor's lien against and superior title to the property are retained until each note described is fully paid according to its terms, at which time this deed shall become absolute.

FIRST BANK, at Grantee's request, has paid in cash to Grantor that portion of the purchase price of the Property that is evidenced by the Note described. The vendor's lien and the superior title to the Property are retained for the benefit of FIRST BANK and are transferred to FIRST BANK, without recourse on Grantor.

When the context requires, singular nouns and pronouns include the plurals.

FIRST BANK

By _____

Name: ___Tim Johnson___
Title: ___EVP___

THE STATE OF TEXAS

COUNTY OF WICHITA

This instrument was acknowledged before me on April 17, 2019, by
Jim Johnson, EVP of FIRST BANK, on behalf of said bank.

KOLTER LUKERT
Notary Public, State of Texas
Notary ID 12557417-2
My Commission Exp. 01-19-2022

Notary Public, State of Texas

**AFTER RECORDING RETURN TO:**

WFT Home Solutions, Inc.
1709 Seymour Hwy.
Wichita Falls, Texas 76301

**PREPARED BY THE LAW OFFICE OF:**

Elder & Bickings
3415 McNiel Avenue, Suite 102-C
Wichita Falls, Texas 76308

Guarantee/FirstBank/2019/FirstBank/WFTHomeSolutions,Inc./kmm

Page 3 of 3 Pages

**THE STATE OF TEXAS**
**COUNTY OF WICHITA**

I hearby certify that this instrument was FILED on the
date and time stamped heron by me and was duly
RECORDED in the Records of Wichita County, Texas
20195325
04/17/2019 12:04:55 PM

Lori Bohannon, County Clerk
Wichita, Texas

20194882 2 Total Pages: 13

## FORECLOSURE SALE DEED
### (Wichita County)

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

**Date:** April 2, 2019

**Real Estate Deed Of Trust ("Deed Of Trust")**

| | |
|---|---|
| **Date:** | April 13, 2005 |
| **Grantor:** | Diane T. Clay, Individually |
| **Original Beneficiary:** | First Bank |
| **Current Beneficiary:** | First Bank |
| **Trustee:** | J. Charles White |
| **Substitute Trustee:** | Billy T. Elder, Steven J. Bickings and/or Jonathan R. Ellzey |
| **Recording Information:** | Deed Of Trust duly recorded in Volume 2798, Page 120, Official Public Records, Wichita County, Texas. |
| **Property:** | Lot Number Four (4), Block Number Two (2), Ashton Addition, Section One, an Addition to the City of Burkburnett, Wichita County, Texas, according to Plat of Record in Volume 8, Page 45, Wichita County Plat Records. |

**Note Secured By Deed Of Trust ("Note")**

| | |
|---|---|
| **Date:** | April 13, 2005 |
| **Maker:** | Diane T. Clay |
| **Principal Amount:** | Forty-Seven Thousand Seven Hundred and No/100 Dollars ($47,700.00) |
| **Original Payee:** | First Bank |
| **Current Holder:** | First Bank |

**Modification Of Deed Of Trust ("Modification Of Deed Of Trust No. 1")**

| | |
|---|---|
| **Date:** | April 13, 2010 |
| **Grantor:** | Diane T. Clay |
| **Trustee:** | J. Charles White |
| **Beneficiary:** | First Bank |

Foreclosure Sale Deed/jmm
(Foreclosures/2019/First Bank - Diane T. Clay/BTE)

Page 1 of 5 Pages

**Recording information:** Modification Of Deed Of Trust duly recorded in Volume 3477, Page 711, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Modification Of Deed Of Trust.

**Property:** Lot Number Four (4), Block Number Two (2), Ashton Addition, Section One, an Addition to the City of Burkburnett, Wichita County, Texas, according to Plat of Record in Volume 8, Page 45, Wichita County Plat Records.

## Modification Of Deed of Trust ("Modification Of Deed Of Trust No. 2")

**Date:** April 1, 2014
**Grantor:** Diane T. Clay
**Trustee:** J. Charles White
**Beneficiary:** First Bank
**Recording information:** Modification Of Deed Of Trust duly recorded in Volume 3979, Page 610, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Modification Of Deed Of Trust.

**Property:** Lot Number Four (4), Block Number Two (2), Ashton Addition, Section One, an Addition to the City of Burkburnett, Wichita County, Texas, according to Plat of Record in Volume 8, Page 45, Wichita County Plat Records.

## Date Of Sale Of Property (first Tuesday of month):

Tuesday, April 2, 2019

## Time Sale Of Property Began [STATE EXACT TIME OF SALE]:

11:52 A.M.

## Place Of Sale Of Property [INCLUDE COUNTY AND DESIGNATE AREA OF COURTHOUSE WHERE SALE TOOK PLACE]:

Wichita County Courthouse, 900 Seventh Street, Wichita Falls, Wichita County, Texas, at the following location: South steps of Courthouse.

**Buyer:** First Bank

**Buyer's Mailing Address (including county):**

Foreclosure Sale Deed/jmm
(Foreclosures/2019/First Bank - Diane T. Clay/BTE)

Page 2 of 5 Pages

2801 Midwestern Parkway, Suite 200
Wichita Falls, Texas 76308
Wichita County, Texas

**Amount Of Sale:**    Ten Thousand and No/100 Dollars ($10,000.00)

By Deed of Trust, and Modification Of Deed Of Trust Nos. 1 and 2 (respectively (all

of which are hereinafter referred to as the "Security Instruments"), Grantor conveyed to J.

CHARLES WHITE, as Trustee, certain property for the purpose of securing and enforcing payment

of the indebtedness and obligations therein described (collectively the Obligations), including but

not limited to the Note, as modified, respectively, all renewals and extensions of the Note, as

modified, respectively, and any and all present and future indebtedness of Grantor to Original

Beneficiary and/or Current Beneficiary.

A contingency stated in the Security Instruments as a condition precedent for the

appointment of a Substitute Trustee occurred, and BILLY T. ELDER and/or STEVEN J. BICKINGS

and/or JONATHAN R. ELLZEY were appointed by an Appointment Of Substitute Trustee executed

by FIRST BANK dated March 4, 2019, and duly recorded as Document No. 20193324, of the

Official Public Records of Wichita County, Texas.

Default has occurred in the payment of the Obligations when due. The unpaid balance

of the principal of the Obligations was accelerated, and default has occurred and is continuing in the

payment of the Obligations. FIRST BANK, the Current Holder of the Obligations and the

Beneficiary of the Security Instruments requested BILLY T. ELDER, STEVEN J. BICKINGS and/or

JONATHAN R. ELLZEY, as Substitute Trustee, to enforce the trust of the Security Instruments.

Pursuant to the requirements of the Security Instruments, and the laws of the State

of Texas, written notice of the time, place, date, and terms of the public foreclosure sale of the

Property was posted at the Courthouse door of Wichita County, Texas, the county in which the Property is situated, and a copy of the notice was also filed with the County Clerk of Wichita County, Texas, each notice having been posted and filed for at least twenty-one days preceding the date of the foreclosure sale.

Additionally, written notice of the time, date, place, and terms of the foreclosure sale was served on behalf of the current Beneficiary by certified mail on each debtor who, according to the records of the Current Beneficiary, is obligated to pay any of the Obligations. The certified mailed notices were timely sent by depositing the notices in the United States mail, postage prepaid in proper amount, and addressed to each debtor at the debtor's last known address as shown by the records of the Current Beneficiary at least twenty-one days preceding the date of the foreclosure.

Attached hereto as Exhibit "A" is an affidavit for the posting and mailing of notice of foreclosure sale and conduct of the foreclosure sale.

Attached hereto as Exhibit "B" is a Nonmilitary Affidavit.

In consideration of the premises and of the bid and payment of the amount of Ten Thousand and No/100 Dollars ($10,000.00), the highest bid by Buyer, I, as Substitute Trustee, by virtue of the authority conferred on me in the Security Instrument, have GRANTED, SOLD, and CONVEYED only the Property described in the Notice Of Foreclosure Sale attached hereto to Buyer, and Buyer's heirs and assigns, to have and to hold the Property, together with the rights, privileges, and appurtenances thereto belonging unto Buyer, and Buyer's heirs and assigns forever.

I, as the Substitute Trustee, do hereby bind Grantor and Grantor's assigns to warrant and forever defend the Property to Buyer and Buyer's heirs and assigns forever, against the claim or claims of all persons claiming the same or any part thereof.

Foreclosure Sale Deed/jmm
(Foreclosure/2019/First Bank - Diane T. Clay/BTE)

Page 4 of 5 Pages

EXECUTED on April _3_, 2019.



BILLY T. ELDER, Substitute Trustee

THE STATE OF TEXAS  :
:
COUNTY OF WICHITA  :

This instrument was acknowledged before me on the _3_ day of April, 2019, by
BILLY T. ELDER, Substitute Trustee.

JUDY MOORE
ID# 8598289
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 1, 2020

Notary Public, State of Texas

AFTER RECORDING RETURN TO:

ELDER & BICKINGS
320 E. THIRD STREET
BURKBURNETT, TX 76354

PREPARED IN THE LAW OFFICES OF:

ELDER & BICKINGS
320 E. THIRD STREET
BURKBURNETT, TX 76354

Foreclosure Sale Deed/jmm
(Foreclosures/2019/First Bank - Diane T. Clay/BTE)

Page 5 of 5 Pages

EXHIBIT "A"
## COMPOSITE AFFIDAVIT FOR SUBSTITUTE TRUSTEE

THE STATE OF TEXAS    :

    :

COUNTY OF WICHITA    :

    BILLY T. ELDER appeared in person before me today and stated under oath:

    "My name is BILLY T. ELDER. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

    "Under the direction of FIRST BANK ("Beneficiary"), the legal holder of the Security Instruments described below and of the obligations secured thereby, I, as the Substitute Trustee appointed to enforce the power of sale contained in (1) the Real Estate Deed of Trust ("Deed Of Trust") dated April 13, 2005, executed by DIANE T. CLAY, Individually, to J. CHARLES WHITE, Trustee, filed for record in Volume 2798, Page 120, Official Public Records, Wichita County, Texas, said Deed Of Trust securing payment of the Note ("Note") dated April 13, 2005, in the original principal amount of $47,700.00, executed by DIANE T. CLAY and payable to the order of FIRST BANK; (2) the Modification Of Deed Of Trust ("Modification Of Deed Of Trust No. 1") dated April 13, 2010, executed by DIANE T. CLAY, and made payable to FIRST BANK, and filed for record in Volume 3477, Page 711, Official Public Records, Wichita County, Texas; and (3) the Modification Of Deed Of Trust ("Modification Of Deed Of Trust No. 2") dated April 1, 2014, executed by DIANE T. CLAY, and made payable to FIRST BANK, and filed for record in Volume 3979, Page 610, Official Public Records, Wichita County, Texas ("all of which are hereafter referred to as the Security Instruments"); caused to be posted on March 8, 2019, signed copies of a notice of foreclosure sale, of which a true and correct copy is attached to and incorporated in this affidavit by reference for all purposes, at the officially designated place, located near an entrance door to the county courthouse of Wichita County, 900 Seventh Street, Wichita Falls, Texas, at approximately

Composite Affidavit/jmm                                        Page 1 of 2 Pages

12:52 P.M., and filed a duplicate of the notice of foreclosure sale with the county clerk's office of Wichita County, Texas, at 12:41 P.M. that same day.

"I further caused to be served a true and correct copy of the notice of foreclosure sale on the following person on March 4, 2019, by depositing the same, postage prepaid, certified mail, return receipt requested, in a post office or official depository of the U.S. Postal Service. The person served with notices and her address are as follows:

> Ms. Diane T. Clay
> 5 Hickory Downs
> Wichita Falls, Texas 76308

"Further, on April 2, 2019, at a time not earlier than the time set forth in the notice of foreclosure sale and beginning not later than three hours thereafter. I did conduct the foreclosure sale. The foreclosure sale occurred in the area specified in the notice of foreclosure sale."

EXECUTED on April __3__, 2019.

_____
BILLY T. ELDER, Substitute Trustee

SUBSCRIBED AND SWORN TO BEFORE ME on the __3__ day of April, 2019, by BILLY T. ELDER, Substitute Trustee.

_____
Notary Public, State of Texas

> JUDY MOORE
> ID# 8598289
> NOTARY PUBLIC STATE OF TEXAS
> MY COMMISSION EXPIRES
> MARCH 1, 2020

Composite Affidavit/jmm

Page 2 of 2 Pages

THE STATE OF TEXAS

COUNTY OF WICHITA

I hereby certify that this instrument was FILED on the
date and the time stamped hereon by me and was duly
RECORDED in the Records of Wichita County, Texas.

20194882    2
04/08/2019 03:58 PM

Lori Bohannon, County Clerk
Wichita County, Texas

Doc Bk Vol Pg
00016111 OR 3532 391

# DEED OF TRUST

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

Date: SEPTEMBER 10, 2010

Grantor: DIANE T. CLAY ET VIR, RICHARD R. CLAY

Grantor's Mailing Address (including county): #5 HICKORY DOWNS, WICHITA FALLS, WICHITA COUNTY, TEXAS 76308

Trustee: DONNIE B. PARK

Trustee's Mailing Address (including county): 2801 MIDWESTERN PARKWAY, SUITE 200, WICHITA FALLS, WICHITA COUNTY, TEXAS 76308

Beneficiary: FIRST BANK

Beneficiary's Mailing Address (including county): 2801 MIDWESTERN PARKWAY, SUITE 200, WICHITA FALLS, WICHITA COUNTY, TEXAS 76308

Note(s)

    Date: SEPTEMBER 10, 2010

    Amount: THREE HUNDRED EIGHTY-NINE THOUSAND AND NO/100 DOLLARS ($389,000.00)

    Maker: DIANE T. CLAY

    Payee: FIRST BANK

    Final Maturity Date: AS PROVIDED IN SAID NOTE

    Terms of Payment (optional): PRINCIPAL AND ACCRUED INTEREST SHALL BE DUE AND PAYABLE SIX (6) MONTHS FROM DATE

Property (including any improvements): LOT NO. SEVEN (7), BLOCK NO. TWO (2), WILLOW BROOK ADDITION, SECTION ONE (1), AN ADDITION TO THE CITY OF WICHITA FALLS, WICHITA COUNTY, TEXAS, ACCORDING TO PLAT OF RECORD IN VOLUME 10, PAGE 50, WICHITA COUNTY PLAT RECORDS

Prior Lien(s) (including recording information): NOT ANY

Other Exceptions to Conveyance and Warranty: THIS CONVEYANCE IS SUBJECT TO ALL RESTRICTIVE COVENANTS, EASEMENTS AND RIGHTS-OF-WAY, AND ALL OUTSTANDING MINERAL RESERVATIONS AND INTERESTS OF RECORD, IF ANY

    For value received and to secure payment of the Note, Grantor conveys the property to Trustee in trust. Grantor warrants and agrees to defend the title to the property. If Grantor performs all the covenants and pays the note according to its terms, this deed of trust shall have no further effect, and Beneficiary shall release it at Grantor's expense.

Grantor's Obligations

Grantor agrees to:
1. keep the property in good repair and condition;
2. pay all taxes and assessments on the property when due;
3. preserve the lien's priority as it is established in this deed of trust;
4. maintain, in a form acceptable to Beneficiary, an insurance policy that:
    a. covers all improvements for their full insurable value as determined when the policy is issued and renewed, unless Beneficiary approves a smaller amount in writing;
    b. contains an 80% coinsurance clause;
    c. provides fire and extended coverage, including windstorm coverage;
    d. protects Beneficiary with a standard mortgage clause;
    e. provides flood insurance at any time the property is in a flood hazard area; and
    f. contains such other coverage as Beneficiary may reasonably require;
5. comply at all times with the requirements of the 80% coinsurance clause;



EXHIBIT
27

Doc
00016111    Bk    Vol
OR    3532    392

6.  deliver the insurance policy to Beneficiary and deliver renewals to Beneficiary at least ten days before expiration;

7.  keep any buildings occupied as required by the insurance policy; and

8.  if this is not a first lien, pay all prior lien notes that Grantor is personally liable to pay and abide by all prior lien instruments.

**Beneficiary's Rights**

1.  Beneficiary may appoint in writing a substitute or successor trustee, succeeding to all rights and responsibilities of Trustee.

2.  If the proceeds of the note are used to pay any debt secured by prior liens, Beneficiary is subrogated to all of the rights and liens of the holders of any debt so paid.

3.  Beneficiary may apply any proceeds received under the insurance policy either to reduce the note or to repair or replace damaged or destroyed improvements covered by the policy.

4.  If Grantor fails to perform any of Grantor's obligations Beneficiary may perform those obligations and be reimbursed by Grantor on demand at the place where the note is payable for any sums so paid, including attorney's fees, plus interest on those sums from the dates of payment at the rate stated in the note for matured, unpaid amounts. The sum to be reimbursed shall be secured by this deed of trust.

5.  If Grantor defaults on the note or fails to perform any of Grantor's obligations, or if any statement made by Grantor to Beneficiary to obtain the loan secured by this Deed of Trust proves to be untrue or inaccurate and Grantor fails to correct or make true the misrepresentation within ten (10) days after being sent notice of same, or if default occurs on a prior lien note or other instrument, and the default continues after Beneficiary gives Grantor notice of the default and the time within which it must be cured, as may be required by law or by written agreement, then Beneficiary may:

    a.  declare the unpaid principal balance and earned interest on the note immediately due;

    b.  request Trustee to foreclose this lien, in which case Beneficiary or Beneficiary's agent shall give notice of the foreclosure sale as provided by the Texas Property Code as then amended; and

    c.  purchase the property at any foreclosure sale by offering the highest bid and then have the bid credited on the note.

**Trustee's Duties**

If requested by Beneficiary to foreclose this lien, Trustee shall:

1.  either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then amended;

2.  sell and convey all or part of the property to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty; and

3.  from the proceeds of the sale, pay, in this order:

    a.  expenses of foreclosure, including a commission to Trustee of 5% of the bid;

    b.  to Beneficiary, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

    c.  any amounts required by law to be paid before payment to Grantor; and

    d.  to Grantor, any balance.

**General Provisions**

1.  If any of the property is sold under this deed of trust, Grantor shall immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor shall become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2.  Recitals in any Trustee's deed conveying the property will be presumed to be true.

3.  Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4.  This lien shall remain superior to liens later created even if the time of payment of all or part of the note is extended or part of the property is released.

5.  If any portion of the note cannot be lawfully secured by this deed of trust, payments shall be applied first to discharge that portion.

6.  Grantor assigns to Beneficiary all sums payable to or received by Grantor from condemnation of all or part of the property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the property. After deducting any expenses incurred, including attorney's fees, Beneficiary may release any remaining sums to Grantor or apply such sums to reduce the note. Beneficiary shall not be liable for failure to collect or to exercise diligence in collecting any such sums.

7.  Grantor assigns to Beneficiary absolutely, not only as collateral, all present and future rent and other income and receipts from the property. Leases are not assigned. Grantor warrants the validity and enforceability of the assignment. Grantor may as Beneficiary's licensee collect rent and other income and receipts as long as Grantor is not in default under the note or this deed of trust. Grantor will apply all rent and other income and receipts to payment of the note and performance of this deed of trust, but if the rent and other income and receipts exceed the amount due under the note and deed of trust, Grantor may retain the excess. If Grantor defaults in payment of the note or performance of this deed of trust, Beneficiary may terminate Grantor's license to collect and then as Grantor's agent may rent the property if it is vacant and collect all rent and other income and receipts. Beneficiary neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the property. Beneficiary may exercise Beneficiary's rights and remedies under this paragraph without taking possession of the property. Beneficiary shall apply all rent and other income and receipts collected under this paragraph first to expenses incurred in exercising Beneficiary's rights and remedies and then to Grantor's obligations under the note and this deed of trust in the order determined by Beneficiary. Beneficiary is not required to act under this paragraph, and

00016111 OR 3532 393

acting under this paragraph does not waive any of Beneficiary's other rights or remedies. If Grantor becomes a voluntary or involuntary bankrupt, Beneficiary's filing a proof of claim in bankruptcy will be tantamount to the appointment of a receiver under Texas law.

8. Interest on the debt secured by this deed of trust shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

9. When the context requires, singular nouns and pronouns include the plural.

10. The term note includes all sums secured by this deed of trust.

11. This deed of trust shall bind, inure to the benefit of, and be exercised by successors in interest of all parties.

12. If Grantor and Maker are not the same person, the term Grantor shall include Maker.

13. Grantor represents that this deed of trust and note are given for the following purposes: PURCHASE MONEY DEED OF TRUST BEING FURTHER SECURED BY A VENDOR'S LIEN RETAINED IN DEED OF EVEN DATE HEREWITH.

14. Grantor will not suffer or permit any lien or encumbrance to be hereafter claimed or created on or against any of the Property, and should a lien become attached hereafter in any manner to any part of the Property (even though inferior and subordinated to this mortgage) without the prior written consent of the Beneficiary, the Grantor will cause such lien to be promptly discharged, Without limiting this prohibition against liens and encumbrances, it is expressly made to include Federal tax liens, franchise tax liens, abstracts of judgment and mechanic's and materialman's lien claims.

15. Without first securing the written consent of Beneficiary, Grantor will not sell, lease, convey, mortgage, pledge or otherwise dispose of or encumber any portion of the Property nor any of Grantor's rights, titles and/or interests therein or thereto, nor will Grantor (if a corporation) consolidate or merge by sale of assets or otherwise, with any one or more corporations or entities. If Grantor is a corporation, it will maintain its corporate existence and will maintain and procure all necessary corporate franchises and permits to the end that Grantor shall be and continue to be a corporation in good standing in the State of its incorporation and in the State of Texas with full power and authority to own and operate all of the Property as contemplated herein until this mortgage shall have been fully satisfied.

16. Grantor specially agrees that, should Grantor convey the property herein described in whole or in part, without the holder's written consent, the holder of said note shall have the right and option to declare the entire amount of the indebtedness secured hereby to be due and payable. In order to exercise such right and option, the holder of said note shall give written notice to Grantor and to the party to whom such property was conveyed by Grantor that the entire indebtedness has been declared due and payable and demand payment thereof. The failure to pay the indebtedness so declared to be due in full within forty-five (45) days after the giving of such notice shall constitute an event of default under this Deed of Trust and the Trustee hereunder, shall be, and is hereby authorized and empowered, when requested so to do by the holder of such note, after such default, to sell the premises as herein provided.

17. This Deed of Trust in addition to securing the Note above described shall also secure payment of the following:

a. Any and all debts owed by Grantor to Beneficiary now or hereafter owed, either direct or indirect, primary or secondary, fixed or contingent, joint or several, regardless of how evidenced or arising.

b. Any extensions or renewals of any such indebtedness described above whether or not Grantor executes any additional extension agreement or renewal security instrument; provided, however, that Beneficiary shall not be obligated in any respect to renew or extend said indebtedness or any part thereof.

c. Any sums which may hereafter be advanced by Beneficiary under the terms hereof on account of the failure of Grantor to comply with the covenants of this instrument, together with interest thereon and attorney's fees as hereinafter provided.

d. Any additional loans made by the Beneficiary to Grantor. It is presently contemplated that Beneficiary may lend additional sums to Grantor from time to time, but shall not be obligated to do so. Grantor agrees that if Grantor should become indebted to the Beneficiary in any such additional sum or sums, the same shall be payable at Wichita Falls, Wichita County, Texas, and shall be secured by this instrument as well as by any other security which Beneficiary may now or hereafter hold for the payment thereof.

e. In addition to the installments provided in the foregoing promissory note, Grantor agrees to pay contemporaneously to Beneficiary additional monthly installments equivalent to one-twelfth (1/12) of the aggregate total amount of the annual taxes assessed against the above described property and of the annual premiums on insurance covering the improvements thereon (in such amounts as the Beneficiary shall require), which said additional installments shall be applied by Beneficiary toward the discharge of said taxes and insurance premiums as same become due. All payments for the purpose of discharging taxes and insurance not applied thereto by Beneficiary may be credited to Grantor's taxes and insurance due for the next year; or at the option of Beneficiary, Grantor shall furnish paid receipts showing payment of such premiums and taxes prior to the same becoming past due.

18. This Deed of Trust shall also constitute a Security Agreement and Financing Statement under the terms of the Uniform Commercial Code of the State of Texas whereby Grantor grants Beneficiary a first lien security interest in all COLLATERAL WHICH IS OR IS TO BECOME FIXTURES now or hereafter placed on the above described property to secure the performance of all obligations secured by this Deed of Trust. Grantor is the owner of the above described property, and any foreclosure sale under the terms of this Deed of Trust shall include a sale of all such fixtures. This Deed of Trust may be filed as a Financing Statement on such fixtures at any time by Beneficiary in the appropriate Uniform Commercial Code Records.

19. Grantor will provide Beneficiary with current financial statements in a form satisfactory to the Beneficiary including, but not limited to, balance sheets and profit and loss statements, tax returns and other information upon request.

Doc
00016111 OR    BK 3532    PG 394

20. Should Beneficiary be required to have one or more appraisals done on the property after closing due to the deterioration of credit worthiness of Grantor or Grantor's failure to make timely payments, Grantor shall pay the cost for such appraisal(s) within twenty (20) days after receiving written demand therefore. Failure to pay such amounts within such time period shall constitute a default under this Deed of Trust and entitle Beneficiary to accelerate the indebtedness.

21. EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR (2) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

_____          _____
DIANE T. CLAY                                               RICHARD R. CLAY

(Acknowledgment)

STATE OF TEXAS                    )

COUNTY OF WICHITA                 )

This instrument is acknowledged before me on the 10th day of SEPTEMBER, 2010, by DIANE T. CLAY ET VIR, RICHARD R. CLAY.

_____
Notary Public

CINDY DAVID
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 05-22-2012

AFTER RECORDING RETURN TO:                    PREPARED IN THE LAW OFFICE OF:
First Bank                                                          Tate, Gowan & Wilson, PLLC
2801 Midwestern Parkway, Suite 200                    900 Eighth Street
Wichita Falls, Texas 76308                                  Hamilton Building, Suite 1020
Attn: Final Documents Dept                                  Wichita Falls, Texas 76301-6811

Doc        Bk      Vol      Pg
00016111   OR      3532     395

Filed for Record in:
Wichita County

On: Sep 13,2010 at 02:54P

As a
Recording

Document Number:    00016111

Amount                    28.00

Receipt Number - 126765
By:
Shelley Howlett

STATE OF TEXAS        COUNTY OF WICHITA
I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
J. Wichita County
Any provision herein which restricts the sale,
rental, or use of the described Real Property
because of color or race is invalid and
unenforceable under federal law.

Sep 13,2010

Lori Bohannon, County Clerk
Wichita County

LANDMARK TITLE CO
CUSTOMER PICK UP
WICHITA FALLS, TX 76308

Please Return To:
First Bank
901 Lamar
Wichita Falls, TX 76301

STATE OF TEXAS                                                      Loan No. 3000011073
COUNTY OF WICHITA

### MODIFICATION AND EXTENSION AGREEMENT

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

WHEREAS, Diane T. Clay ET VIR. Richard R. Clay, hereinafter called "Borrower", executed and delivered unto First Bank, hereinafter called "Beneficiary," that one certain Deed of Trust dated September 10, 2010, and recorded in Volume 3532, Page 391, of the Official Public Records of Wichita County, Texas, securing said Beneficiary in the payment of a Note of even date there with in the original principal sum of $389,000.00, and being due and payable on or before March 10, 2011, (said Note and Lien having been previously extended by instruments recorded in the Official Public Records, Wichita County, Texas) and;

WHEREAS, the property granted as security under the terms of the Deed of Trust is described as lying and situated in Wichita County, Texas, and is more particularly described as follows, to-wit:

Lot No. Seven (7), Block No. Two (2), Willow Brook Addition, Section One (1), An Addition to the City of Wichita Falls, Wichita County, Texas, According to Plat of Recors in Volume 10, Page 50, Wichita County Plat Records. Also known as 5 Hickory Downs, Wichita Falls, Texas 76308.

WHEREAS, Borrower has requested Beneficiary and Beneficiary has agreed to modify and extend the Note and Deed of Trust as follows:

1. The current balance is $316,747.83. The interest rate shall remain Four and three-fourths (4.75%) percent. Principal and interest shall be payable monthly in the amount of $1,652.90, based on a Thirty (30) year amortization, beginning November 01, 2013, and a like installment on the first day of each and every month until October 01, 2014, when the entire amount of unpaid principal and accrued interest shall be wholly due and payable. It is understood and agreed that if any payment is more than fifteen (15) days late, a charge of five (5) percent will be due. Your total monthly installment shall be calculated as set out below, to-wit:

Principal and interest               $1,652.90
Present escrow                       $
                                     _____
**TOTAL MONTHLY PAYMENT**            **$1,652.90**

Thereafter such installments shall continue monthly in said amount until October 01, 2014, when all remaining principal and accrued interest shall be due and payable in a final balloon installment.

**BORROWER UNDERSTANDS THAT BENEFICIARY SHALL BE UNDER NO DUTY TO RENEW THIS LOAN AT THE TIME OF FINAL PAYMENT WHICH IS A BALLOON PAYMENT AND THAT BORROWER MAY INCUR NEW LOAN COSTS IF BENEFICIARY AGREES TO RENEW OR RENEGOTIATE OR MAY BE FORCED TO PAY THIS LOAN IN FULL OUT OF OTHER FUNDS OWNED BY BORROWER OR OBTAINED WITH A LOAN FROM ANOTHER LENDER.**

2. The above described Note and Deed of Trust are hereby expressly modified and extended as above set out and are not extinguished hereby, and Beneficiary is hereby subrogated to all the rights and powers contained herein, including the right to accelerate and to foreclose in case of default. Borrower shall continue to be bound by the terms, obligations, and duties contained in the Note and Deed of Trust, and other documents modifying or amending the same not expressly changed by this Agreement.

EXHIBIT 28

3.    Borrower by the execution hereof does hereby expressly affirm and confirm that the above described Note and Deed of Trust and associated documents are modified and extended hereby and are valid obligations of Borrower, that Borrower is the present owner and holder of the premises described in the Deed of Trust and this Agreement and that Beneficiary has a good and valid first lien upon such premises.

This Agreement shall be binding upon the parties hereto, their respective heirs, successors and assigns.

WITNESS OUR HANDS this ___30___ day of ___Sept___, 2013, but effective as of September 30, 2013.

Borrower's Address:
5 Hickory Downs
Wichita Falls, TX 76308

**BORROWER:**

_Diane T. Clay_
Diane T. Clay

_Richard R. Clay_
Richard R. Clay

**BENEFICIARY:**
FIRST BANK

Beneficiary's Address:
2801 Midwestern Pkwy Ste 200
Wichita Falls, TX 76308

By:_____
Donnie B. Park, Executive Vice President

STATE OF TEXAS
COUNTY OF WICHITA

This instrument was acknowledged before me on the ___30___ day of ___Sept___, 2013, by Diane T. Clay ET VIR. Richard R. Clay.

[Notary Seal: BONITA C. PATTERSON, Notary Public, State of Texas, My Commission Expires 05-01-2014]

_Bonita C. Patterson_
Notary Public, State of Texas

STATE OF TEXAS
COUNTY OF WICHITA

This instrument was acknowledged before me on the ___30___ day of ___Sept___, 2013, by Donnie B. Park, Executive Vice President of First Bank, for the benefit of said Bank, and in the capacity therein stated.

[Notary Seal: BONITA C. PATTERSON, Notary Public, State of Texas, My Commission Expires 05-01-2014]

_Bonita C. Patterson_
Notary Public, State of Texas

Doc          Bk        Vol       Pg
00016840 OR            3908      687

Filed for Record in:
Wichita County

On: Oct 03,2013 at 08:02A

As a
Recording

Document Number:     00016840

Amount                20.00

Receipt Number - 179919
By,
Linda S. Barboza

STATE OF TEXAS           COUNTY OF WICHITA
    I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
              Wichita County
Any provision herein which restricts the sale,
rental, or use of the described Real Property
because of color or race is invalid and
unenforceable under federal law.

                    Oct 03,2013

                    Lori Bahannon, County Clerk
                    Wichita County

FIRST BANK
2801 MIDWESTERN PARKWAY
SUITE 200
WICHITA FALLS, TX 76308

Doc 00017994  Bk OR  Vol 4034  Pg 99

Please Return To:
First Bank
901 Lamar
Wichita Falls, TX 76301

STATE OF TEXAS                                          Loan No. 3000011073
COUNTY OF WICHITA

## MODIFICATION AND EXTENSION AGREEMENT

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

WHEREAS, Diane T. Clay ET VIR. Richard R. Clay, hereinafter called "Borrower", executed and delivered unto First Bank, hereinafter called "Beneficiary," that one certain Deed of Trust dated September 10, 2010, and recorded in Volume 3532, Page 391, of the Official Public Records of Wichita County, Texas, securing said Beneficiary in the payment of a Note of even date there with in the original principal sum of $389,000.00, and being due and payable on or before March 10, 2011, (said Note and Lien having been previously extended by instruments recorded in the Official Public Records, Wichita County, Texas) and;

WHEREAS, the property granted as security under the terms of the Deed of Trust is described as lying and situated in Wichita County, Texas, and is more particularly described as follows, to-wit:

Lot No. Seven (7), Block No. Two (2), Willow Brook Addition, Section One (1), An Addition to the City of Wichita Falls, Wichita County, Texas, According to Plat of Record in Volume 10, Page 50, Wichita County Plat Records. Also known as 5 Hickory Downs, Wichita Falls, Texas 76308.

WHEREAS, Borrower has requested Beneficiary and Beneficiary has agreed to modify and extend the maturity date on said Note and Deed of Trust above described at the same rate of interest as set out in such original documents, with monthly interest payments beginning December 1, 2014 until June 1, 2015 when all principal and accrued interest shall be wholly due and payable. The current balance is $321,713.01 as of November 26, 2014.

NOW, THEREFORE, the above described Deed of Trust is hereby expressly modified, extended, and carried forward and is not extinguished hereby, and Beneficiary is hereby subrogated to all the rights and powers contained therein including the right to accelerate and to foreclose in case of default. Borrower shall continue to be bound by the terms, obligations, and duties contained in the Note and Deed of Trust thereto not expressly changed by this Agreement.

Borrower by the execution hereby expressly affirms and confirms that the above described Note and Deed of Trust as extended hereby are valid obligations of Borrower and that Beneficiary has a good and valid first lien upon such premises.

This Agreement shall be binding upon the parties hereto, their respective heirs, successors and assigns.

WITNESS OUR HANDS this _24th_ day of _November_, 2014, but effective as of October 1, 2014.

**BORROWER:**

_Diane T. Clay_
Diane T. Clay

_Richard R. Clay_
Richard R. Clay

Borrower's Address:
5 Hickory Downs
Wichita Falls, TX 76308

**BENEFICIARY:**
FIRST BANK

By: _____
Jeremy Dotzub, Vice

Beneficiary's Address:
2801 Midwestern Pkwy Ste 200
Wichita Falls, TX 76308

EXHIBIT 29

Page 1 of 2

Doc    Bk    Vol    Pg
00017994 OR    4034    100

STATE OF TEXAS
COUNTY OF WICHITA

    This instrument was acknowledged before me on the 24ᵗʰ day of November , 2014, by Diane T. Clay ET VIR. Richard R. Clay.



_Karen Smith_
Notary Public, State of Texas



KAREN SMITH
Notary Public, State of Texas
My Commission Expires
September 15, 2015

STATE OF TEXAS
COUNTY OF WICHITA

    This instrument was acknowledged before me on the 24 day of November 2014, by, Jeremy Dorzab, Vice President of First Bank, for the benefit of said Bank, and in the capacity therein stated.

_Karen Smith_
Notary Public, State of Texas

KAREN SMITH
Notary Public, State of Texas
My Commission Expires
September 15, 2015

Doc          Bk     Vol     Pg
00017994     OR     4034    101

Filed for Record in:
Wichita County

On: Dec 05,2014  at  08:04A

As a
Recording

Document Number:     00017994

Amount               30.00

Receipt Number - 199804
By,
Laura Allen

STATE OF TEXAS          COUNTY OF WICHITA
    I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of:
              Wichita County
Any provision herein which restricts the sale,
rental, or use of the described Real Property
because of color or race is invalid and
unenforceable under federal law.

                  Dec 05,2014


                  Lari Bohannan, County Clerk
                  Wichita County


FIRST BANK
4110  KELL BLVD
WICHITA FALLS, TX 76309

Please Return To:
First Bank
901 Lamar
Wichita Falls, TX 76301

STATE OF TEXAS
COUNTY OF WICHITA

Loan No. 3000031073

### RENEWAL AND EXTENSION AGREEMENT

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

WHEREAS, Diane T. Clay, hereinafter called "Borrower/Grantor", and Richard R. Clay, herein after called "Grantor", executed and delivered unto First Bank, hereinafter called "Beneficiary," that one certain Deed of Trust dated September 10, 2010, and recorded in Doc. 00016111, Volume 3532, Page 391, of the Official Public Records of Wichita County, Texas, securing said Beneficiary in the payment of a Note of even date there with in the original principal sum of $389,000.00, and being due and payable on or before March 10, 2011, (said Note and Lien having been previously extended by instruments recorded in the Official Public Records, Wichita County, Texas) and;

WHEREAS, the property granted as security under the terms of the Deed of Trust is described as lying and situated in Wichita County, Texas, and is more particularly described as follows, to-wit:

Lot No. Seven (7), Block Two, Two (2), Willow Brook Addition, Section One (1), An Addition to the City of Wichita Falls, Wichita County, Texas, According to Plat of Record in Volume 10, Page 50, Wichita County Plat Records. Also known as 5 Hickory Downs, Wichita Falls, Texas 76308.

WHEREAS, Borrower has requested Beneficiary and Beneficiary has agreed to renew and extend the maturity date on said Note and Deed of Trust above described at the same rate of interest as set out in such original documents until August 22, 2017, when all principal and accrued interest shall be wholly due and payable. The current balance is $321,713.01 as of June 14, 2017.

NOW, THEREFORE, the above described Deed of Trust is hereby expressly modified, extended, and carried forward and is not extinguished hereby, and Beneficiary is hereby subrogated to all the rights and powers contained therein including the right to accelerate and to foreclose in case of default. Borrower shall continue to be bound by the terms, obligations, and duties contained in the Note and Deed of Trust thereto not expressly changed by this Agreement.

Borrower by the execution hereby expressly affirms and confirms that the above described Note and Deed of Trust as extended hereby are valid obligations of Borrower and that Beneficiary has a good and valid first lien upon such premises.

This Agreement shall be binding upon the parties hereto, their respective heirs, successors and assigns.

WITNESS OUR HANDS this ___16th___ day of ___June___, 2017, but effective as of February 22, 2017.

Borrower's Address:
5 Hickory Downs
Wichita Falls, TX 76308

BORROWER/GRANTOR:

_Diane T. Clay_
Diane T. Clay

Page 1 of 2



EXHIBIT 30

GRANTOR:

Richard R. Clay

BENEFICIARY:
FIRST BANK

Beneficiary's Address:
2801 Midwestern Pkwy Ste 200
Wichita Falls, TX 76308

By _____
Jeffrey Taylor, Vice President

STATE OF TEXAS
COUNTY OF WICHITA

This instrument was acknowledged before me on the _15_ day of _June_____, 2017, by Diane T. Clay.



BONITA C PATTERSON
Notary Public, State of Texas
Notary I.D. # 13036005
My Commission Expires 05-03-2019

_Bonita C Patterson_
Notary Public, State of Texas

STATE OF TEXAS
COUNTY OF WICHITA

This instrument was acknowledged before me on the _15_ day of _June_____, 2017, by Richard R. Clay.

BONITA C PATTERSON
Notary Public, State of Texas
Notary I.D. # 13036005
My Commission Expires 05-03-2019

_Bonita C Patterson_
Notary Public, State of Texas

STATE OF TEXAS
COUNTY OF WICHITA

This instrument was acknowledged before me on the _16_ day of _June__, 2017, by, Jeffrey Taylor, Vice President of First Bank, for the benefit of said Bank, and in the capacity therein stated.

KAREN SMITH
Notary Public, State of Texas
Notary I.D. # 127724?-8
My Commission Expires 08-30-2019

_Karen Smith_
Notary Public, State of Texas

THE STATE OF TEXAS
COUNTY OF WICHITA
I hereby certify that this instrument was FILED on the date and the time stamped hereon by me and was duly RECORDED in the Records of Wichita County, Texas

20179447      18
06/22/2017 10:13 AM

_Lori Bohannon_

Lori Bohannon, County Clerk

Page 2 of 2





Please Return To:
First Bank
901 Lamar
Wichita Falls, TX 76301

STATE OF TEXAS
COUNTY OF WICHITA

Loan No. 3000011073

<u>RENEWAL AND EXTENSION AGREEMENT</u>

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

WHEREAS, Diane T. Clay, hereinafter called "Borrower/Grantor", and Richard R. Clay, herein after called "Grantor", executed and delivered unto First Bank, hereinafter called "Beneficiary," that one certain Deed of Trust dated September 10, 2010, and recorded in Doc: 00016111, Volume 3532, Page 391, of the Official Public Records of Wichita County, Texas, securing said Beneficiary in the payment of a Note of even date there with in the original principal sum of $389,000.00, and being due and payable on or before March 10, 2011, (said Note and Lien having been previously extended by instruments recorded in the Official Public Records, Wichita County, Texas) and;

WHEREAS, the property granted as security under the terms of the Deed of Trust is described as lying and situated in Wichita County, Texas, and is more particularly described as follows, to-wit:

Lot No. Seven (7), Block No. Two (2), Willow Brook Addition, Section One (1), An Addition to the City of Wichita Falls, Wichita County, Texas, According to Plat of Record in Volume 10, Page 50, Wichita County Plat Records. Also known as 5 Hickory Downs, Wichita Falls, Texas 76308.

WHEREAS, Borrower has requested Beneficiary and Beneficiary has agreed to renew and extend the maturity date on said Note and Deed of Trust above described at the same rate of interest as set out in such original documents until July 15, 2018, when all principal and accrued interest shall be wholly due and payable. The current balance is $321,713.01 as of March 29, 2018.

NOW, THEREFORE, the above described Deed of Trust is hereby expressly modified, extended, and carried forward and is not extinguished hereby, and Beneficiary is hereby subrogated to all the rights and powers contained therein including the right to accelerate and to foreclose in case of default. Borrower shall continue to be bound by the terms, obligations, and duties contained in the Note and Deed of Trust thereto not expressly changed by this Agreement.

Borrower by the execution hereby expressly affirms and confirms that the above described Note and Deed of Trust as extended hereby are valid obligations of Borrower and that Beneficiary has a good and valid first lien upon such premises.

This Agreement shall be binding upon the parties hereto, their respective heirs, successors and assigns.

WITNESS OUR HANDS this ___30th___ day of ___March___, 2018, but effective as of January 15, 2018.

BORROWER/GRANTOR:

Borrower's Address:
5 Hickory Downs
Wichita Falls, TX 76308

_Diane T. Clay_
Diane T. Clay

EXHIBIT
31

Page 1 of 2

GRANTOR:

Richard R. Clay

BENEFICIARY:
FIRST BANK

Beneficiary's Address:
2801 Midwestern Pkwy Ste 200
Wichita Falls, TX 76308

By: _____
Jeffrey Taylor, Vice President

STATE OF TEXAS
COUNTY OF WICHITA

This instrument was acknowledged before me on the _30_ day of _March_, 2018, by Diane T. Clay.

BONITA C PATTERSON
Notary Public, State of Texas
Notary I.D. # 186960-5
My Commission Expires 02-01-2018

_Bonita C Patterson_
Notary Public, State of Texas

STATE OF TEXAS
COUNTY OF WICHITA

This instrument was acknowledged before me on the _30_ day of _March_, 2018, by Richard R. Clay.

BONITA C PATTERSON
Notary Public, State of Texas

_Bonita C Patterson_
Notary Public, State of Texas

STATE OF TEXAS
COUNTY OF WICHITA

This instrument was acknowledged before me on the _30_ day of _March_, 2018, by. Jeffrey Taylor, Vice President of First Bank, for the benefit of said Bank, and in the capacity therein stated.

YVONNE NOEMI ORDONEZ
Notary Public, State of Texas
Notary ID # 13082792-5
My Commission Expires
September 20, 2020

_____
Notary Public, State of Texas

THE STATE OF TEXAS

COUNTY OF WICHITA

I hereby certify that this instrument was FILED on the date and the time stamped hereon by me and was duly RECORDED in the Records of Wichita County, Texas.

20184006    102
04/02/2018 02:10 PM

_Lori Bohannon_

Lori Bohannon, County Clerk
Wichita County, Texas

201813567   102 Total Pages: 2

Please Return To:
First Bank
901 Lamar
Wichita Falls, TX 76301

Loan No: 3000011071

STATE OF TEXAS
COUNTY OF WICHITA

MODIFICATION AND EXTENSION AGREEMENT

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

WHEREAS, Diane T. Clay, hereinafter called "Borrower/Grantor", and Richard R. Clay, hereinafter called "Grantor", executed and delivered unto First Bank, hereinafter called "Beneficiary," that one certain Deed of Trust dated September 10, 2010, and recorded in Doc. 00016111, Volume 3532, Page 391, of the Official Public Records of Wichita County, Texas, securing said Beneficiary in the payment of a Note of even date there with in the original principal sum of $389,000.00, and being due and payable on or before March 10, 2011, (said Note and Lien having been previously extended by instruments recorded in the Official Public Records, Wichita County, Texas) and;

WHEREAS, the property granted as security under the terms of the Deed of Trust is described as lying and situated in Wichita County, Texas, and is more particularly described as follows, to-wit:

Lot No. Seven (7), Block No. Two (2), Willow Brook Addition, Section One (1), An Addition to the City of Wichita Falls, Wichita County, Texas, According to Plat of Record in Volume 10, Page 90-3Wichita County Plat Records. Also known as 5 Hickory Downs, Wichita Falls, Texas 76308.

WHEREAS, Borrower has requested Beneficiary and Beneficiary has agreed to modify and extend the maturity date on said Note and Deed of Trust above described at an increase interest rate to six (6.00%) percent until January 15, 2019, when all principal and accrued interest shall be wholly due and payable. The current balance is $321,713.01 as of August 27, 2018.

NOW, THEREFORE, the above described Deed of Trust is hereby expressly modified, extended, and carried forward and is not extinguished hereby, and Beneficiary is hereby subrogated to all the rights and powers contained therein including the right to accelerate and to foreclose in case of default. Borrower shall continue to be bound by the terms, obligations, and duties contained in the Note and Deed of Trust therein not expressly changed by this Agreement.

Borrower by the execution hereby expressly affirms and confirms that the above described Note and Deed of Trust as extended hereby are valid obligations of Borrower and that Beneficiary has a good and valid first lien upon such premises.

This Agreement shall be binding upon the parties hereto, their respective heirs, successors and assigns.

WITNESS OUR HANDS this ____ day of _____, 2018, but effective as of July 15, 2018.

BORROWER/GRANTOR:

_Diane T. Clay_
Diane T. Clay

Borrower's Address:
5 Hickory Downs
Wichita Falls, TX 76308

Page 1 of 2


EXHIBIT
32

GRANTOR:

Richard R. Clay

BENEFICIARY:
FIRST BANK

Beneficiary's Address:
4110 Kell Blvd.
Wichita Falls, TX. 76309

By: _____
Jim Johnson, Executive Vice President

STATE OF TEXAS
COUNTY OF WICHITA

This instrument was acknowledged before me on the 27 day of August, 2018, by Diane T. Clay.



Notary Public, State of Texas

STATE OF TEXAS
COUNTY OF WICHITA

This instrument was acknowledged before me on the 27 day of August, 2018, by Richard R. Clay.



Notary Public, State of Texas

STATE OF TEXAS
COUNTY OF WICHITA

This instrument was acknowledged before me on the 27 day of Aug, 2018, by, Jim Johnson, Executive Vice President of First Bank, for the benefit of said Bank, and in the capacity therein stated.



Notary Public, State of Texas

THE STATE OF TEXAS
COUNTY OF WICHITA

I hereby certify that this instrument was FILED on the date and the time stamped hereon by me and was duly RECORDED in the Records of Wichita County, Texas.

201613567      102
08/22/2016 10.38 AM

Lori Bohannon, County Clerk
Wichita County, Texas

Page 2 of 2



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

INTERNAL REVENUE SERVICE
ATTN: COLLECTIONS ADVISORY GROUP MANAGER
1100 COMMERCE STREET
MAIL STOP 5028 DAL
DALLAS TX 75242

9590 9402 4595 8278 1884 29

2. Article Number (Transfer from service label)

7018 2290 0001 1650 9926

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

7018 2290 0001 1650 9926

Internal Revenue Service
1100 Commerce Street
Mail Stop 5028 DAL
Dallas TX 75242

01/06/2020









ELDER & DICKINGS
220 E. THIRD STREET
BURKBURNETT, TEXAS 76354

TO: INTERNAL REVENUE SERVICE
ATTN: COLLECTIONS ADVISORY GROUP MANAGER
1100 COMMERCE STREET
MAIL STOP 5023 DAL
DALLAS TX 75242



FIRST-CLASS

$ 001.60°
US POSTAGE

THE STATE OF TEXAS

COUNTY OF WICHITA

I hereby certify that this instrument was FILED on the
date and the time stamped hereon by me and was duly
RECORDED in the Records of Wichita County, Texas.

20201896    4
02/07/2020 10:46 AM

Lori Bohannon, County Clerk
Wichita County, Texas


**First Bank**

September 17, 2019

Diane T. Clay
5 Hickory Downs
Wichita Falls, TX. 76308

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE, OR YOUR SPOUSE IS, SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

Re:    Demand for payment of past-due installments on promissory note September 10, 2010 in the original principal amount of $389,000.00 executed by Diane T. Clay payable to the order of First Bank (the Note), and notice of intent to accelerate unpaid principal balance and accrued interest owed on note.

FIRST BANK (the Bank) is the current owner and holder of the promissory note, connection with your indebtedness owed the Bank on the promissory note.

Mrs. Clay,

Your loan, #3000011073, with an outstanding principal amount of $321,713.01, and secured by a First Lien Deed of Trust in the property located at 5 Hickory Downs, matured as of January 15, 2019. The loan has continued to accrue interest in accordance with the terms of the Note.  You may contact me at the address and/or phone number herein provided to obtain a complete statement and to arrange for payment of this debt.

As of today's date, interest in the amount of $22,687.38 is due and payable.  To renew your loan, this is the amount that will need to be paid.

Because you failed to pay the amounts due at the proper time, the note has continued to accrued interest at the rate of six (6.00%) percent per year and will cause the note to amortize differently than originally scheduled.

Demand is hereby made for payment in full for the balance owed on this past-due interest on or before 3:00 P.M. on **October 17, 2019.**  Payment must be made in cash or by cashier's check at the office of the Bank at **901 Lamar Wichita Falls, TX. 76301.**

EXHIBIT
33

Member FDIC

4110 Kell Blvd · Wichita Falls, TX 76309     318 West Park · Iowa Park, TX 76367     P.O. Box 458 · Burkb
940-691-0000 · Fax 940-691-9988          940-592-4619 · Fax: 940-592-4654      940-569-2221 · Fax

FirstBankWeb.com

The Note provides that, on default in the punctual payment of the installments due on the Note, the unpaid principal balance of the Note may be matured at the option of the Bank.  Neither the Bank nor you want this result, since the Bank could then accelerate the maturity of the unpaid balance of the principal of the Note, and declare the entire unpaid principal balance plus all unpaid accrued and earned interest immediately due and payable.

**You are advised that Home Ownership Counseling is available to you through non-profit organizations approved by the Department of Housing and Urban Development ("HUD") or the Administrator of Veteran's Affairs.  You are further advised that First Bank does not provide Home Ownership Counseling.  HUD has established 1-800-569-4287 as a national toll free telephone number for homeowner counseling to get the location of the nearest homeowner counseling agency.**

Unless you dispute the validity of the debt, or any portion thereof, within thirty days after receipt of this notice, the debt will be assumed to be valid by the undersigned.  If you notify the undersigned in writing within thirty days of receipt of this letter that the debt or any portion of the debt is disputed, I will obtain verification of the debt and will mail a copy of the verification to you.  On your written request, within the thirty-day period for the verification, I will provide you with the name and address of the original creditor, if different from the Bank.  This thirty-day period does not alter, waive, or affect the October 17, 2019 deadline for payment set forth above.  You are notified that any information you give me will be used in the collection of the debt owed the Bank.

FIRST BANK

BY

Jim Johnson, EVP
4110 Kell Blvd.
Wichita Falls, TX. 76309
940-691-0000
866-944-2265

Certified Mail No: 7001 2510 0003 2117 7911
Return Receipt Requested/Regular Mail



2020-003   154 Total Pages: 5

## NOTICE OF FORECLOSURE SALE

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE, OR YOUR SPOUSE IS, SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

Notice is hereby given of a public nonjudicial foreclosure sale.

1.   Property to Be Sold. The property to be sold is described as follows:

Lot No. Seven (7), Block No. Two (2), Willow Brook Addition, Section One (1), an Addition to the City of Wichita Falls, Wichita County, Texas, according to Plat of record in Volume 10, Page 50, Wichita County Plat Records. Also known as 5 Hickory Downs, Wichita Falls, Texas 76308.

2.   Instruments to be Foreclosed. The instruments to be foreclosed are the Deed

of Trust recorded as Document No. 00016111, Volume 3532, Page 391, Official Public Records,

Wichita County, Texas ("Deed Of Trust"); said Deed Of Trust being modified and extended and/or

renewed and extended, respectively, by those certain Modification And Extension Agreements

and/or Renewal And Extension Agreements duly recorded as Document No. 00016840, Volume

3908, Page 685, Official Public Records, Wichita County, Texas; Document No. 00017994, Volume

4034, Page 99, Official Public Records, Wichita County, Texas; Document No. 20179447, Official

Public Records, Wichita County, Texas; Document No. 20184806, Official Public Records, Wichita

County, Texas; Document No. 201813567, Official Public Records, Wichita County, Texas ("Deed

Of Trust, as modified and extended and/or as renewed and extended, respectively"); and any and

all other instruments filed of record with respect to said Deed Of Trust, as modified and extended,

and/or as renewed and extended, respectively (all of which are hereinafter referred to as the

"Security Instruments").

EXHIBIT

3H

3.        Date, Time, and Place of Sale. The sale is scheduled to be held at the following date, time, and place:

| | |
|---|---|
| Date: | February 4, 2020 |
| Time: | The sale shall begin no earlier than 11:00 A.M. or no later than three hours thereafter.  The sale shall be completed by no later than 4:00 P.M. |
| Place: | Wichita County Courthouse, 900 Seventh Street, Wichita Falls, Wichita County, Texas, at the following location: South steps of Courthouse. |

4.    <u>Terms of Sale</u>. The sale will be conducted as a public auction to the highest bidder for cash, subject to the provisions of the Security Instruments, permitting the Beneficiary thereunder to have the bid credited to the Note, as modified and extended, and/or as renewed and extended, respectively, up to the amount of the unpaid debt secured by the Security Instruments at the time of sale.

Those desiring to purchase the property will need to demonstrate their ability to pay cash on the day the property is sold.

The sale will be made expressly subject to any title matters set forth in the Security Instruments, but prospective bidders are reminded that by law the sale will necessarily be made subject to all prior matters of record affecting the property, if any, to the extent that they remain in force and effect and have not been subordinated to the Security Instruments. The sale shall not cover any part of the property that has been released of public record from the lien of the Security Instruments. Prospective bidders are strongly urged to examine the applicable property records to determine the nature and extent of such matters, if any.

Pursuant to the Security Instruments, the Beneficiary has the right to direct the Trustee and/or Substitute Trustee to sell the property in one or more parcels and/or to sell all or only part of the property.

Pursuant to section 51.009 of the Texas Property Code, the property will be sold in "as is, where is" condition, without any express or implied warranties, except as to the warranties of title (if any) provided for under the Security Instruments. Prospective bidders are advised to conduct an independent investigation of the nature and physical condition of the property.

Pursuant to section 51.0075 of the Texas Property Code, the Trustee and/or Substitute Trustee reserves the right to set further reasonable conditions for conducting the sale. Any such further conditions shall be announced before bidding is opened for the first sale of the day held by the Trustee or any Substitute Trustee.

5.    Type of Sale. The sale is a nonjudicial deed of trust lien foreclosure sale being conducted pursuant to the power of sale granted by the Security Instruments executed by DIANE T. CLAY et vir, RICHARD R. CLAY.

6.    Obligations Secured. The Security Instruments provide that they secure the payment of the indebtedness and obligations therein described (collectively, the "Obligations") including but not limited to the Note dated September 10, 2010, in the original principal amount of $389,000.00, executed by DIANE T. CLAY, and payable to the order of FIRST BANK ("Note"); said Note being modified and extended and/or renewed and extended, respectively, by DIANE T. CLAY et vir, RICHARD R. CLAY on September 30, 2013, but effective as of September 30, 2013; on November 24, 2014, but effective as of October 1, 2014; on June 16, 2017, but effective as of February 22, 2017; on March 30, 2018, but effective as of January 15, 2018; on August 27, 2018, but effective July 15, 2018; and any other modification and extensions and/or renewal and extensions of said Note ("Note, as modified and extended and/or as renewed and extended, respectively"). FIRST BANK is the current owner and holder of the Obligations and is the Beneficiary under the Security Instruments.

As of January 6, 2020, there was owed $363,751.82 on the Note, as modified and extended and/or as renewed and extended, respectively, being principal, interest, and attorney's fees in the following amounts: $334,207.37 in principal; $28,744.45 in interest; plus at least $800.00 in attorney's fees; with additional interest accruing at the rate of $54.9382 per day thereafter until paid in full. Applicable Trustee's fees, ad valorem taxes, property insurance, and other expenses, if any, may be added to the amount owed.

Questions concerning the sale may be directed to the undersigned at (940) 569-2201.

7.    Default and Request to Act. Default has occurred under the Security Instruments, and the Beneficiary has requested me, as Substitute Trustee, to conduct this sale. Notice is given that before the sale the Beneficiary may appoint another person substitute trustee to conduct the sale.

DATED January 6, 2020.

BILLY T. ELDER, Substitute Trustee
320 E. Third Street
Burkburnett, Texas 76354
(940) 569-2201
(940) 569-5032 (Fax)

THE STATE OF TEXAS        :
                          :
COUNTY OF WICHITA         :

This instrument was acknowledged before me on the 6 day of January, 2020, by BILLY T. ELDER, Substitute Trustee.

Notary Public, State of Texas

JUDY MOORE
ID# 8568289
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 1, 2020

Notice Of Foreclosure Sale/jmm
(Foreclosures/2020/First Bank-Clay/BTE)

THE STATE OF TEXAS

COUNTY OF WICHITA

I hereby certify that this instrument was RECEIVED on
the date and the time stamped hereon by me and was duly
RECORDED in the Records of Wichita County, Texas.

2020-003    154
01/08/2020 04:43 PM

Lori Bohannon, County Clerk
Wichita County, Texas

20201896    4 Total Pages: 43

## FORECLOSURE SALE DEED
(Wichita County)

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

**Date:** February 4, 2020

**Deed Of Trust, as modified and extended, and/or as renewed and extended, respectively ("Deed Of Trust, as modified and extended, and/or as renewed and extended, respectively")**

| | |
|---|---|
| **Date:** | September 10, 2010 |
| **Grantor:** | Diane T. Clay et vir, Richard R. Clay |
| **Original Beneficiary:** | First Bank |
| **Current Beneficiary:** | First Bank |
| **Trustee:** | Donnie B. Park |
| **Substitute Trustee:** | Billy T. Elder and/or Steven J. Bickings and/or Jonathan R. Ellzey |
| **Recording Information:** | Deed Of Trust duly recorded as Document No. 00016111, Volume 3532, Page 391, Official Public Records, Wichita County, Texas; as modified and extended by those certain Modification And Extension Agreements duly recorded as Document No. 00016840, Volume 3908, Page 685, Official Public Records, Wichita County, Texas; Document No. 00017994, Volume 4034, Page 99, Official Public Records, Wichita County, Texas; as renewed and extended by those certain Renewal And Extension Agreements duly recorded as Document No. 20179447, Official Public Records, Wichita County, Texas; Document No. 20184806, Official Public Records, Wichita County, Texas; and as modified and extended by that certain Modification And Extension Agreement duly recorded as Document No. 201813567, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Deed Of Trust, as modified and extended, and/or as renewed and extended, respectively. |

Foreclosure Sale Deed/jmm
(Foreclosures/2020/First Bank - Diane T Clay/BTE)

Page 1 of 7 Pages


EXHIBIT
35

**Property:**   Lot No. Seven (7), Block No. Two (2), Willow Brook Addition, Section One (1), an Addition to the City of Wichita Falls, Wichita County, Texas, according to Plat of record in Volume 10, Page 50, Wichita County Plat Records. Also known as 5 Hickory Downs, Wichita Falls, Texas 76308.

**Note, as modified and extended, and/or as renewed and extended, respectively, Secured By Deed Of Trust, as modified and extended, and/or as renewed and extended, respectively ("Note, as modified and extended, and/or as renewed and extended, respectively")**

**Original Note:**
    **Date:**              September 10, 2010
    **Maker:**           Diane T. Clay
    **Principal Amount:**  Three Hundred Eighty-Nine Thousand and No/100 Dollars ($389,000.00)
    **Original Payee:**  First Bank
    **Current Holder:**  First Bank

**Modification And Extension Agreement:**
    **Date:**              September 30, 2013, but effective as of September 30, 2013
    **Borrower:**      Diane T. Clay et vir, Richard R. Clay ("Grantor")
    **Beneficiary:**  First Bank
    **Recording information:**  Modification And Extension Agreement duly recorded as Document No. 00016840, Volume 3908, Page 685, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Modification And Extension Agreement.
    **Property:**  Lot No. Seven (7), Block No. Two (2), Willow Brook Addition, Section One (1), an Addition to the City of Wichita Falls, Wichita County, Texas, according to Plat of record in Volume 10, Page 50, Wichita County Plat Records. Also known as 5 Hickory Downs, Wichita Falls, Texas 76308.

**Modification And Extension Agreement:**
    **Date:**              November 24, 2014, but effective as of October 1, 2014
    **Borrower:**      Diane T. Clay et vir, Richard R. Clay ("Grantor")
    **Beneficiary:**  First Bank
    **Recording information:**  Modification And Extension Agreement duly recorded as Document No. 00017994, Volume 4034, Page 99, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Modification And Extension Agreement.

Property: Lot No. Seven (7), Block No. Two (2), Willow Brook Addition, Section One (1), an Addition to the City of Wichita Falls, Wichita County, Texas, according to Plat of record in Volume 10, Page 50, Wichita County Plat Records. Also known as 5 Hickory Downs, Wichita Falls, Texas 76308.

**Renewal And Extension Agreement:**
 **Date:** June 16, 2017, but effective as of February 22, 2017
 **Grantor:** Diane T. Clay and Richard R. Clay
 **Beneficiary:** First Bank
 **Recording information:** Renewal And Extension Agreement duly recorded as Document No. 20179447, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Renewal And Extension Agreement.
 **Property:** Lot No. Seven (7), Block No. Two (2), Willow Brook Addition, Section One (1), an Addition to the City of Wichita Falls, Wichita County, Texas, according to Plat of record in Volume 10, Page 50, Wichita County Plat Records. Also known as 5 Hickory Downs, Wichita Falls, Texas 76308.

**Renewal And Extension Agreement:**
 **Date:** March 30, 2018, but effective as of January 15, 2018
 **Grantor:** Diane T. Clay and Richard R. Clay
 **Beneficiary:** First Bank
 **Recording information:** Renewal And Extension Agreement duly recorded as Document No. 20184806, Official Public Records, Wichita County, Texas; and any and all other instruments filed of record with respect to said Renewal And Extension Agreement.
 **Property:** Lot No. Seven (7), Block No. Two (2), Willow Brook Addition, Section One (1), an Addition to the City of Wichita Falls, Wichita County, Texas, according to Plat of record in Volume 10, Page 50, Wichita County Plat Records. Also known as 5 Hickory Downs, Wichita Falls, Texas 76308.

**Modification And Extension Agreement:**
 **Date:** August 27, 2018, but effective as of July 15, 2018
 **Grantor:** Diane T. Clay and Richard R. Clay
 **Beneficiary:** First Bank
 **Recording information:** Modification And Extension Agreement duly recorded as Document No. 201813567, Official Public Records, Wichita County, Texas; and any and

all other instruments filed of record with respect to said Renewal And Extension Agreement.

**Property:** Lot No. Seven (7), Block No. Two (2), Willow Brook Addition, Section One (1), an Addition to the City of Wichita Falls, Wichita County, Texas, according to Plat of record in Volume 10, Page 50, Wichita County Plat Records. Also known as 5 Hickory Downs, Wichita Falls, Texas 76308.

**Date Of Sale Of Property (first Tuesday of month):**

Tuesday, February 4, 2020

**Time Sale Of Property Began [STATE EXACT TIME OF SALE]:**

11:38 A.M.

**Place Of Sale Of Property [INCLUDE COUNTY AND DESIGNATE AREA OF COURTHOUSE WHERE SALE TOOK PLACE]:**

Wichita County Courthouse, 900 Seventh Street, Wichita Falls, Wichita County, Texas, at the following location: South steps of Courthouse.

**Buyer:** First Bank

**Buyer's Mailing Address (including county):**

4110 Kell Boulevard
Wichita Falls, Texas 76309
Wichita County, Texas

**Amount Of Sale:** Three Hundred Thirty-Five Thousand and No/100 Dollars ($335,000.00)

By Deed of Trust, as modified and extended, and/or as renewed and extended, respectively (all of which are hereinafter referred to as the "Security Instruments"), Grantors conveyed to DONNIE B. PARK, as Trustee, certain property for the purpose of securing and enforcing payment of the indebtedness and obligations therein described (collectively the Obligations), including but not limited to the Note, as modified and extended, and/or as renewed and extended, respectively, all renewals and extensions of the Note, as modified and extended, and/or

Foreclosure Sale Deed/jmm
(Foreclosures/2020/First Bank - Diane T. Clay/BTE)

Page 4 of 7 Pages

as renewed and extended, respectively, and any and all present and future indebtedness of Grantors to Original Beneficiary and/or Current Beneficiary.

A contingency stated in the Security Instruments as a condition precedent for the appointment of a Substitute Trustee occurred, and BILLY T. ELDER and/or STEVEN J. BICKINGS and/or JONATHAN R. ELLZEY were appointed by an Appointment Of Substitute Trustee executed by FIRST BANK dated December 5, 2019, and duly recorded as Document No. 201918184, of the Official Public Records of Wichita County, Texas.

Default has occurred in the payment of the Obligations when due. The unpaid balance of the principal of the Obligations was accelerated, and default has occurred and is continuing in the payment of the Obligations. FIRST BANK, the Current Holder of the Obligations and the Beneficiary of the Security Instruments requested BILLY T. ELDER and/or STEVEN J. BICKINGS and/or JONATHAN R. ELLZEY, as Substitute Trustee, to enforce the trust of the Security Instruments.

Pursuant to the requirements of the Security Instruments, and the laws of the State of Texas, written notice of the time, place, date, and terms of the public foreclosure sale of the Property was posted at the Courthouse door of Wichita County, Texas, the county in which the Property is situated, and a copy of the notice was also filed with the County Clerk of Wichita County, Texas, each notice having been posted and filed for at least twenty-one days preceding the date of the foreclosure sale.

Additionally, written notice of the time, date, place, and terms of the foreclosure sale was served on behalf of the current Beneficiary by certified mail on each debtor who, according to the records of the Current Beneficiary, is obligated to pay any of the Obligations. The certified

mailed notices were timely sent by depositing the notices in the United States mail, postage prepaid in proper amount, and addressed to each debtor at the debtor's last known address as shown by the records of the Current Beneficiary at least twenty-one days preceding the date of the foreclosure.

Attached hereto as Exhibit "A" is an affidavit for the posting and mailing of notice of foreclosure sale and conduct of the foreclosure sale.

Attached hereto as Exhibit "B" is a Nonmilitary Affidavit.

In consideration of the premises and of the bid and payment of the amount of Three Hundred Thirty-Five Thousand and No/100 Dollars ($335,000.00) Dollars ($335,000.00), the highest bid by Buyer, I, as Substitute Trustee, by virtue of the authority conferred on me in the Security Instrument, have GRANTED, SOLD, and CONVEYED only the Property described in the Notice Of Foreclosure Sale attached hereto to Buyer, and Buyer's heirs and assigns, to have and to hold the Property, together with the rights, privileges, and appurtenances thereto belonging unto Buyer, and Buyer's heirs and assigns forever.

I, as the Substitute Trustee, do hereby bind Grantors and Grantors' assigns to warrant and forever defend the Property to Buyer and Buyer's heirs and assigns forever, against the claim or claims of all persons claiming the same or any part thereof.

EXECUTED on February _6_, 2020.

BILLY T. ELDER, Substitute Trustee

Foreclosure Sale Deed/jmm
(Foreclosures/2020/First Bank - Diane T Clay/BTE)

Page 6 of 7 Pages

THE STATE OF TEXAS :

                    :

COUNTY OF WICHITA :

        This instrument was acknowledged before me on the ___ day of February, 2020, by BILLY T. ELDER, Substitute Trustee.



JUDY MOORE
ID# 8598209
NOTARY PUBLIC STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 1, 2020

Notary Public, State of Texas

AFTER RECORDING RETURN TO:

ELDER, BICKINGS & ELLZEY
320 E. THIRD STREET
BURKBURNETT, TX 76354

PREPARED IN THE LAW OFFICES OF:

ELDER, BICKINGS & ELLZEY
320 E. THIRD STREET
BURKBURNETT, TX 76354

EXHIBIT "A"

## COMPOSITE AFFIDAVIT FOR SUBSTITUTE TRUSTEE

THE STATE OF TEXAS     :

                            :

COUNTY OF WICHITA    :

         BILLY T. ELDER appeared in person before me today and stated under oath:

         "My name is BILLY T. ELDER. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

         "Under the direction of FIRST BANK ("Beneficiary"), the legal holder of the Security Instruments described below and of the obligations secured thereby, I, as the Substitute Trustee appointed to enforce the power of sale contained in the Deed of Trust ("Deed Of Trust") dated September 10, 2010, executed by DIANE T. CLAY et vir. RICHARD R. CLAY to DONNIE B PARK, Trustee, filed for record as Document Number 00016111, Volume 3532, Page 391, Official Public Records, Wichita County, Texas, said Deed Of Trust securing payment of the Note ("Note") dated September 10, 2010, in the original principal amount of $389,000.00, executed by DIANE T. CLAY and payable to the order of FIRST BANK; said Note and Deed Of Trust being modified and extended, and/or renewed and extended, respectively, by those certain Modification And Extension Agreements and/or Renewal And Extension Agreements duly recorded as Document No. 00016840, Volume 3908, Page 685, Official Public Records, Wichita County, Texas; Document No. 00017994, Volume 4034, Page 99, Official Public Records, Wichita County, Texas; Document No. 20179447, Official Public Records, Wichita County, Texas; Document No. 20184806, Official Public Records, Wichita County, Texas; Document No. 201813567, Official Public Records, Wichita County, Texas ("Deed Of Trust, as modified and extended and/or as renewed and extended, respectively"); and any and all other instruments filed of record with respect to said Deed Of Trust, as modified and extended, and/or as renewed and extended, respectively ("all of which are hereafter referred to as the Security Instruments"); caused to be posted on January 8, 2020, signed copies of a notice of

foreclosure sale, of which a true and correct copy is attached to and incorporated in this affidavit by reference for all purposes, at the officially designated place, located near an entrance door to the county courthouse of Wichita County, 900 Seventh Street, Wichita Falls, Texas, at approximately 4:43 P.M., and filed a duplicate of the notice of foreclosure sale with the county clerk's office of Wichita County, Texas, at 4:43 P.M. that same day.

"I further caused to be served a true and correct copy of the notice of foreclosure sale on the following persons on January 6, 2020, by depositing the same, postage prepaid, certified mail, return receipt requested, in a post office or official depository of the U.S. Postal Service. The persons served with notices and their address are as follows:

> Mrs. Diane T. Clay
> Mr. Richard R. Clay
> 5 Hickory Downs
> Wichita Falls, Texas 76308

"Further, on February 4, 2020, at a time not earlier than the time set forth in the notice of foreclosure sale and beginning not later than three hours thereafter, I did conduct the foreclosure sale. The foreclosure sale occurred in the area specified in the notice of foreclosure sale.

"On October 23, 2019, the Beneficiary notified DIANE T. CLAY by certified mail that she had a period of not less than thirty days to cure the default before the entire debt secured by the Security Instruments became due and notice of the proposed foreclosure sale was given."

EXECUTED on February __6__, 2020.

_____
BILLY T. ELDER, Substitute Trustee

SUBSCRIBED AND SWORN TO BEFORE ME on the __6__ day of February, 2020, by BILLY T. ELDER, Substitute Trustee.

JUDY MOORE
ID# 8598269
MARCH 1 2020

_____
Notary Public, State of Texas

Composite Affidavit

Page 2 of 2

Hank Rugeley
State Bar No. 17382900
hank@ddhrlaw.com
**DAVISON RUGELEY, L.L.P.**
900 Eighth Street, Suite 1102
Wichita Falls, Texas 76301
(940) 766-1388

ATTORNEYS FOR FIRST BANK

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### WICHITA FALLS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DIANE TRAVINIKOFF CLAY, ALSO | § | |
| KNOWN AS DIANE MOZZELE CLAY, | § | CASE NO. 20-70143-hdh13 |
| | § | |
| DEBTOR. | § | |

### NOTICE
### RESPONSE REQUIRED

PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.

ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT U.S. BANKRUPTCY COURT, EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE STREET - ROOM 1254, DALLAS, TEXAS 75242-1496 BEFORE CLOSE OF BUSINESS ON JULY 13, 2020 WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF. A COPY SHALL BE SERVED UPON OPPOSING COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED TO THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.



EXHIBIT
36

**FIRST BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DIANE TRAVINIKOFF CLAY, ALSO | § | |
| KNOWN AS DIANE MOZZELE CLAY, | § | CASE NO. 20-70143-hdh13 |
| | § | |
| DEBTOR. | § | |

| | | |
|---|---|---|
| FIRST BANK | § | |
| | § | |
| Movant. | § | CONTESTED MATTER: |
| | § | FED. R. BANKRUPTCY 9014 |
| | § | |
| V. | § | HEARING: JULY 15, 2020 |
| | § | AT 10:00 A.M. |
| DIANE TRAVINIKOFF CLAY, ALSO | § | |
| KNOWN AS DIANE MOZZELE | § | |
| CLAY, | § | WICHITA FALLS, WEBEX DOCKET |
| | § | |
| | § | PREHEARING VIDEO OR |
| Respondent. | § | TELEPHONIC CONFERENCE: |
| | § | JULY 15, 2020 AT 8:30 A.M. |
| | § | |

## FIRST BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

First Bank files this its Motion for Relief from the Automatic Stay (the "Motion"):

1. **Summary.** First Bank (the "Bank") requests that the automatic stay be terminated to allow the Bank to evict the Debtor from the real property which was foreclosed upon prior to the bankruptcy. The street address of the property is 5 Hickory Downs, Wichita Falls, Texas 76308 (the "Property").

2. **Jurisdiction.** This Court has jurisdiction to decide this Motion pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and 11 U.S.C. § 362. This is a contested

matter and a core proceeding pursuant to Bankruptcy Rule 9014 and 28 U.S.C. § 157(b)(2)(A), (G), and (O).

3. **Foreclosure Sale.** On February 4, 2020, a foreclosure sale was held at the Wichita County Courthouse on the Property. The Bank at the foreclosure sale purchased the Property *(see Exhibit "1")*. After the foreclosure sale, discussions were had between Debtor and the Bank regarding the Debtor and her husband vacating the Property. At Mr. Clay's request, the Bank agreed to an April 30th deadline to vacate. Mr. Clay requested additional time to refinance. Any opportunity to refinance ended when Debtor filed bankruptcy. Further delays were due to the state's moratorium on evictions. After the Shelter-in-Place Order in Wichita County ended, the Debtor and her husband have refused to vacate the Property. The Bank has the absolute right to possession of the Property and now must file an eviction proceeding to obtain possession. Cause exists for lifting the stay to allow the Bank to obtain possession of the Property.

4. **Cause.** "Cause" is an intentionally broad and flexible concept that permits a bankruptcy court, as a court of equity, to respond to inherently fact sensitive situations. *See In re Texas State Optical, Inc.*, 188 B.R. 552 (Bankr. E.D. Tex. 1995). To resolve these fact sensitive situations, courts consider various factors to determine whether cause exists including, *inter alia*, the potential harm to the movant if the automatic stay is not terminated and the proportionality of harm from terminating the automatic stay. *See In re Milne*, 185 B.R. 280 (N.D. Ill. 1995). Cause exists because Debtor and her husband have no right to remain in the Property.

WHEREFORE, PREMISES CONSIDERED, the Bank prays that the automatic stay be lifted and FirstCapital Bank of Texas be authorized to exercise its right to file eviction proceedings to obtain possession of the Property.

Date: June 26, 2020

Respectfully submitted,

**DAVISON RUGELEY, L.L.P.**
900 Eighth Street, Suite 1102
Wichita Falls, Texas 76301
(940) 766-1388

By: /s/ Hank Rugeley
Hank Rugeley
State Bar No. 17382900

ATTORNEYS FOR FIRST BANK

## CERTIFICATE OF CONFERENCE

A good faith effort to resolve the issues in this motion has been attempted but has been unsuccessful.

/s/ Hank Rugeley
Hank Rugeley

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2020, a true and correct copy of the foregoing was served on all parties of record via ECF or first-class mail as follows:

**ECF AND FIRST-CLASS MAIL**
Monte J. White
Monte J. White & Associates, P.C.
1106 Brook Avenue
Hamilton Place
Wichita Falls, Texas 76301

**ECF**
U. S. Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242-1496

**FIRST CLASS MAIL**
Diane Clay
5 Hickory Downs
Wichita Falls, Texas 76308

**ECF**
Robert B. Wilson
Chapter 13 Trustee
1407 Buddy Holly Ave
Lubbock, Texas 79401

/s/ Hank Rugeley
Hank Rugeley

https://ddhrlaw.sharepoint.com/sites/team.all/Shared Documents/First Bank/6012.029 Holliday Road Burgers LLC/Bankruptcy - Diane Clay/mtn to lift stay.docx

Hank Rugeley
State Bar No. 17382900
hank@ddhrlaw.com
**DAVISON RUGELEY, L.L.P.**
900 Eighth Street, Suite 1102
Wichita Falls, Texas 76301
(940) 766-1388

ATTORNEYS FOR FIRSTCAPITAL BANK OF TEXAS

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BILLIE SUE BROWN, | § | CASE NO. 18-70330-HDH 13 |
| | § | |
| DEBTOR. | § | |

## NOTICE
## RESPONSE REQUIRED

PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.

ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT U.S. BANKRUPTCY COURT, EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE STREET - ROOM 1254, DALLAS, TEXAS 75242-1496 BEFORE CLOSE OF BUSINESS ON JULY 13, 2020 WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF.  A COPY SHALL BE SERVED UPON OPPOSING COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED TO THE CASE.  ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.

34371

**Willis Motors**
3101 JACKSBORO HWY.
WICHITA FALLS, TX 76302
(940) 723-5832

American National Bank & Trust
Scott Avenue Branch
825 Scott Ave • (940) 723-0172
Wichita Falls, Texas, 76301

88-714/1119

5-8-18

PAY TO THE
ORDER OF _Deine Cluy_ $ 12500

_Twelve thousand fives hundred & no_ DOLLARS

2008 Chev Tahoe LT
Vin # 8R130923

MEMO

_Johnny Willis_
AUTHORIZED SIGNATURE

⑈034371⑈ ⑆111907144⑆ ⑈103 9202⑈

EXHIBIT
37

# Holder's Jewelers
### 2408 Jack Street
### Wichita Falls, TX 76308

## Jewelry Appraisal

**DATE:** 12/29/2017

**NAME:** RICK CLAY

**ADDRESS:** 5 HICKORY DOWNS
WICHITA FALLS, TX 76308
691-5787 (h)

**BY:** _Teresa Menchaca_
Teresa Menchaca

**REPLACEMENT VALUE:**   $63,550.00

**Description**
14 KARAT YELLOW GOLD DIAMOND SOLITARE RING WITH (1) APPROXIMATELY 4.62 CARAT ROUND BRILLIANT CUT DIAMOND, 10.50MM X 10.47MM X 6.20MM. THE COLOR IS K/L AND CLARITY IS VS/SI. IT IS NOT CERTIFIED BY ANY GRADING LABS. THERE IS BEARDING ON THE GIRDLE OF THE STONE.

WHOLSALE COST $42,365.00

---

## Holder's Jewelers

2408 Jack Street
Wichita Falls, TX 76308
(940) 691-1721

**RECEIPT**
#001-09759

12/29/2017 4:29 PM

You were assisted by
Stephen Larimore (#7)

Sold To:

RICK CLAY
5 HICKORY DOWNS
WICHITA FALLS, TX 76308
940-781-8997

#001-06562

| | |
|---|---|
| 09733-001 Appraisal Pickup | Appraisal ordered on 12/28/2017: 14 KARAT YELLOW GOLD DIAMOND SOLITARE RING WITH (1) APPROXIMATELY 4.62 CARAT ROUND BRILLIANT CUT DIAMOND, 10.50MM X 10.47MM X 6.20MM. THE COLOR IS K/L AND CLARITY IS VS/SI. IT IS NOT CERTIFIED BY ANY GRADING LABS. THERE IS BEARDING ON THE GIRDLE... | $50.00 |

SubTotal... $50.00
TX State Sales Tax... $4.13
Total... $54.13

Cash Tendered... $54.13

No returns or exchanges after 90 days
...e credit after 30 days of purchase.

**EXHIBIT 38**